**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

KAILA GONZALEZ, individually and as
a representative of a class of similarly
situated persons, on behalf of the
NORTHWELL HEALTH 403(B) PLAN,

       Plaintiff,

   v.

NORTHWELL HEALTH, INC., the
NORTHWELL HEALTH 403(B) PLAN
COMMITTEE and DOES No. 1-10,
Whose Names Are Currently Unknown,

      Defendants.

Case No: 1:20-cv-03256-RPK-RLM

Date of Service: January 18, 2021

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

        A.      Plaintiff, Defendants, And The Plan Structure ........................................... 2

        B.      Plaintiff's Claims And Supporting Facts .................................................... 3

                1.      The Plan's Excessive Recordkeeping Costs ................................... 4

                2.      The Plan's Consistently Underperforming Investment Options ................. 5

III.    ARGUMENT .............................................................................................................. 8

        A.      Standard Of Review ...................................................................................... 8

        B.      Defendants' Retention Of The Challenged Options Create The Reasonable
                Inference That Defendants Breached Their Fiduciary Duties ........................... 10

                1.      The Complaint Uses Proper and Meaningful Comparators To Evaluate
                        The Challenged Funds' Performance And Expense ............................... 12

                2.      The Challenged Funds' Underperformance Allegations Create A
                        Reasonable Inference Of Imprudence .................................................. 17

        C.      The Plan's Excessive Recordkeeping And Administrative Fees Create A
                Reasonable Inference That Defendants Breached Their Fiduciary Duties ........... 20

        D.      The Complaint States Plausible Co-Fiduciary And Alternative Knowing
                Participation Claims ....................................................................................... 22

IV.     CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 9

*Austin v. Union Bank & Tr. Co.,*
    2016 WL 8732420 (D. Or. Feb. 19, 2016) ............................................... 17

*Austin v. Union Bank & Tr. Co.,*
    2016 WL 1257897 (D. Or. Mar. 30, 2016) .............................................. 17

*Bekker v. NeubergerBerman Grp. LLC,*
    2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) .................................... 17, 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................ 9

*Bouvy v. Analog Devices, Inc.,*
    2020 WL 3448385 (S.D. Cal. June 24, 2020) .................................. 2, 3, 10

*Braden v. Wal-Mart, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ........................................................... passim

*Cassell v. Vanderbilt,*
    285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ......................................... 11, 21

*Cunningham v. Cornell Univ.,*
    2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ................................. passim

*Cunningham v. Cornell Univ.,*
    2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ........................................ 18

*Davis v. Salesforce.com, Inc.,*
    2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ..................................... 16, 18

*Davis v. Washington Univ. in St. Louis,*
    960 F.3d 478 (8th Cir. 2020) ........................................................... 16, 22

*Devlin v. Empire Blue Cross & Blue Shield,*
    274 F.3d 76 (2d Cir.2001) ..................................................................... 16

*Divane v. Nw. Univ.,*
    953 F.3d 980 (7th Cir. 2020) ......................................................... 1, 12, 22

*Dorman v. Charles Schwab Corp.*,
  2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ............................................................ 18

*Edgar v. Avaya, Inc.*,
  503 F.3d 340 (3d Cir. 2007) .................................................................................. 16

*Falberg v. Goldman Sachs Grp., Inc.*,
  2020 WL 3893285 (S.D.N.Y. July 9, 2020) ................................................... 1, 10, 22

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) .................................................. 19, 20

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ..................................................................................... 1, 11, 16

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................... 23

*Henderson v. Emory Univ.*,
  252 F. Supp. 3d 1344 (N.D. Ga. 2017) ................................................................. 13

*In re Avon Prod., Inc. Sec. Litig.*,
  2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) ............................................................ 16

*In re Sprint Corp. ERISA Litig.*,
  2004 WL 2182186 (D. Kan. Sept. 24, 2004) ......................................................... 23

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) ................................................................................ 18

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
  250 F. Supp. 3d 460 (N.D. Cal. 2017) ................................................................... 21

*Karg v. Transamerica Corp.*,
  2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ...................................................... 11

*Karpik v. Huntington Bancshares Inc.*,
  2019 WL 7482134 (S.D. Ohio Sept. 26, 2019) ...................................................... 11

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) ............................................................................. 1, 12

*Main v. Am. Airlines Inc.*,
  248 F. Supp. 3d 786 (N.D. Tex. 2017) .................................................................. 10

*Marshall v. Northrop Grumman Corp.*,
  2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) ........................................................ 21

*Martin v. Careerbuilder LLC*,
  2020 WL 3578022 n.8 (N.D. Ill. July 1, 2020)....................................................... 22

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ............................................................................ 17

*Miller v. Autozone, Inc.*,
  2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020)................................................. 14

*Moitoso v. FMR LLC*,
  451 F. Supp. 3d 189 (D. Mass. 2020) .................................................................. 5

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
  2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ..................................................... 14

*New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*,
  635 F. Supp. 2d 1351 (N.D. Ga. 2009) .............................................................. 18

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........................................... 16, 18, 19

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)......................................................... 9, 14, 16

*Pinnell v. Teva Pharms. USA, Inc.*,
  2020 WL 1531870 (E.D. Pa. Mar. 31, 2020)...................................................... 21

*Rothstein v. Am. Int'l Grp., Inc.*,
  837 F.3d 195 (2d Cir. 2016)............................................................................. 19

*Sacerdote v. New York Univ.*,
  2017 WL 3701482 (S.D.N.Y. Aug. 25,2017) ............................................... passim

*Schapker v. Waddell & Reed Fin., Inc.*,
  2018 WL 1033277 (D. Kan. Feb. 22, 2018) ......................................................... 9

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)............................................................................................ 3

*Short v. Brown Univ.*,
  320 F. Supp. 3d 363 (D.R.I. 2018)..................................................................... 13

*Sphere Digital, LLC v. Armstrong*,
  2020 WL 6064156 (S.D.N.Y. Oct. 14, 2020) ................................................... 8, 9

*Sweda v. Univ. of Pennsylvania,*
    923 F.3d 320 (3d Cir. 2019)................................................................... passim

*Terraza v. Safeway Inc.,*
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ...............................9-10, 11, 14, 20

*Tibble v. Edison Int'l,*
    135 S. Ct. 1823 (2015) .............................................................. 4, 11, 20

*Tussey v. ABB, Inc.,*
    746 F.3d 327 (8th Cir. 2014) ............................................................ 10

*Vellali v. Yale Univ.,*
    308 F. Supp. 3d 673 (D. Conn. 2018)............................2, 11-12, 20

*White v. Chevron Corp.,*
    2017 WL 2352137 (N.D. Cal. May 31, 2017) ................................. 12

*Wildman v. Am. Century Servs., LLC,*
    237 F. Supp. 3d 902 (W.D. Mo. 2017) .............................................. 14

## Statutes

29 U.S.C. § 1104(a)(1)(A) ............................................................................ 3

29 U.S.C. § 1104(a)(1)(B) ...................................................................... 4, 11

## Rules

Fed. R. Civ. P. 8(d)(2)............................................................................... 22

Fed. R. Civ. P. 15(a) ................................................................................. 23

## I.  **INTRODUCTION**

Plaintiff, Kaila Gonzalez ("Plaintiff"), respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Motion") Plaintiff's Class Action Complaint ("CAC" or "Complaint") and their supporting Memorandum of Law ("Memo").[1]

The Supreme Court has instructed that "ERISA represents a 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans," so courts must avoid creating explicit or implicit "presumption[s that] make it impossible for a plaintiff to state a duty-of-prudence [or duty-of-loyalty] claim, no matter how meritorious." *Fifth Third Bancorp v. Dudenhoeffer* ("*Dudenhoeffer*"), 573 U.S. 409, 424 (2014).  Thus, to accomplish this "important task," the Court must engage in a "careful, context-sensitive scrutiny of a complaint's allegations."  *Id.*

Defendants, however, ask the Court to err by adopting non-existent presumptions for "diverse investment options" and "reasonable fees" that they misleadingly assert were established in *Divane v. Nw. Univ.*, 953 F.3d 980 (7th Cir. 2020), *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011), and certain courts in this Circuit.  To the contrary, those decisions, many of which reflect a lack of understanding of the issues at hand, analyzed distinguishable, context-specific allegations.  Indeed, by the same token, many courts, including those in this Circuit, have sustained plan mismanagement claims based upon averments similar to those here and with an appreciation for the issues that plan fiduciaries should be addressing as a matter of course.  *See, e.g.*, *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19 CIV. 9910 (ER), 2020 WL 3893285, at *9 (S.D.N.Y. July 9,

---

[1]"Defendants" refers collectively to Northwell Health, Inc. ("Northwell"), the Northwell Health 403(B) Plan Committee ("Administrative Committee" or "Committee"), and Does No. 1-10.  Capitalized terms not otherwise defined herein shall have the same meaning as in the Complaint.

2020); *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673 (D. Conn. 2018); *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *10; *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017); *Bouvy v. Analog Devices, Inc.*, No. 19-CV-881 DMS (BLM), 2020 WL 3448385 (S.D. Cal. June 24, 2020).

As discussed below, the Complaint sets forth plausible circumstantial facts indicating that Defendants' fiduciary process is deficient, and none of Defendants' arguments to the contrary have merit. First, the Plan's recordkeeping and administrative fees are significantly higher than its peers and smaller plans, the latter of which do not have the same economies of scale or negotiating power as the Plan. Second, the Plan offers and retained investment options that consistently underperformed their ***manager***-assigned benchmarks. Given the objective basis for Plaintiff's use of the benchmarks, Defendants' challenge as to the appropriateness of those benchmarks should be rejected, especially as Defendants rely on the same benchmarks in the Plan disclosures they provide to participants and in their (failed) attempt to justify the continued retention of the funds at issue.

## II.  **BACKGROUND**

### A.  **Plaintiff, Defendants, And The Plan Structure**

Plaintiff is a former employee of Northwell and a current participant in the Plan, a qualified tax-deferred, defined contribution retirement plan. CAC, ¶¶ 2, 9, 16. Participants direct the investment of their contributions into various investment options offered by the Plan. *Id.* ¶ 16. The Plan is one of the largest 401(k) plans in the United States, with 56,289 participants and assets totaling over $5.6 billion by the end of 2018, placing it in the top 0.1% of defined contribution plans by plan size. *Id.* ¶ 4. Plans with such substantial assets have

significant bargaining power and the ability to demand low-cost administrative and investment management services in the marketplace.  *Id*.

Northwell is the Plan sponsor and a fiduciary charged with administering the Plan.  *Id.* ¶¶ 5, 10, 14.  Northwell assembled the Administrative Committee and appointed the Committee members to administer the Plan on Northwell's behalf, all of whom are also Plan fiduciaries.  *Id.* ¶¶ 11-12.  Defendants contracted with Transamerica Retirement Solutions, LLC ("Transamerica") to serve as the Plan's recordkeeper during the Class Period.  *Id.* ¶ 19.  As the recordkeeper, Transamerica is responsible for maintaining records with respect to employees' accounts in the Plan, effecting participant investment elections, and performing administrative functions such as processing loan and withdrawal requests.  *Id.*  Defendants also contracted with State Street Bank and Trust Company and Transamerica Financial Insurance Company Inc. as the primary custodians of the Plan assets, which are held in trust.  *Id.* ¶ 20.  All investments and asset allocations are performed through these trusts.  *Id.*  The Plan pays its expenses from Plan assets, generally as a reduction of participants' investment income.  ¶ 16.

### B.      Plaintiff's Claims And Supporting Facts

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  "An ERISA fiduciary has a duty of loyalty, which requires that he 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries.'"  *Cunningham*, 2017 WL 4358769, at *4 (quoting 29 U.S.C. § 1104(a)(1)(A)).  "An ERISA fiduciary also has a duty of prudence, which requires that the fiduciary act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)).

As fiduciaries that manage the Plan, Defendants have "a continuing duty—separate and apart from the duty to exercise prudence [and loyalty] in selecting investments at the outset—to monitor, and remove imprudent, trust investments." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). They "must also understand and monitor plan expense . . . 'such as management or administrative fees, [which] can . . . significantly reduce the value of an account in a defined contribution plan.'" *Sweda*, 923 F.3d at 328. Here, Plaintiff alleges that Defendants have breached their fiduciary responsibility to manage and monitor the Plan's investment, recordkeeping, and other administrative services prudently and loyally. CAC, ¶¶ 6, 25-26, 55-59. Liability for these breaches also extends to Northwell's fiduciary duty to monitor the Administrative Committee and its members, which Northwell appoints. *Id.* ¶ 60-68. To the extent any of the Defendants is deemed not to be a fiduciary, that defendant is also liable for participating in the fiduciary breaches. *Id.* ¶¶ 69-71. These claims are amply supported by the facts detailed in the Complaint and summarized below.

### 1. The Plan's excessive recordkeeping costs

According to an industry publication, the average cost for recordkeeping *and* administration in 2017 for plans much smaller than the Plan (plans with 100 participants and $5 million in assets), which do not have access to substantial discounts from economies of scale like the Plan, was $35 per participant. CAC, ¶ 22 (citing the *401(k) Averages Book* ("*Averages Book*")). Courts in the past have held that the market rate of total administrative fees for "jumbo" plans like the Plan is approximately $30 to $35 per participant. *Id.* n. 2 (citing cases).

Indeed, Fidelity Investments, the "recordkeeper king"[2] and major player in the plan recordkeeping market, more recently admitted that the value of its recordkeeping services "would range from $14-$21 per person per year" for "plans of over $1,000,000,000 in assets." *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 214 (D. Mass. 2020). Yet, the Plan, which had more than $5.6 billion in assets and 56,289 participants as of December 31, 2018, was paying $45 per participant for recordkeeping and another $15 per participant for other general administrative services, including legal accounting and auditing, for a total of $60 per participant in such fees. CAC, ¶¶ 22-23.

Defendants belatedly renegotiated the recordkeeping fees, reducing total administrative fees to $52 per participant after lowering recordkeeping fees to $37 per participant. *Id.* ¶ 23. Nevertheless, the new fee is, as the prior fee, significantly above market rates and, thus, excessive. *Id.* Accordingly, it is clear that Defendants engage in no meaningful examination, comparison, or benchmarking of the recordkeeping/administrative fees, and failed to undertake any serious negotiations to reduce such Plan expenses, despite the opportunity to do so. *Id.* ¶ 24.

### 2. The Plan's consistently underperforming investment options

It is a basic principle of investment theory that the risks associated with an investment must be justified by its potential returns for that investment to be rational, as the Capital Asset Pricing Model ("CAPM") illustrates. CAC, ¶ 27. Yet, Defendants retained, on behalf of the Plan, four funds that consistently underperformed their investment manager-selected benchmarks

---

[2]Oisin Breen, *Fidelity wrests high-profile Amazon 401(k) business from Vanguard, forcing a judicious unbundling of services between the king of assets and king of recordkeeping*, RIABiz, *available at* https://riabiz.com/a/2020/1/8/fidelity-wrests-high-profile-amazon-401k-business-from-vanguard-forcing-a-judicious-unbundling-of-services-between-the-king-of-assets-and-king-of-recordkeeping (last visited January 4, 2021).

even though less expensive and better-performing alternatives were available. *Id.* ¶ 26. The four funds (the "Challenged Funds") are the following:

**The 50% Diamond Hill/50% Dodge & Cox Large Value Option**. This investment option is, as its name denotes, comprised of the Diamond Hill Large Cap Fund Class A and the Dodge & Cox Stock Fund. CAC, ¶ 28 n.4. As noted in the Complaint and corroborated in the fund prospectuses that Defendants submit, the investment manager of the Dodge & Cox Stock Fund uses the S&P 500 Index to benchmark the fund's performance, while the investment manager of the Diamond Hill Large Cap Fund uses the Russell 1000 Index. *Id.* ¶ 28 n.5; Defs. Ex. 9, at 3/4 (Average Annual Total Returns table); Defendants' Exhibit ("Defs. Ex.") 8, at 3/5 (Average Annual Total Returns table). Accordingly, the Complaint measures this option's performance against a combination of those designated benchmarks, which shows the fund's persistent inability to beat its benchmark on a three- and five-year annualized basis. CAC, ¶ 28.

Since the S&P 500 and the Russell 1000 are indices and thus cannot serve as investment options themselves, the Complaint presents the Vanguard Russell 1000 Index Fund and the Vanguard 500 Index Fund, which simply track the Russell 1000 Index and the S&P 500 Index, respectively, as alternative investment vehicles. *Id.* ¶ 29. The Vanguard Russell 1000 Index Fund and the Vanguard 500 Index Fund are both, with expense ratios of 0.07% and 0.04%, respectively, significantly less expensive than the 50% Diamond Hill/50% Dodge & Cox Large Value Option, which has a 0.74% expense ratio. *Id.*

**The 50% Champlain/50% Diamond Hill Small Cap Option**. This option is, as the name denotes, comprised of the Champlain Small Company Fund Advisor Class and the Diamond Hill Small-Mid Cap Fund Class A. *Id.* ¶ 30 n.8. As noted in the Complaint and corroborated in the fund prospectuses that Defendants submit, the investment manager of the Champlain Small

Company Fund uses the Russell 2000 Index to benchmark the fund's performance, while the investment manager of the Diamond Hill Small Cap Fund uses the Russell 2500 Index. *Id.* ¶ 30 n.8; Defs. Ex. 10, at 3 (Average Annual Total Returns table); Def. Ex. 11, at 3/5 (Average Annual Total Returns table). Accordingly, the Complaint measures this option's performance against a combination of those designated benchmarks, which show that the fund's persistent inability to beat its benchmark on a three- and five-year annualized basis. CAC, ¶ 30.

Since the Russell 2000 Index and the Russell 2500 Index are indices and thus cannot serve as investment options themselves, the Complaint presents the Vanguard Russell 2000 Index Fund and the iShares Russell Small/Mid-Cap Index Fund, which simply track the Russell 2000 Index and the Russell 2500 Index, respectively, as alternative investment vehicles. *Id.* ¶ 31. The Vanguard Russell 2000 Index Fund and the iShares Russell Small/Mid-Cap Index Fund are both, with expense ratios of 0.08% and 0.12%, respectively, significantly less expensive than the 50% Champlain/50% Diamond Hill Small Cap Option, which has an exorbitant 1.26% expense ratio. *Id.*

***The Lazard Emerging Markets Fund.*** As noted in the Complaint and corroborated in the fund prospectus that Defendants submit, the Lazard Emerging Markets Fund Institutional Class uses the MSCI Emerging Markets Index to benchmark the fund's performance. *Id.* ¶ 32; Defs. Ex. 12, at 4 (Average Annual Total Returns table). Accordingly, the Complaint measures this option's performance against the MSCI Emerging Markets Index, which shows that the fund has substantially and repeatedly underperformed its benchmark on a rolling three- and five-year annualized basis. CAC, ¶ 32.

Since the MSCI Emerging Markets Index is not an investment vehicle itself, the Complaint presents the Fidelity Emerging Markets Index Fund, which simply tracks the MSCI

Emerging Markets Index, as an alternative investment vehicle. *Id.* ¶ 33. The Fidelity Emerging Markets Index Fund, which has an expense ratio of 0.076%, is significantly less expensive than the Lazard Emerging Markets Fund, which has a high expense ratio of 1.08%. *Id.*

**The 50% Causeway/50% BNY Mellon International Option.** This option is, as the name denotes, comprised of the Causeway International Value Fund Investor Class and the BNY Mellon International Stock Fund Class I. *Id.* ¶ 34 n.12. As noted in the Complaint and corroborated in the fund prospectuses that Defendants submit, the investment managers of the Causeway International Value Fund and the BNY Mellon International Stock Fund both use the MSCI EAFE Index to benchmark their funds' performance. *Id.* ¶ 34 n.13; Defs. Ex. 13, at 3/5 (Average Annual Total Returns table); Defs. Ex. 14, at 4/5 (Average Annual Total Returns table). Accordingly, the Complaint measures this option's performance against the MSCI EAFE Index, which shows that the fund has consistently and significantly underperformed its benchmark on a rolling three- and five-year annualized basis. CAC, ¶ 34.

Since the MSCI EAFE Index is not an investment vehicle, the Complaint presents the iShares MSCI EAFE International Index Fund, which simply tracks the MSCI EAFE Index, as an alternative investment vehicle. *Id.* ¶ 35. The iShares MSCI EAFE International Index Fund, which has an expense ratio of 0.03%, is significantly less expensive than the 50% Causeways/50% BNY Mellon International Option Lazard Emerging Markets Fund, which has an expense ratio of 1.02%. *Id.*

## III. ARGUMENT

### A. Standard Of Review

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sphere Digital, LLC v.*

*Armstrong*, 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Second Circuit has recognized that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)).  Thus, "[e]ven when the alleged facts do not 'directly address[ ] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'"  *Id.* (citation omitted).

Moreover, ERISA's "remedial scheme counsels careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief."  *Sweda v. Univ. Pennsylvania*, 923 F.3d 320, 331 (3d Cir. 2019) (citation omitted).  For that reason, Plaintiff's allegations should not be "parsed piece by piece to determine whether each allegation, in isolation, is plausible."  *Braden*, 588 F.3d at 594.  Indeed, courts frequently find that "allegations concerning fiduciary conduct, which include "reasonableness of 'compensation for services[,]' are 'inherently factual question[s]'" not suitable for resolution on a motion to dismiss.  *Sweda*, 923 F.3d at 329 (quoting DOL Advisory Opinion 2013-03A, 2013 WL 3546834, at *4-*5); *see, e.g.*, *Schapker v. Waddell & Reed Fin., Inc.*, 2018 WL 1033277, at *9 (D. Kan. Feb. 22, 2018); *Terraza v. Safeway Inc.*, 241

F. Supp. 3d 1057, 1078 (N.D. Cal. 2017 ("the prudence inquiry is 'fact intensive'")) (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)).

Finally, Defendants submit 31 extrinsic documents in support of their Motion. These "documents may only be considered for the fact that they contained a statement therein but not to prove the truth of the statement," and cannot be used to "resolve disputed issues of fact" in Defendants' favor, especially at this juncture. *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *4; *see Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 794 (N.D. Tex. 2017) ("while the [c]ourt may take judicial notice of those materials, it may not rely on the parties' opinions about what proper inferences should be drawn from them").

### B. Defendants' Retention Of The Challenged Options Creates The Reasonable Inference That They Breached Their Fiduciary Duties

The Complaint alleges that the Plan retained underperforming investment options that were more expensive than better-performing alternatives available to the Plan. CAC, ¶¶ 26-35. Many courts in this district and elsewhere, including the Third Circuit, have found that such allegations are sufficient to create an inference of a fiduciary breach. *See, e.g.*, *Sweda*, 923 F.3d at 331 (finding reasonable inference "that Penn's process of selecting and managing options must have been flawed if Penn retained expensive underperformers over better performing, cheaper alternatives") (internal citations omitted); *Falberg*, 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020) ("Taken together, Plaintiff's allegations that the GS Funds underperformed and failed to warrant their elevated expense ratios as compared to similar funds sufficiently states a claim of imprudence"); *Sacerdote*, 2017 WL 3701482, at *10 (S.D.N.Y. Aug. 25, 2017); *Cunningham*, 2017 WL 4358769, at *7 ("Plaintiffs' allegations that specific funds underperformed over one, five and ten year periods and that lower-cost, higher performing investments were available plausibly states a claim"). *See also Bouvy*, 2020 WL 3448385, at

*11; *Karg v. Transamerica Corp.*, 2019 WL 3938471, at *7 (N.D. Iowa Aug. 20, 2019); *Karpik v. Huntington Bancshares Inc.*, 2019 WL 7482134, at *5 (S.D. Ohio Sept. 26, 2019); *Cassell v. Vanderbilt*, 285 F. Supp. 3d 1056, 1066-67 (M.D. Tenn. 2018).

Nevertheless, Defendants claim at the outset that "the overall line-up and structure of the Plan belies any inference of imprudence," citing the diversity of the Plan's investment options and fee range. Defendants' position, however, "would effectively carve out a presumption of prudence for expense ratios that feel within a certain range" and investment options of a certain mix. *Terraza v. Safeway Inc.*, 241 F. Supp. 3d at 1077. "But the Supreme Court has rejected presumptions of prudence in the ERISA pleading context, advocating instead for 'careful, context-sensitive scrutiny of a complaint's allegations' as a means to 'divide the plausible sheep from the meritless goats.'" *Id.* (quoting *Dudenhoeffer*, 573 U.S. at 425). "Just as the plaintiff cannot plausibly allege a breach of fiduciary duty by simply pointing to the cost of the challenged investment in isolation, the defendants cannot defeat a claim for breach of fiduciary duty by doing the same thing." *Id*. at 1078.

As the Third Circuit explained in *Sweda*:

> We held that ERISA plans should offer meaningful choices to their participants . . . . We did not hold, however, that a meaningful mix and range of investment options insulates plan fiduciaries from liability for breach of fiduciary duty. Such a standard would allow a fiduciary to avoid liability by stocking a plan with hundreds of options, even if the majority were overpriced or underperforming. One important reason why we cannot read *Renfro* to establish such a bright-line rule (that providing a range of investment options satisfies a fiduciary's duty) is that ERISA fiduciaries have a duty to act prudently according to current practices—as the statute puts it, the "circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). Practices change over time, and bright line rules would hinder courts' evaluation of fiduciaries' performance against contemporary industry practices.

923 F.3d at 330. Meanwhile, "[t]he cases on which the defendants rely do not contradict *Tibble*'s requirement that fiduciaries continue to monitor each investment in a defined-

contribution plan, not just the range of investment fees for the plan as a whole, to ensure reasonableness." *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 686 (D. Conn. 2018) (distinguishing, among other authorities, *Loomis*, 658 F.3d 667); *see Divane*, 953 F.3d at 992 ("Not only did Northwestern provide the plans with a wide range of investment options, it also provided prudent explanations for the challenged fiduciary decisions involving alleged losses or underperformance"); *White v. Chevron Corp.*, 2017 WL 2352137, at *13 (N.D. Cal. May 31, 2017) ("the allegation that the fiduciaries changed the investment options from year to year supports an inference that the fiduciaries were monitoring the investments"). Accordingly, Defendants cannot rely on the unadorned assertion that the "range" and "mix" of the Plan's investments insulates them from any liability, especially in light of the overwhelming circumstantial facts of a deficient investment and expense monitoring process detailed in the Complaint and explained herein.

### 1. The Complaint uses proper and meaningful comparators to evaluate the challenged funds' performance and expense

Next, Defendants argue that the comparators provided in the Complaint to illustrate the imprudence of retaining the Challenged Funds are improper "apples to oranges" comparisons because the comparators are passively-managed, whereas the Challenged Funds are actively-managed and, similarly, the Complaint does not establish that the Challenged Funds have the same asset allocations as the comparators. Memo, at 11-15. As an initial matter and as courts in this Circuit and others have found, disputes over the appropriateness of a benchmark are factual issues that should not be resolved on a motion to dismiss. *See, e.g.*, *Vellali*, 308 F. Supp. 3d at 687-88 ("The defendants also argue that the stock indexes the plaintiffs used to benchmark the TIAA–CREF investments are not the proper ones to measure whether the two investments underperformed. This point is not appropriately addressed at the motion to dismiss stage");

*Cunningham*, 2017 WL 4358769, at *7 ("defendants' argument that plaintiffs used inappropriate benchmarks to assess the performance of the challenged options raises factual questions that are not properly addressed on a motion to dismiss"); *Short v. Brown Univ.*, 320 F. Supp. 3d 363, 372 (D.R.I. 2018) ("To the extent Brown . . . presents different benchmarks to measure the [p]lans' performance, it raises factual issues that cannot be decided on the pleading stage"); *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1352 (N.D. Ga. 2017) ("the proper benchmark can be more appropriately determined on summary judgment").

In any event, both of Defendants' arguments fail because, as discussed above, Section II.B.2, *supra*, and summarized in the table below, the comparators used in the Complaint are **investment vehicles tracking the index benchmarks selected by the Challenged Funds' investment managers**:

| **Investment Option** | **Manager-Selected Benchmark** | **Reference to Benchmark in Complaint and Fund Summary Prospectus** | **Available Investment Vehicle Tracking Benchmark** |
|---|---|---|---|
| The 50% Diamond Hill/50% Dodge & Cox Large Value Option | Russell 1000 Index/S&P 500 Index | CAC, ¶ 28 n.5; Defs. Ex. 9, at 3/4 (Average Annual Total Returns table); Defs. Ex. 8, at 3/5 (Average Annual Total Returns table) | Vanguard Russell 1000 Index Fund/Vanguard 500 Index Fund |
| The 50% Champlain/50% Diamond Hill Small Cap Option | Russell 2000 Index/ Russell 2500 Index | CAC, ¶ 30 n.8; Defs. Ex. 10, at 3 (Average Annual Total Returns table); Defs. Ex 11, at 3/5 (Average Annual Total Returns table) | Vanguard Russell 2000 Index Fund/ iShares Russell Small/Mid-Cap Index Fund |
| The Lazard Emerging Markets Fund | MSCI Emerging Markets Index | CAC, ¶ 32; Defs. Ex. 12, at 5/6 (Average Annual Total Returns | Fidelity Emerging Markets Index Fund |

| | | table) | |
|---|---|---|---|
| The 50% Causeways/50% BNY Mellon International Option | MSCI EAFE Index | CAC, ¶ 34 n.13; Defs. Ex. 13, at 3/5 (Average Annual Total Returns table); Defs. Ex. 14, at 4/5 (Average Annual Total Returns table) | iShares MSCI EAFE International Index Fund |

Accordingly, Plaintiff's underperformance analysis based on the Challenged Funds' manager-designated benchmarks is entirely appropriate. *See, e.g., Sacerdote*, 2017 WL 3701482, at *10 ("allegations that [defendant] breached its fiduciary duty by offering actively managed funds that did not have a 'realistic expectation of higher returns' also plausibly support a prudence claim at this stage"); *Braden*, 588 F.3d at 596-97 (refusing to dismiss complaint where plaintiff alleged that defendants "did not change the options included in the Plan despite the fact that most of them underperformed the market indices they were designed to track"); *Terraza*, 241 F. Supp. 3d at 1076 (N.D. Cal. 2017) (denying motion to dismiss complaint that alleged, *inter alia*, that investment options underperformed compared to their benchmark). Meanwhile, the allegations regarding available alternative investment options, which mimic the manager-designated benchmarks, are not only also appropriate, but cement the reasonable inference of Defendants' deficient monitoring process. *See Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) ("For instance, the complaint may allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that adequate investigation would have uncovered that alternative.") (citing *PBGC*, 712 F.3d at 718); *see also Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 914 (W.D. Mo. 2017) ("arguments that the fees are not excessive and the comparisons to the Vanguard funds are inappropriate raise factual issues that cannot be resolved in a motion to dismiss"); *see also Miller v. Autozone, Inc.*, 2020 WL 6479564, at *4 (W.D. Tenn. Sept. 18,

2020) ("this Court declines to rule on the reasonableness of comparing actively-managed funds to passively-managed index funds on a motion to dismiss").[3]

Moreover, the Plan's participant fee disclosures, which Defendants submit in support of their Motion, use largely the same benchmarks and, globally, use market indices as benchmarks for all of the Plan's investment options. *See, e.g.*, Defs. Ex. 6 (2016 Annual Fee Disclosure), at F4 (Russell 1000 Index used for the Dodge & Cox Stock portion of the 50% Diamond Hill/50% Dodge & Cox Large Value Option); F5 (Russell 2000 Index for the Champlain portion of the 50% Champlain/50% Diamond Hill Small Cap Option), F6 (MSCI Emerging Markets Index for the Lazard Emerging Markets Fund). Those disclosures expressly note that the "investment performance of each investment option" is provided with the "appropriate benchmark, or index," (*id.* at F3), so it is both astounding and hypocritical that Defendants now take the position that the Challenged Funds' specific indices, or market indices in general, are improper benchmarks. Indeed, ***Defendants later rely on the same index benchmarks to argue that the Challenged Funds did not underperform***. *See, e.g.*, Memo, at 16 (asserting that the "Lazard Emerging Markets Fund's ten-year returns outperformed its benchmark in 2014, 2016, and 2017," citing, *inter alia*, Defs. Ex. 5, at 6, which uses the "MSCI Emerging Markets Index" as the benchmark).

Defendants cannot have their cake and eat it, too. Moreover, if Defendants are correct here, then they either breached their fiduciary duty by imprudently providing inappropriate benchmarks or misleading Plan participants as to the appropriate benchmarks. *See In re Avon*

---

[3]Defendants also attempt to distinguish three of the Challenged Funds from the available alternatives provided in the Complaint on the basis that those Funds are hybrids of two constituent funds. Memo, at 12 n.13. Plaintiff has, however, provided an alternative for each of the constituent funds, and there is nothing to prevent Defendants from offering hybrids of those alternatives or all of the alternatives in general for Plan participants to allocate. *See Sacerdote*, 2017 WL 3701482, at *11("nothing in ERISA requires fiduciaries to limit plan participants' investment Options in order to increase the Plan's ability to offer a particular type of investment (such as funds offering institutional share classes). Indeed, courts have bristled at 'paternalistic' theories that suggest ERISA "'forbids plan sponsors to allow participants to make their own choices'") (citation omitted).

*Prod., Inc. Sec. Litig.*, No. 05 CIV.6803 LAK MHD, 2009 WL 848083, at *13 (S.D.N.Y. Mar. 3, 2009) ("The obligations of ERISA fiduciaries embrace the requirement that they 'not materially mislead' plan participants") (citing *Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 (3d Cir. 2007), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014)); *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88–89 (2d Cir.2001)); *see Braden*, 588 F.3d at 599 ("Information is material if there is a substantial likelihood that nondisclosure 'would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled'").

By contrast, the plaintiffs in almost all of Defendants' authorities failed to sufficiently tie the comparator to the challenged fund. *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (proposed benchmark funds were "not close enough"); *Davis v. Salesforce.com, Inc.* ("*Salesfroce.com*"), No. 20-CV-01753-MMC, 2020 WL 5893405, at *3-*4 (N.D. Cal. Oct. 5, 2020) ("Passively managed funds, however, ***ordinarily*** cannot serve as meaningful benchmarks for actively managed funds," and "the complaint here contains no factual allegations to support a finding that the passively managed funds identified therein 'provide a meaningful benchmark'") (emphasis added and citation omitted); *Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019) ("[p]laintiffs' conclusory assertion that the funds were similar is belied by the facts actually set forth in and incorporated into the [c]omplaint"); *PBGC*, 712 F.3d at 723 ("the [a]mended [c]omplaint fails to connect its allegation that Standard & Poor's downgraded the credit ratings on $7 billion worth of Alt–A mortgages to its conclusion that Morgan Stanley breached its fiduciary duties. For instance, Saint Vincent's does not allege that Standard & Poors 'downgraded' any of the securities held in the Portfolio. Nor does the [a]mended [c]omplaint

allege that any such downgrade made those securities imprudent in light of the other investments in the Portfolio"); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("Meiners does not match that benchmark by alleging that cheaper alternative investments with some similarities exist in the marketplace").[4] Accordingly, to put it mildly, Defendants' authorities do not support their position.

### 2. The Complaint's underperformance allegations create a reasonable inference of imprudence

Defendants then challenge the Complaint's underperformance allegations, stunningly using either the same or other index benchmarks they just maligned as "inappropriate." Memo, at 15-17. In any event, Defendants first contend that a "three- to five-year period of underperformance is insufficient to create an inference of imprudence." This argument, as with their assertion that the investment manager-selected indices used to benchmark the Challenged Funds are inappropriate, is a factual dispute that should not be resolved on a motion to dismiss. *See, e.g.*, *Sacerdote*, 2017 WL 3701482, at *10 ("Defendant's assertion that plaintiffs 'use patently inappropriate benchmarks over jury-rigged performance periods' raises factual questions that are not appropriately addressed at this time"); *Austin v. Union Bank & Tr. Co.*, No. 3:14-CV-00706-ST, 2016 WL 8732420, at *10 (D. Or. Feb. 19, 2016), 2016 WL 1257897 (D. Or. Mar. 30, 2016) (opposing experts' "conflicting opinions [on the appropriate benchmark

---

[4]The sole exception is *Bekker v. Neuberger Berman Grp. LLC*, an outlier where the court acknowledged that the manager-designated index benchmark, the S&P 500, was a proper "performance metric," but then inexplicably found that a fund that replicated the index could not serve as a proper investment alternative because they followed different strategies. No. 16 CV 6123-LTS-BCM, 2018 WL 4636841, at *7 (S.D.N.Y. Sept. 27, 2018). No court has followed *Bekker* in this respect, and, moreover, the *Bekker* court also misapplied the pleading standard. *Compare id.* ("Plaintiff's factual allegations are merely consistent with a possible breach of [d]efendants' fiduciary duties, but are not sufficiently suggestive of wrongdoing to cross the plausibility threshold, and thus are inadequate to survive a motion to dismiss") *with Sweda*, 923 F.3d at 326 ("'[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party'") (quoting *Braden*, 588 F.3d at 597).

duration] cannot be resolved on summary judgment").  To the extent the Court entertains this argument, however, industry experts and courts agree that three- and five-year trailing performance comparisons should be used for benchmarking purposes because they encompass a period closer to a full market cycle.  *See, e.g.*, *Assembling a Robust Investment Policy Statement for Endowments and Foundations*, THE PNC FINANCIAL SERVICES GROUP, INC., Jan. 8, 2020 (a "fund's investment performance should be reviewed regularly, such as on an annual basis; however, the emphasis with regard to performance should be focused on results achieved over a full market cycle (typically a three-to-five year period)");[5] *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2019 WL 4735876, at *13 (S.D.N.Y. Sept. 27, 2019) (advisor satisfied fiduciary duty where it regularly presented "three and five-year benchmarks" of investment options); *New Orleans Employers Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1361 (N.D. Ga. 2009) (similar).

Of course, longer-term benchmarking can be appropriate if it is the result of a conscious decision.  For example, in *Jenkins v. Yager*, the defendants presented evidence on **summary judgment** that they intentionally pursued a "a long-term plan," and the plan investment advisor's testimony that he "spoke to [the fiduciary] about once a week and frequently discussed the performance of the plan's funds[,] . . . provided [the fiduciary] with written information on fund performance at least six times a year[,] . . . [which] the fiduciary testified that he reviewed."  444 F.3d 916, 925 (7th Cir. 2006).[6]  There is, of course, no such evidence here.[7]

---

[5] *Available at* https://www.pnc.com/insights/corporate-institutional/manage-assets/assembling-a-robust-investment-policy-statement-for-endowments-foundations.html.

[6] The court in *Salesforce.com*, which Defendants cite, quoted *Dorman v. Charles Schwab Corp.*, which relied on *Jenkins* in turn, but overlooked its distinct procedural posture.  *See Salesforce.com*, 2020 WL 5893405, at *4; *Dorman*, No. 17-CV-00285-CW, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019).  The *Salesforce.com* court also cited *Patterson*, which relied on *Dorman* as well.  *Patterson*, 2019 WL 4934834, at *11.

[7] Of course, the fiduciaries here would have to explain why they would choose a ten-year horizon (in the unlikely event they actually did) because, as Plaintiff will explain at summary judgment and trial, most competent investment

Second, Defendants argue that the Challenged Funds outperformed their benchmarks and the proffered alternative investments during various points in the proposed Class Period. Memo, at 16-17.[8] But, just as brief periods of underperformance do not "compel ERISA fiduciaries to reflexively jettison investment options," brief periods of outperformance do not justify retention of funds that largely and consistently underperform their benchmarks. *Patterson*, 2019 WL 4934834, at *11. If that were the law, then underperforming funds would virtually never need to be replaced, as even perennial underperformers occasionally outperform their benchmarks by some metric; of course, this would contradict the demanding duty of prudence and loyalty. *See Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 208 (2d Cir. 2016) ("ERISA subjects its fiduciaries to what have been called the 'highest duties known to law'"). Moreover, Defendants rely, in part, on the Challenged Funds' ten-year performance, which, as discussed above, is too long of a timeframe for proper benchmarking.

*Patterson*, which Defendants rely on, actually highlights the reasonable inference that they failed their duty to monitor the Plan investments. There, the defendant fiduciaries removed one of the challenged funds prior to the action, which indicated that they were actively monitoring the plan's funds. *See Patterson*, 2019 WL 4934834, at *11 ("The [p]lan's fiduciaries clearly adjusted to changing information, as they removed the Mid Cap Fund from the menu of [p]lan offerings in early 2016"). There is, of course, no such indication here. Instead, all of the Challenged Funds remain in the Plan even today. *See* Defs. Ex. 4, at 3 of 10.[9]

---

professionals consider such a horizon to be too long in light of the length of the average market cycle and because, if a fiduciary waits for ten years to determine if a fund should be replaced, the fiduciary recklessly places participants' retirement investments at great risk.

[8] Defendants frame this argument as two different points, but the proffered alternatives track the benchmark indices (CAC, ¶¶ 29, 31, 33, 35), so a Challenged Fund that outperforms the benchmark would, naturally, outperform the proffered alternative as well.

[9] Defendants also rely on *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019). Despite acknowledging the duty to monitor, the court there only viewed the allegations

Defendants also mention that there is "no dispute" regarding the Plan's other investment options, which supposedly counters an inference of imprudence. Memo, at 16. That the other Plan funds did not consistently underperform only suggests, at most, that Defendants satisfied their duties during the "initial selection" of the Plan funds. *Tibble*, 135 S. Ct. at, 1829. There is, of course, no evidence to support that hypothetical, and Defendants just as likely could have been blindly fortunate. Moreover, the duty at issue here is Defendants' "continuing duty to monitor [Plan] investments and remove imprudence ones." *Id.* at 1828. In sum, Plaintiff's allegations on the retention of the Challenged Funds -- despite their consistent underperformance and relative expense -- are sufficient to establish, at the pleading stage, to confirm that Defendants breached their duty to monitor the Plan investments. "Defendants may ultimately persuade the Court that they had legitimate reasons to select the challenged investment options, and thus did not act imprudently," but Plaintiff has "satisfied her burden at this stage of the litigation by alleging facts from which the Court can reasonably infer that the Defendants' decision-making process was flawed." *Terraza*, 241 F. Supp. 3d at 1077; *see Vellali*, 308 F. Supp. 3d at 686 ("[T]he question of whether the defendants did in fact reasonably weigh the benefits and burdens when selecting [higher-cost] shares over [lower-cost] shares is more appropriately taken up at the summary judgment stage").

## C. The Plan's Excessive Recordkeeping And Administrative Fees Create A Reasonable Inference That Defendants Breached Their Fiduciary Duties

Contrary to Defendants' contention, Plaintiff has plainly stated a claim for breach of

---

in the lens of the initial selection process. *Ferguson*, 2019 WL 4466714, at \*9 ("Nothing in the SAC indicates the existence of a 'warning sign' or alarming signal DST Defendants should have been aware **before** making these investments") (emphasis added). Moreover, like *Bekker*, the *Ferguson* court misapplied the pleading standard. *Compare id.* (noting the allegations were "merely consistent" with a breach) *with Sweda*, 923 F.3d at 326 ("'[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party'") (quoting *Braden*, 588 F.3d at 597).

fiduciary duty based on the Plan's excessive recordkeeping costs.

Defendants' attempt to garner dismissal of Plaintiff's recordkeeping allegations should not be countenanced. Though Defendants point to the $165 per participant figure that encompass "***both*** direct payments and indirect revenue sharing" (Memo, at 17 (emphasis added)), Plaintiff references the *401k Averages Book* to demonstrate that Defendants caused the Plan to pay higher ***direct*** recordkeeping and administrative fees than those incurred by much smaller plans. CAC, ¶¶ 22-23.

Furthermore, Plaintiff's recordkeeping and administrative fee allegations are based on more than just the findings of the *401k Averages Book*, which Defendants do not address. As provided in the Complaint, courts have found that smaller plans should be paying substantially less administrative costs than those borne by participants in the Plan. *Id.* ¶ 22. These circumstantial facts signal that Defendants' fiduciary process was (and is) deficient, and are sufficient to state a claim at the pleading stage. *See, e.g.*, *Pinnell v. Teva Pharms. USA, Inc.*, 2020 WL 1531870, at *6 (E.D. Pa. Mar. 31, 2020) (finding plaintiffs plausibly stated claim when they alleged, *inter alia*, that fiduciaries of $1.9 billion should have secured recordkeeping costs much lower than $50 per participant); *Cassell*, 285 F. Supp. 3d at 1064 (finding it "plausible from those facts [that the plan paid significantly above $30 per participant and] that [d]efendants could have obtained less expensive record-keeping services by soliciting competitive bids"); *Sacerdote*, 2017 WL 3701482, at *9 (drawing similar inference where plans' recordkeeping fees "far exceeded" the $35 per participant "market rate"); *Marshall v. Northrop Grumman Corp.*, 2017 WL 2930839, at *10 (C.D. Cal. Jan. 30, 2017) (similar based on $25 per participant baseline); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 467 (N.D. Cal. 2017) (finding fiduciary breach claims plausible where plaintiffs alleged that plan expenses were

significantly higher than "average for similarly-sized plans with over $1 billion in assets").[10]

### D. The Complaint States Plausible Co-Fiduciary And Alternative Knowing Participation Claims

Defendants argue that Plaintiff's claim for failure to monitor co-fiduciaries (Count II), co-fiduciary breach (Count II), and knowing participation in a fiduciary breach (Count III), must fail because the CAC does not allege any facts regarding the fiduciary monitoring process and the underlying breaches were not sufficiently pled. Memo at 18. Obviously this is incorrect, as the totality of the allegations in the Complaint and arguments herein make clear that Plaintiff has stated a claim for breach of fiduciary duty at this preliminary stage. *See Falberg*, 2020 WL 3893285, at *15 ("Because Plaintiff's other ERISA claims survive Defendants' motion . . . Plaintiff's monitoring claim survives as well") (collecting cases).

Finally, Plaintiff's claim in Count III for Liability for a Knowing Breach of Trust, in the alternative, should stand at the present time. Defendants argue that there are no allegations supporting this claim. Memo at 18, n.22. Plaintiff is permitted to plead alternative claims under Rule 8(d)(2), and does so here in the event any of the Defendants, who have not answered the Complaint, attempt to disclaim fiduciary responsibility. *See* Fed. R. Civ. P. 8(d)(2). Given the roles and relationships of the Defendants identified in the Complaint (¶¶ 5, 10-12), it should be an obvious inference that each Defendant knew or should have known of the nonfeasance or malfeasance of the others. *See, e.g.*, *In re Sprint Corp. ERISA Litig.*, No. 03-2202-JWL, 2004 WL 2182186, at *4 (D. Kan. Sept. 24, 2004) ("the court has no difficulty concluding that the

---

[10]Defendants inappropriately rely on *Divane* for support in their bid to have Plaintiff's recordkeeping claims dismissed, but that reliance is misplaced. 953 F.3d at 985. First *Divane* was decided under the Seventh Circuit's harsher pleading standard. *See Martin v. CareerBuilder, LLC*, No. 19-CV-6463, 2020 WL 3578022, at *5 n.8 (N.D. Ill. July 1, 2020) ("others have argued that *Divane* imposes a different pleading standard on ERISA plaintiffs than *Sweda* or the Eighth Circuit's decision in *Davis v. Washington University in St. Louis*, 960, F.3d 478 (8th Cir. 2020)"). Furthermore, *Divane* was decided after the parties underwent more than a year of discovery, offering insight into the value of the recordkeeping services rendered to the plan, and the court found that the recordkeeping arrangement there was justified by special circumstances, including access to certain products and termination penalties. *See id*. at 984, 986.

allegations contained in plaintiffs' newly asserted co-fiduciary Claim IV adequately state a claim against the director defendants").  Dismissal of this claim would be premature.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.  Should the Court, however, find the claims and allegations against Defendants deficient in any manner, Plaintiff respectfully requests leave to amend to cure any such deficiencies.  Leave to amend should be "freely given when justice so requires" under Fed. R. Civ. P. 15(a).  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Plaintiff stands ready to add further allegations regarding the defects in Defendants' investment and service provider selection and monitoring processes should the Court require further amplification of Plaintiff's claims.


DATED: January 19, 2021                       SHEPHERD, FINKELMAN, MILLER
                                                                   & SHAH, LLP

                                                            /s/ *Laurie Rubinow*
                                                            James E. Miller
                                                            Laurie Rubinow
                                                            Shepherd Finkelman Miller & Shah, LLP
                                                            65 Main Street
                                                            Chester, CT 06412
                                                            Telephone: (860) 526-1100
                                                            Facsimile: (866) 300-7367
                                                            Email: jmiller@sfmslaw.com
                                                                        lrubinow@sfmslaw.com

                                                            James C. Shah
                                                            Michael P. Ols
                                                            Alec J. Berin
                                                            Shepherd Finkelman Miller & Shah, LLP
                                                            1845 Walnut Street, Suite 806
                                                            Philadelphia, PA 19103
                                                            Telephone: (610) 891-9880
                                                            Facsimile: (866) 300-7367
                                                            Email: jshah@sfmslaw.com
                                                                        mols@sfmslaw.com

aberin@sfmslaw.com

Kolin C. Tang
Shepherd Finkelman Miller & Shah, LLP
1401 Dove Street, Suite 510
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

*Attorneys for Plaintiff, the Plan
and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2021, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*Laurie Rubinow*
Laurie Rubinow
SHEPHERD FINKELMAN MILLER
 & SHAH, LLP