**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KAILA GONZALEZ, Individually and as a
Representative of a class of similarly
situated persons, on behalf of the
NORTHWELL HEALTH 403(B) PLAN,

                  Plaintiff,

        -against-

NORTHWELL HEALTH, INC., the
NORTHWELL HEALTH 403(B) PLAN
COMMITTEE and DOES No. 1-10,
Whose Names Are Currently Unknown,

                 Defendants.

1:20-cv-03256 RPK RLM

**Date of Service: October 14, 2021**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NORTHWELL HEALTH,**
**INC. AND THE NORTHWELL HEALTH 403(B) PLAN COMMITTEE'S**
<u>**MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES**</u>
<u>**12(B)(1) AND 12(B)(6)**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND............................................................................................ 5

    I.      The Plan ............................................................................................... 5

    II.     The Four Challenged Investments ......................................................... 7

    III.   The Alleged Alternative Investments ..................................................... 8

    IV.   Plaintiff's Investment Gains Over the Class Period. ............................. 9

    V.    The Plan's Recordkeeping and Administrative Services....................... 9

ARGUMENT ................................................................................................................ 10

    I.      Plaintiff Lacks Standing to Bring Her Claims ...................................... 10

          A.     Plaintiff Did Not Suffer an Injury in Fact Because She Would Be Worse Off If She Invested in the Alternative Investments She Proposes ................................................................................... 12

          B.     Plaintiff Fails to Plead Defendants Caused Her Alleged Injury .............. 13

    II.     Plaintiff's Amended Complaint Fails to State a Claim........................... 14

          A.     Plaintiff's Investment Claims Fail as a Matter of Law .......................... 15

          B.     The Alleged Alternative Investments Are Not Meaningful Comparators ................................................................................ 17

          C.     The Performance of the Challenged Investments Does Not Create an Inference of Imprudence. ........................................................ 21

    III.   Plaintiff's Recordkeeping Allegations Do Not State a Claim ............................ 23

    IV.   Plaintiff's Derivative Claims Fail as a Matter of Law ......................................... 24

CONCLUSION.............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access 4 All, Inc. v. G & T Consulting Co., LLC*,
   No. 06-13736, 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ........................................9, 10, 11

*Ali v. New York City Dep't of Transp.*,
   No. 14-0312, 2014 WL 5822625 (E.D.N.Y. Nov. 7, 2014) ................................................9, 11

*Bekker v. Neuberger Berman Grp. LLC*,
   No. 16-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) .............................................3, 17

*Brown v. Daikin Am., Inc.*,
   No. 18-11091, 2021 WL 1758898 (S.D.N.Y. May 4, 2021) ....................................................3

*Cho v. Prudential Ins. Co. of Am.*,
   No. 19-19886, 2021 WL 4438186 (D.N.J. Sept. 27, 2021)...............................................18, 21

*Davis v. Salesforce.com, Inc.*,
   No. 20-1753, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ..............................................17, 21

*Davis v. Wash. Univ.*,
   960 F.3d 478 (8th Cir. 2020) ................................................................................5, 17, 19, 20

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020) ...................................................................................... *passim*

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   No. 17-6685, 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) .................................3, 15, 21, 22

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).............................................................................................................14

*Forman v. TriHealth, Inc.*,
   No. 19-0613, 2021 WL 4346764 (S.D. Ohio Sept. 24, 2021) ...............................................24

*Garelick v. Sullivan*,
   987 F.2d 913 (2d Cir. 1993)..................................................................................................14

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ..................................................................................................5

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
   No. 20-1493, 2021 WL 3417843 (W.D. Pa. Aug. 3, 2021)....................................................23

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................................13

*Liu v. United States Cong.*,
    834 F. App'x 600 (2d Cir. 2020) ..................................................................13

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ...............................................................3, 4, 16

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...........................................................5, 19, 20

*Majad ex rel. Nokia Ret. Sav. & Inv. Plan v. Nokia, Inc.*,
    528 F. App'x 52 (2d Cir. 2013) ....................................................................24

*Ortiz v. Am. Airlines, Inc.*,
    5 F.4th 622 (5th Cir. 2021) .......................................................................2, 14

*Parmer v. Land O'Lakes, Inc.*,
    518 F. Supp. 3d 1293 (D. Minn. 2021) .......................................................18

*Patterson v. Morgan Stanley*,
    No. 16-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........................... *passim*

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    No. 15-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016) ..................3, 5

*Smith v. CommonSpirit Health*,
    No. 20-0095, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ........................18

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..................................................................... *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................5

*Thole v. U. S. Bank N.A*,
    140 S. Ct. 1615 (2020) .......................................................................11, 12, 13

*Tobias v. NVIDIA Corp.*,
    No. 20-6081, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ..................23

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .............................................................................11, 12

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
    843 F.3d 561 (2d Cir. 2016) .........................................................................12

*In re UBS Erisa Litig.*,
    No. 08-6696, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) ....................................10, 12, 13

*Wehner v. Genentech, Inc.*,
    No. 20-6894, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) .......................................................24

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018) ....................................................................................3, 16

**Statutes**

Employee Retirement Income Security Act of 1974 ............................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1)....................................................................................................9, 11

Fed. R. Civ. P. 12(b)(6)................................................................................................. *passim*

## PRELIMINARY STATEMENT

Northwell Health, Inc. ("Northwell") is a nonprofit healthcare network, as well as New York State's largest healthcare provider and private employer.[1]  Northwell sponsors the Northwell Health 403(b) Plan (the "Plan"), an individual account plan offered to Northwell employees as a vehicle for tax-deferred retirement savings.  In her Amended Complaint, Plaintiff Kaila Gonzalez ("Plaintiff") alleges that Northwell and the Northwell Health 403(b) Plan Committee (collectively, the "Defendants") breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to the Plan.  Specifically, Plaintiff alleges that four of the Plan's investment options (the "Challenged Investments")— among the menu of twenty-five investment options in the Plan—were too expensive and "underperformed" compared to certain alternative investments identified by Plaintiff (the "Alternative Investments").  Plaintiff further claims that the Plan's recordkeeping fees were excessive.  Based on these alleged *outcomes*, Plaintiff asks this Court to infer that the *process* used by the fiduciaries to monitor the Plan's investments and fees must have been so defective as to constitute a fiduciary breach.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("*St. Vincent*").

As a threshold matter, Plaintiff's Amended Complaint must be dismissed because she lacks standing under Article III of the United States Constitution to assert claims related to the Challenged Investments.  U.S. Const. art. III.  Specifically, Plaintiff cannot meet her burden to establish that (1) she has suffered an "injury in fact" or that (2) any alleged injury was caused by

---

[1] https://www.northwell.edu/sites/northwell.edu/files/2021-02/Fact-Sheet-February-2021.pdf (last visited Oct. 14, 2021) ("Northwell Fact Sheet").

Defendants—necessary elements of Article III's case or controversy requirement.  First, a comparison of the actual performance of the Challenged Investments to that of the proposed Alternative Investments in the time frame during which Plaintiff invested in the Challenged Investments demonstrates that Plaintiff would have actually made *less* on her investments had she invested in the proffered Alternatives instead.  Having suffered no losses by virtue of her investment in the Challenged Investments, Plaintiff cannot establish the requisite injury in fact for constitutional standing.

Second, even if Plaintiff could establish an injury sufficient to confer standing (she cannot), she fails to plausibly allege that any purported injury was caused by Defendants' alleged conduct.  Plaintiff's conclusory assertion that she was injured "*as a result* of the Plan's imprudent investment options and excessive fees . . . " is insufficient to plausibly allege a causal connection, especially given that Plaintiff has not shown that the inclusion of the Challenged Investments in the Plan's investment lineup actually resulted in any comparative diminution in value of her account.  Indeed, given that Plaintiff fails to assert that she would have invested in the Alternative Investments she proposes had they been offered in the Plan, she cannot establish that any alleged loss is attributable to Defendants' conduct, as opposed to her own investment choices.  Without plausibly asserting causation for Article III purposes, Plaintiff lacks constitutional standing.  *See Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 629 (5th Cir. 2021).

Even if Plaintiff had constitutional standing to assert claims related to the Challenged Investments (she does not), her claims nonetheless fail as a matter of law and must be dismissed.  Courts of Appeals have soundly rejected the theories advanced in the Amended Complaint and have affirmed Rule 12(b)(6) dismissals of similar claims where, as here, challenged investments are part of a diverse menu of investment options with a reasonable range of fees.  *See Divane v.*

*Nw. Univ.*, 953 F.3d 980, 991–92 (7th Cir. 2020), *cert. granted*, 141 S. Ct. 2882 (U.S. July 2, 2021) (No. 19-1401) (affirming dismissal of complaint alleging poor performance and excessive recordkeeping fees where the plan offered investment options with a range of fees from 0.05% to 1.89%); *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming dismissal of complaint alleging defendant breached its fiduciary duties by offering expensive and poorly performing investment options with a range of fees from 0.05% to 1.24%); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669, 671–73 (7th Cir. 2011) (affirming dismissal of complaint alleging poor performance and excessive fees where plan offered investment options with a range of fees from 0.03% to 0.96%).

Within the Second Circuit, district courts likewise have dismissed similar allegations where, as here, a complaint alleges that recordkeeping fees are excessive and that plan investment options performed worse than selected comparators identified in a complaint.  *See Brown v. Daikin Am., Inc*., No. 18-11091, 2021 WL 1758898, at *7 (S.D.N.Y. May 4, 2021) ("[A]llegations of underperformance do not reveal a defective methodology by which the investment options were selected. . . "); *Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-6685, 2019 WL 4466714, at *12 (S.D.N.Y. Sept. 18, 2019); *Bekker v. Neuberger Berman Grp. LLC*, No. 16-6123, 2018 WL 4636841, at *7 (S.D.N.Y. Sept. 27, 2018); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 15-1839, 2016 WL 7494320, at *15 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017).  That is because regardless of the performance or fees of any particular investment, a court cannot infer that the process for selecting and monitoring investment options or fees breached any fiduciary duties where the Plan offers participants the

choice to select low-cost passively managed funds or more expensive actively managed funds, depending on their own personal preferences.

Here, the Plan makes available a range of investment options with fees ranging from 0.02% to 1.25%, including the very types of passively-managed index funds that the Amended Complaint alleges should be offered in a 403(b) plan. *See infra* at pp. 15-17. Under these circumstances, ERISA is not paternalistic and does not prohibit plans from also offering more expensive actively managed funds for participants who prefer them, as actively managed funds have different risks and returns than index funds. Instead, ERISA leaves those investment choices to the individual participants who have the greatest stake in their own retirement outcomes.[2]

Against that framework, Plaintiff's allegations fail to state a claim. First, Plaintiff asks the Court to infer that the fiduciary process was flawed because the four *actively managed* Challenged Investments underperformed the *passively managed index* funds identified in the Amended Complaint. That is an improper "apples-to-oranges" comparison, which alone is fatal to Plaintiff's claims. *See infra* at pp. 17–21. And the Plan offered the very type of index funds that Plaintiff claims she prefers. Moreover, the Alternative Investments Plaintiff proposes have different asset allocations than the Challenged Investments, which means that they have different risk profiles and are not comparable as a matter of law. *See St. Vincent*, 712 F.3d at 727 (affirming Rule 12(b)(6) dismissal of ERISA fiduciary breach claims challenging plan

---

[2] *See Divane*, 953 F.3d at 988–92 ("Plaintiffs also spill much ink in their amended complaint describing their clear preference for low-cost index funds. We understand their preference and acknowledge the industry may be trending in favor of these types of offerings. Plaintiffs failed to allege, though, that Northwestern did not make their preferred offerings available to them. In fact, Northwestern did. Plaintiffs simply object that numerous additional funds were offered as well. But the types of funds plaintiffs wanted (low-cost index funds) *were and are* available to them, eliminating any claim that plan participants were forced to stomach an unappetizing menu.") (emphasis in original) (citations and quotations omitted); *Loomis*, 658 F.3d at 671–73 (rejecting the "paternalistic" theory that a plan should not offer expensive or volatile performing actively managed options)).

investments in mortgage bond securities because the allegations failed to account for the fact that different types of mortgage bond securities carried different risks and therefore could not be compared). Lastly, Plaintiff's claim that the Plan paid excessive recordkeeping fees because $45 per participant for recordkeeping is too much also fails because the Amended Complaint fails to plead any facts alleging that the fees were excessive or unreasonable in light of the services provided; in fact, the Seventh Circuit recently affirmed dismissal of similar allegations in *Divane* where that plan's fees were three to five times the fees paid by the Plan here. *See infra* at pp. 22–24.

Of course, it always is possible to identify better performing investment options in hindsight—after all, only one fund can be the best performing fund in any grouping. That does not create an inference that every other fund is imprudent or unreasonable. And it always is possible to allege that fees could have or should have been lower. Those allegations, however, do not state a claim for fiduciary breach under ERISA. The Amended Complaint fails as a matter of law and should be dismissed.

## FACTUAL BACKGROUND[3]

### I. The Plan.

Northwell's 403(b) Plan is a "defined contribution" retirement plan sponsored by Northwell and offered to its employees as a benefit, in order to provide those employees with a

---

[3] The facts referenced herein are those alleged in the Amended Complaint (cited as "¶ _"), documents referenced or relied upon therein, or other materials the content of which may be judicially noticed. In ruling on a Rule 12(b)(6) motion, the Court may consider documents incorporated into the Amended Complaint by reference, matters subject to judicial notice, and those documents integral to the Amended Complaint. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In ERISA cases, the court can consider the plan and plan-related documents, as well as statutorily required disclosures, IRS Forms 5500, and fund prospectuses. *See, e.g., Rosen*, 2016 WL 7494320, at *3 ("[T]he Court may also consider matters subject to judicial notice, which include public disclosure documents filed with governmental agencies, such as the Securities and Exchange Commission and the Department of Treasury" and taking judicial notice of the plan's Form 5500s); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018) (considering prospectuses and plan-related documents, noting "ERISA plaintiffs typically have extensive information . . . because of ERISA's disclosure requirements"); *Davis v. Wash. Univ.*, 960 F.3d 478, 484 n.3 (8th Cir. 2020) (considering "fund prospectuses and plan disclosure documents"); *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (considering plans summaries and prospectuses); *cf. St. Vincent*, 712

vehicle for tax-deferred retirement savings.  (*See* ¶ 2).  At the end of 2018, the Plan had 56,289 participants with account balances and assets totaling approximately $5.6 billion dollars.  (¶ 4).

The Plan offers a diverse menu of approximately twenty-five investment options from which participants can choose to direct their retirement funds based on their personal investment preferences and financial goals.  (*See* ¶ 18; *see* 2020 Ann. Fee Disclosure, Declaration of Melissa D. Hill ("Hill Decl.") at Ex. 1; 2014 Ann. Fee Disclosure, Hill Decl. at Ex. 2).  In 2020, these included: (a) two bond options (one actively managed fund and one passively managed index fund); (b) nine equity options (three passively managed index funds and six actively managed investment options with different strategies); (c) the Vanguard Wellington Fund (an actively managed fund that provides a balanced exposure to stocks and bonds); (d) a suite of twelve passively managed target date options, which automatically change their asset allocation percentages of equities and bonds over time as the identified target retirement date approaches; and (e) the MetLife Fixed Interest Separate Account option.  *Id.*  Each of these options offers a different mix of holdings, different geographic and industrial sector focuses, and different investment strategies.

These investment options carry a range of fees.  As of 2014, the fees ranged from 0.02% to 1.31% (*i.e.*, $0.20 to $13.10 for every $1,000 invested).[4]  (*See* 2014 Ann. Fee Disclosure, Hill Decl. at Ex. 2).  The target date funds in 2014 charged fees of 0.16% to 0.18%, and the index funds charged fees of 0.02% to 0.12%, such that participants could choose from among 16 different options with fees of 0.18% or lower.  *Id.*

---

F.3d at 720 (explaining that ERISA's "extensive disclosure requirements," through statutorily required Annual Reports and participant disclosures, give plaintiffs information about the plan investment options).

[4] Also referred to in terms of "basis points" as 2 bps and 131 bps, respectively.

By 2020, the fees were even lower.  They ranged from to 0.02% to 1.24%.  (i.e., $0.20 to $12.40 for every $1,000 invested).  (*See* 2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1.).  If Plan participants prefer investment options with fees on the lower end of this range, they can select from among 16 funds with net expense ratios of 0.09% or lower, including the suite of twelve passively managed target date funds and four other passively managed index funds: (1) the Vanguard Total Bond Market Index fund (0.03%), (2) the Vanguard Institutional Index fund (0.02%), (3) the Vanguard Extended Market Index fund (0.05%), and (4) the Vanguard FTSE All-World ex-US Index fund (0.08%).  *Id.*  In addition, several investment options in the lineup, including all of the Challenged Investments, offer revenue sharing rebates to participants via "plan service credits," which lowers the net expense ratios on those funds.  (*See* June 2020 K. Gonzalez Quarterly Statement, Hill Decl. at Ex. 4 at 6-7).[5]

## II.   **The Four Challenged Investments.**

From these twenty-five investment options offered to participants, Plaintiff challenges four: (1) the 50% Diamond Hill/50% Dodge & Cox Large Cap Value Option, (2) the 50% Champlain/50% Diamond Hill Small Cap Option,[6] (3) the Lazard Emerging Markets Fund, and (4) the 50% Causeway/50% BNY Mellon International Option[7] (collectively, the "Challenged Investments") (¶¶ 30–37).  The Challenged Investments are all actively-managed funds holding equities and short term cash investments with unique investment objectives and strategies,[8] and

---

[5] The quarterly statements provided to Plaintiff set forth the plan service credits.  The Amended Complaint discusses the quarterly statements and thereby incorporates them by reference.  ¶¶ fn. 6–7, fn. 10–11, fn. 14.

[6] In 2016, the Delafield Fund (DEFIX) was replaced by the Diamond Hill Small Mid Cap A fund and the option was renamed the 50% Champlain/50% Diamond Hill Small Cap Option.  *See* 2015 Ann. Fee Disclosure, Hill Decl. at Ex. 5 at 5; 2016 Ann. Fee Disclosure, Hill Decl. at Ex. 6 at 5.

[7] Before 2019, the 50% Causeway/50% BNY Mellon International Option was referred to as the "50% Causeway/50% Dreyfus International Option."  In 2019, the Bank of New York Mellon Corporation, who operated "the Dreyfus International Stock Fund," changed the name to "the BNY Mellon International Stock Fund."  *See* 2018 Ann. Fee Disclosure, Hill Decl. at Ex. 7 at 5; 2019 Ann. Fee Disclosure, Hill Decl. at Ex 3 at 5.

[8] *See generally* 2019 Diamond Hill Large Cap A Fund Summary Prospectus, Hill Decl., Ex. 8; 2019 Dodge & Cox Stock Fund Summary Prospectus, Hill Decl., Ex. 9; 2019 Champlain Small Co. Adv. Fund Summary Prospectus,

diverse exposure to different geographic regions and/or industrial sectors.[9]  Three of the four

Challenged Investments (all except for the Lazard fund) are 50/50 mixtures of two other

investments, which provide a distinctive blend of asset exposures and risks.

## III.    The Alleged Alternative Investments.

Plaintiff argues that the Plan should have replaced the four actively managed Challenged

Investment options with Alternative Investments (passively managed funds) identified in the

Amended Complaint that she claims performed better:

- Plaintiff alleges that the fiduciaries should have replaced the actively managed 50%
  Diamond Hill/50% Dodge & Cox Large Cap Value Option with three Vanguard
  passively managed index funds as alternatives (¶ 31);

- Plaintiff alleges that the fiduciaries should have replaced the actively managed 50%
  Champlain/50% Diamond Hill Small Cap Option with two passively managed index
  funds as alternatives (¶ 33);

- Plaintiff alleges that the fiduciaries should have replaced the actively managed Lazard
  Emerging Markets Fund with one passively managed index fund listed as an alternative
  (¶ 35); and

- Plaintiff alleges that the fiduciaries should have replaced the actively managed 50%
  Causeway/50% BNY Mellon International Option with one passively managed index
  fund listed as an alternative (¶ 37).

---

Hill Decl., Ex. 10; 2019 Diamond Hill Small-Mid Cap A Fund Summary Prospectus, Hill Decl., Ex. 11; 2019
Lazard Emerging Mkts. Fund Summary Prospectus, Hill Decl., Ex. 12; 2019 Causeway Int'l Value Inv. Fund
Summary Prospectus, Hill Decl., Ex. 13; 2019 BNY Mellon Int'l Option Summary Prospectus, Hill Decl., Ex. 14.
[9] *See, e.g.*, 2019 Lazard Emerging Mkts. Fund Ann. Rep., Hill Decl., Ex. 15 at 85–88; 2019 Causeway Int'l Value
Inv. Fund Ann. Rep., Hill Decl., Ex. 16 at 8–12; 2019 BNY Mellon Int'l Option Ann. Rep., Hill Decl., Ex. 17 at 10–
12.

The Amended Complaint does not identify anything about the specific holdings, risks, or investment strategies of the Challenged Investment Options or the Alternative Investments.  All of the Alternative Investments listed are passively managed index funds *similar to the index funds already in the Plan*.  *See supra* at pp. 6–7.

## IV.  Plaintiff's Investment Gains Over the Class Period.[10]

Plaintiff has invested in each of the Challenged Investments during at least part of the class period.  (¶ 10).  However, if Plaintiff had invested instead in the options she proposes as alternates, she would have earned at least $57.45 less on her investments than she actually earned with her account invested in the Challenged Investments.  *See* Cornerstone Declaration ("Cornerstone Decl.") at ¶ 8.

## V.  The Plan's Recordkeeping and Administrative Services.

The Amended Complaint alleges that "[f]or most of the Class Period until January 1, 2020," participants in the Plan paid $45 per participant per year for recordkeeping services required for the Plan.  (¶ 25).  These recordkeeping services are provided by Transamerica.  (¶ 21).  Participants also paid $15 per participant per year for other administrative services, such as legal, accounting, and auditing services.  (¶ 25).  On January 1, 2020, the recordkeeping fees decreased from $45 to $37 per participant per year.  *Id.*

The Amended Complaint incorporates the 401(k) Averages Book (20th Edition) and alleges that the average cost for recordkeeping for a small plan is $35 per participant.  (¶ 24).  The 401(k) Averages Book also makes clear that large plans—the largest plans analyzed in the

---

[10] Under a "factual attack" to standing under Rule 12(b)(1), a court may consider evidence outside of the pleadings. *Ali v. New York City Dep't of Transp.*, No. 14-0312, 2014 WL 5822625, at *1 (E.D.N.Y. Nov. 7, 2014) ("[I]n resolving a factual challenge to subject matter jurisdiction under Rule 12(b) (1), a district court may . . . refer to evidence outside the pleadings and. . . weigh the evidence on the record.") (quotation and citation omitted); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, No. 06-13736, 2008 WL 851918, at *6 (S.D.N.Y. Mar. 28, 2008) (noting that during a factual challenge "it is appropriate for the Court to consider the evidence presented by the parties on the issue of standing . . .").

401(k) Averages Book—pay recordkeeping fees through a combination of direct payments and indirect revenue sharing payments totaling $165 per person:



Joseph W. Valletta, the 401k Averages Book 108 (20th ed.) (2020), Hill Decl. at Ex. 18. The Amended Complaint here alleges that the Plan's total payments are $60 per participant for *all* recordkeeping and other administrative services.  (¶ 25).  In other words, the Plan's recordkeeping and administration fees are 64% lower than average according to the very book that Plaintiff relies upon in the Amended Complaint.

## ARGUMENT

### I.   Plaintiff Lacks Standing to Bring Her Claims.

As a threshold matter, Plaintiff's Amended Complaint fails because she has not established that she has standing under Article III of the United States Constitution to assert claims related to the Challenged Investments.  *In re UBS Erisa Litig.*, No. 08-6696, 2014 WL 4812387, at *3 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27

(2d Cir. 2015) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the. . . constitutional power to adjudicate it.") (citations omitted); *Patterson*, 2019 WL 4934834, at *3 ("[T]he party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists.").

Plaintiff must establish each of the three elements of constitutional standing: "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A,* 140 S. Ct. 1615, 1618 (2020). Plaintiff must demonstrate standing to bring each claim asserted. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.").

Here, moreover, Defendants bring a "factual challenge" pursuant to Federal Rule of Civil Procedure 12(b)(1) to Plaintiff's standing under Article III. As a result, "the Court should not merely rely on the allegations of the Complaint or draw inferences from it that are favorable to Plaintiff[]; rather, it is appropriate for the Court to consider the evidence presented by the parties on the issue of standing, to determine whether that evidence is sufficient to satisfy Plaintiff's burden of proof." *Access 4 All, Inc*, 2008 WL 851918, at *6; *Ali*, 2014 WL 5822625, at *1 ("To the extent that . . . defendants' Rule 12(b)(1) motion placed jurisdictional facts in dispute . . . the district court properly considered evidence outside the pleadings.") (internal citation omitted). Importantly, under a "factual challenge," "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Access 4 All, Inc.*, 2008 WL 851918, at *6.

### A.   Plaintiff Did Not Suffer an Injury in Fact Because She Would Be Worse Off If She Invested in the Alternative Investments She Proposes.

Fatal to Plaintiff's claims is her inability to demonstrate that she suffered an injury in fact sufficient to confer standing.  *See Thole*, 140 S. Ct. at 1615 (noting a plaintiff must show "she suffered an injury in fact that is concrete, particularized, and actual").  To show that she suffered a loss under a "prudent alternate investment theory" (as she purports to do), Plaintiff must establish that, had she invested in the Alternative Investments, rather than the Challenged Investments she did invest in, "those investments would have earned more than the imprudent investment actually earned."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 568-69 (2d Cir. 2016) (affirming dismissal for lack of Article III standing where there is "no cognizable investment loss").

Plaintiff has not alleged that this is the case, and—in fact—the reverse is true.  If Plaintiff had invested in the options she proposes as alternates, she would have earned at least $57.45 *less* on her investments than she actually did with her account invested in the Challenged Investments.  *See* Cornerstone Decl. at ¶ 8.  In other words, based on the specifics of when and how much Plaintiff invested, Plaintiff earned *more* on her actual investments (the allegedly imprudent ones) than she would have had she invested along the lines the Amended Complaint insists was prudent.  On these facts, Plaintiff cannot establish she suffered a loss.  Having experienced no injury in fact, Plaintiff's claims must be dismissed for lack of standing.  *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 568–69; *In re UBS Erisa Litig.*, 2014 WL 4812387, at *8 ("Plaintiff's failure to satisfy the strictures of constitutional standing by demonstrating individual loss deprives the Court of jurisdiction") (quotation and citation omitted); *TransUnion LLC*, 141 S. Ct. at 2205 ("Only those plaintiffs who have been concretely

harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

The fact that Plaintiff brings this case as a putative class action does not diminish the rigors of the Article III analysis. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal citations, quotations and ellipses omitted); *Patterson*, 2019 WL 4934834, at *6 ("Thus, the mere fact that Plaintiffs have brought this suit as a putative class action is insufficient to provide them with Article III standing. . . ").

Plaintiff has not, and cannot, establish injury in fact, and thus lacks standing to pursue her claims both in an individual and representative capacity.

### B.      Plaintiff Fails to Plead Defendants Caused Her Alleged Injury.

Even if Plaintiff had suffered an injury in fact for purposes of establishing a case or controversy, she has not plausibly alleged that "the injury was caused by the defendant[s]," likewise defeating constitutional standing. *See Thole*, 140 S. Ct. at 1618; *In re UBS Erisa Litig.*, 2014 WL 4812387, at *6 ("[T]o demonstrate a constitutionally justiciable injury under ERISA, plaintiffs must allege that they suffered specific losses *as a result* of the alleged breach of fiduciary duty.") (citation omitted) (emphasis added).  Alleging only that Plaintiff participated in her employer's Plan and that she directed her investments into certain investment options she now claims were imprudent does not plausibly establish that any allegedly deficient conduct on the part of Defendants in setting and monitoring the Plan's menu of investment options was the cause of an injury to Plaintiff—particularly where she cannot establish comparative loss as a result of the investments she did make. *Liu v. United States Cong.*, 834 F. App'x 600, 604 (2d

13

Cir. 2020) (affirming dismissal for lack of constitutional standing where plaintiff "failed plausibly to allege that there exists a sufficiently direct causal connection between the conduct of those defendants and the injury he alleges."); *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993) (holding that plaintiffs must sufficiently "proffer facts establishing that all links in the causal chain are satisfied.").  Moreover, Plaintiff does not allege that she would have invested in the Alternative Investments had they been offered in the Plan, defeating any plausible inference that Defendants' alleged imprudent offerings caused her harm.  *Ortiz*, 5 F.4th at 629 (affirming district court's finding of lack of constitutional standing based on failure to establish causation because plaintiffs "could have submitted a declaration, affidavit, or testimony to the effect that they would have invested in [the alleged alternate]. But they offered no such evidence.  That is the end of the matter.").  For these reasons, Plaintiff lacks standing to pursue the Amended Complaint's claims against the Challenged Investments, and they must be dismissed.

## II.   Plaintiff's Amended Complaint Fails to State a Claim.

Even if Plaintiff had Article III standing, her Amended Complaint would still fail to state a claim.  In the ERISA class action context, the Supreme Court has emphasized that a 12(b)(6) motion to dismiss is an "important mechanism for weeding out meritless claims" of breaches of fiduciary duty.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  This is because, in cases alleging imprudent investment decisions, fiduciaries often find themselves "between a rock and a hard place," facing litigation regardless of what decision they make.  *Id.* at 424.  Compounding that problem, "the prospect of discovery" in class actions alleging imprudent investment decisions "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value."  *St. Vincent*, 712 F.3d at 719 (quotation and citation omitted).

14

In order to state a claim, a plaintiff must offer well-pleaded factual allegations showing that the plan fiduciaries failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a prudent person would use.  29 U.S.C. § 1104 (a)(1)(B).  "In other words . . . this standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment."  *St. Vincent*, 712 F.3d at 716 (quotation and citation omitted).

Here, however, the Amended Complaint contains no allegations directly related to the process by which Defendants managed the Plan's investments or fees.  To state a claim, Plaintiff therefore must allege facts which "give rise to a 'reasonable inference' that the defendant committed the alleged misconduct . . . thus permit[ting] the court to infer more than the mere possibility of misconduct."  *Id.* at 727 (quotation and citation omitted) ("For a plaintiff alleging a breach of fiduciary duty under ERISA, this standard generally requires the plaintiff to allege facts that, if accepted as true, would show that a prudent fiduciary in like circumstances *would have acted differently*.") (citations omitted) (emphasis added).  *See Ferguson*, 2019 WL 4466714, at *12 ("Plaintiffs failed to provide additional sufficient factual allegations to support why a prudent investor in . . . Defendants' shoes would have never arrived at these decisions.").

Judged against this standard, Plaintiff's claims must be dismissed.

### A.   Plaintiff's Investment Claims Fail as a Matter of Law.

Plaintiff's allegations about the Plan's investment lineup cannot create any inference of an imprudent process and therefore fail as a matter of law.

At the outset, the overall lineup and structure of the Plan belies any inference of imprudence.  Throughout the proposed class period, the Plan has offered about twenty-five different investment options.  The investment options have always included several low cost

index funds—including a bond index fund and three stock index funds—with fees as low as 0.02% to 0.12% in 2014,[11] as well as twelve target date index funds with fees from 0.16% to 0.18% (also as of 2014[12]).  (2014 Ann. Fee Disclosure, Hill Decl. at Ex. 2).  These are exactly the sort of investment options that Plaintiff alleges should be offered as investment options in the Plan (¶¶ 31, 33, 35, 37), and allow any participants who want them to select passively managed investments for their retirement portfolio.  *See Divane*, 953 F.3d at 988–92.

Overall, the Plan's fees ranged from 0.02% to 1.31% in 2014 and came down to 0.02% to 1.24% by 2020.  (2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1; 2014 Ann. Fee Disclosure, Hill Decl. at Ex. 2).  These are well within the fee ranges for which other courts have rejected similar types of fiduciary breach claims.  *See Divane,* 953 F.3d at 991–92 (affirming dismissal of complaint alleging poor performance and excessive recordkeeping fees where the plan offered investment options with a range of fees from 0.05% to 1.89%); *White*, 752 F. App'x at 455 (affirming dismissal of complaint alleging defendant breached its fiduciary duties by offering expensive and poorly performing investment options with a range of fees from 0.05% to 1.24%); *Loomis*, 658 F.3d 667 at 671–73 (affirming dismissal of complaint alleging poor performance and excessive fees where plan offered investment options with a range of fees from 0.03% to 0.96%).  Here, moreover, over half the Plan's investment options had fees of 0.18% or *lower* in 2014, and by 2020, over half the Plan's investment options had fees of 0.09% or *lower*.  (2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1; 2014 Ann. Fee Disclosure, Hill Decl. at Ex. 2).  There can be no inference of imprudence.

---

[11] Fees for three stock index funds are 0.02% to 0.08% as of 2020.  2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1 at 5.

[12] Fees for twelve target date index funds are 0.09% as of 2020.  2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1 at 6-8.

Nevertheless, Plaintiff asks this Court to infer that the fiduciary process was

fundamentally flawed based on hindsight criticisms of four of the Plan's twenty-five investment

options.  Plaintiff's arguments do not withstand scrutiny and cannot create an inference of

imprudence.

### B.     The Alleged Alternative Investments Are Not Meaningful Comparators.

First, Plaintiff does not allege facts demonstrating that the Alternative Investments are

materially similar to the Challenged Investments, such that a comparison of performance or fees

is meaningful.  *See Patterson*, 2019 WL 4934834, at *11 (dismissing similar complaint); *Bekker*,

2018 WL 4636841, at *7 (same).  Nor can she.  The Challenged Investments are all actively-

managed funds, whereas the Alternative Investments are all passively managed index funds.  *See*

*supra* at pp. 7–8.  This alone renders her supposed comparator funds an "apples to oranges"

comparison and is fatal to her claims.[13]  *See, e.g.*, *Davis*, 960 F.3d at 485 (finding actively

managed funds and passively managed funds are not comparable in terms of performance and

noting "[t]hey have different aims, different risks, and different potential rewards that cater to

different investors.  *Comparing apples and oranges is not a way to show that one is better or*

*worse than the other*.") (emphasis added); *Bekker*, 2018 WL 4636841, at *7 ("Plaintiff's

allegation that the VEF, an actively-managed fund, was benchmarked to the S&P 500 Index,

which the VIIIX, an index fund, tracked, does not demonstrate the requisite comparability.");

*Davis v. Salesforce.com, Inc.*, No. 20-1753, 2020 WL 5893405, at *3 (N.D. Cal. Oct. 5, 2020)

("*Salesforce*") ("Passively managed funds, however, ordinarily cannot serve as meaningful

---

[13] As an additional distinction, three of the four Challenged Investments are 50/50 options, which means that when a participant selects one of these options, half of their investment is automatically directed into one of two different constituent funds, while the other half is directed into the other constituent fund—providing participants with the convenience of not having to individually direct their investments, a feature not shared by any of the Alternative Investments.

benchmarks for actively managed funds, because the two types of funds have different aims, different risks, and different potential rewards that cater to different investors.") (quotation and citation omitted) (also collecting cases); *Patterson*, 2019 WL 4934834 at *12 (noting that "Plaintiffs' conclusory assertion that the funds were similar is belied by the facts actually set forth in and incorporated into the Complaint"); *Smith v. CommonSpirit Health*, No. 20-0095, 2021 WL 4097052, at *9 (E.D. Ky. Sept. 8, 2021) ("[T]he higher cost or underperformance of an actively managed fund relative to an index fund says nothing about the relative merit of the two funds."); *Parmer v. Land O'Lakes*, *Inc.*, 518 F. Supp. 3d 1293, 1306–07 (D. Minn. 2021); *Cho v. Prudential Ins. Co. of Am.,* No. 19-19886, 2021 WL 4438186, at *8 n.7 (D.N.J. Sept. 27, 2021) ("[A] plaintiff must plausibly establish that it is providing an apt comparator, and the manner in which a fund is managed is a relevant consideration.").[14]

Second, even putting aside the active management/index fund apples-to-oranges distinction, the Amended Complaint does not allege that the Challenged Investments had the same asset allocation as the proposed Alternative Investments, such that they can be appropriately compared. The Second Circuit in *St. Vincent* went into painstaking detail to evaluate—in affirming Rule 12(b)(6) dismissal of similar fiduciary breach claims—the specific nature of the challenged investments, something the Amended Complaint here has no details about. *See St. Vincent*, 712 F.3d at 722–23 (rejecting comparison of different types of mortgage-backed securities in affirming dismissal of ERISA fiduciary breach claims). Likewise, in

---

[14] The publicly filed prospectus of one of the Alternative Investments that Plaintiff herself proposes discusses the material differences between actively and passively managed investments:

> Because [the investment manager] does not select individual companies in the index that the [Alternative Investment] tracks, *the [Alternative Investment] may hold securities of companies that present risks that an investment adviser researching individual securities might seek to avoid*.

(*See* 2020 iShares MSCI EAFE Int'l Index Fund Summary Prospectus, Hill Decl., Ex. 19 at 4 (emphasis added); ¶ 35.)

*Meiners*, the Eighth Circuit found that the plaintiffs' proposed comparator funds were not "meaningful benchmarks" because the bond holdings in the comparator funds varied by 12% to 14%. *Meiners v. Wells Fargo & Co.*, 898 F.3d at 823; s*ee also Davis*, 960 F.3d at 485 (affirming Rule 12(b)(6) dismissal on fiduciary breach investment claim because the challenged fund "has holdings from around the globe, with around 30% of its portfolio invested in international securities," while the comparator funds "by contrast, have a lower percentage of international stocks").

Here, Plaintiff's alleged comparators suffer from the same fundamental flaws:

- The 50% Diamond Hill/50% Dodge & Cox Large Value Option pursues a "value" based investment strategy, whereas two of the proposed Alternative Investments (the Vanguard 500 Index Fund and Vanguard Russell 1000 Index Fund) are not "value options." Instead, they are broad indices covering the *entire* market (growth <u>and</u> value stocks) rather than the narrower "value" subset of the market. The third comparator fund—the Vanguard Russell 1000 Value Index Fund—is also a passively managed value index fund. It, however, actually performed *worse* than the Challenged Investment: the 50% Diamond Hill/50% Dodge & Cox Large Value Option *outperformed* the Vanguard Russell 1000 Value Index Fund in terms of annual rate of return in 2015, 2016, 2017, and 2019, and overall from 2015 through 2019.[15]

---

[15]

| FUND | 2015 | 2016 | 2017 | 2018 | 2019 | Annualized | Average |
|------|------|------|------|------|------|-----------|---------|
| Plan Fund | -2.8 | 17.77 | 19.14 | -8.49 | 28.33 | 9.88 | 10.79 |
| Index Fund | -3.86 | 17.08 | 13.6 | -8.3 | 26.49 | 8.2 | 9 |

The "annualized" performance from 2015 to 2019 is the geometric average. The "average" is the simple average of each fund's annual performance. *See* 2016 Vanguard Russell 1000 Value Index Fund Summary Prospectus, Hill Decl. at Ex. 20 at 4; 2017 Vanguard Russell 1000 Value Index Fund Summary Prospectus, Hill Decl. at Ex. 21 at 4; 2018 Vanguard Russell 1000 Value Index Fund Summary Prospectus, Hill Decl. at Ex. 22 at 3; 2019 Vanguard

- The Lazard Emerging Markets Fund had materially different geographic exposures than the alleged Alternative Investment—for example, the Lazard Fund invested 9.5% more in China and 16% less in the Cayman Islands.[16]  *Meiners*, 898 F.3d at 823; *Davis* 960 F.3d at 485.

- The 50% Causeway/50% BNY Mellon International Option likewise invests in both emerging markets and developed markets, whereas the iShares MSCI EAFE International Index fund that Plaintiff identifies has almost no exposure to emerging markets.[17] *Meiners*, 898 F.3d at 823; *Davis*, 960 F.3d at 485.  And the 50% Causeway/50% BNY Mellon International Option also outperformed the Alternative Investment over much of the proposed class period.[18]

In short, Plaintiff's Amended Complaint is premised on a flawed comparison between materially different investments.  There can be no inference of imprudence.  *Meiners*, 898 F.3d

---

Russell 1000 Value Index Fund Summary Prospectus, Hill Decl. at Ex. 23 at 4; Sept. 30, 2020 Vanguard Russell 1000 Value Index Fund Fact Sheet, Hill Decl. at Ex. 24 at 1; 2016 Ann. Fee Disclosure, Hill Decl. at Ex. 6 at 4; 2017 Ann. Fee Disclosure, Hill Decl. at Ex. 25 at 4; 2018 Ann. Fee Disclosure, Hill Decl. at Ex. 7 at 4; 2019 Ann. Fee Disclosure, Hill Decl. at Ex. 3 at 5; 2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1 at 5.  *See Patterson*, 2019 WL 4934834, at *11 (dismissing complaint and noting that "[a]lthough the Mid Cap Fund lagged behind its alleged comparators in 2011, 2012, and 2014, it outperformed all of Plaintiffs' suggested alternative investments in 2013"). The geometric averages were calculated using https://goodcalculators.com/geometric-average-return-calculator/.

[16] *Compare* 2019 Fidelity Emerging Mkts. Index Fund Ann. Rep., Hill Decl., Ex. 26 at 6–22, *with* 2019 Lazard Emerging Markets Fund Ann. Rep., Hill Decl., Ex. 15 at 85–90.

[17] With "developed" countries defined as those included on the MSCI EAFE Index representing 21 "developed markets countries."  *Compare* 2019 iShares MSCI EAFE Int'l Index Fund Ann. Rep. Hill Decl., Ex. 27 at 10–17, *with* 2019 Causeway Int'l Value Inv. Fund Ann. Rep., Hill Decl., Ex. 16 at 8–10, *and* 2019 BNY Mellon Int'l Option Ann. Rep., Hill Decl., Ex. 17 at 10–11.

[18] The 50% Causeway/50% BNY Mellon International Option actually *outperformed* the alleged Alternative Investment (the iShares MSCI EAFE International Index Fund) in 2014, 2016, 2017, 2018, and 2019.  *See* 2015 iShares MSCI EAFE Int'l Index Fund Summary Prospectus, Hill Decl. at Ex. 28 at 4; 2017 iShares MSCI EAFE Int'l Index Fund Summary Prospectus, Hill Decl. at Ex. 29 at 4; 2018 iShares MSCI EAFE Int'l Index Fund Summary Prospectus, Hill Decl. at Ex. 30 at 3-4; 2019 iShares MSCI EAFE Int'l Index Fund Summary Prospectus, Hill Decl. at Ex. 31 at 4; 2020 iShares MSCI EAFE Int'l Index Fund Prospectus, Hill Decl. at Ex. 19 at 4; 2015 Ann. Fee Disclosure, Hill Decl. at Ex. 5 at 5; 2017 Ann. Fee Disclosure, Hill Decl. at Ex. 25 at 4; 2018 Ann. Fee Disclosure, Hill Decl. at Ex. 7 at 5; 2019 Ann. Fee Disclosure, Hill Decl. at Ex. 3 at 5; 2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1 at 5.  Before 2018, the "iShares MSCI EAFE Int'l Index Fund" was known as the "BlackRock International Index Fund."  2018 iShares MSCI EAFE Int'l Index Fund Summary Prospectus, Hill Decl. at Ex. 30 at 1-2.

at 823 (affirming Rule 12(b)(6) dismissal because "[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset"); *St. Vincent*, 712 F.3d at 722–23 (affirming dismissal of fiduciary breach claims that attempted to compare different types of mortgage-backed securities that were not properly comparable since they had different risk profiles).

### C.   The Performance of the Challenged Investments Does Not Create an Inference of Imprudence.

To demonstrate objective imprudence based on alleged underperformance, Plaintiff must "provide . . . sufficient factual allegations to support why a prudent investor in . . . Defendants' shoes would have never arrived at these decisions." *Ferguson*, 2019 WL 4466714 at *12. Plaintiff cannot meet this standard.

First, a three- to five-year period of underperformance is insufficient to create an inference of imprudence. *Salesforce*, 2020 WL 5893405, at *4 ("Moreover, as defendants also point out, allegations 'based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence.'"); *Cho*, 2021 WL 4438186, at *9 (dismissing complaint, among other reasons, because plaintiff "relies primarily on five-year trailing performance data and on one ten-year trailing performance chart. . . [T]he time period at issue is, for the most part, fairly short."). That is particularly true where, as here, Plaintiff focuses on only four of the Plan's investment options and has no dispute about the same process used by the fiduciaries that yielded the other 20+ options about which she has no criticism.

Second, the Challenged Investments all outperformed their benchmarks during various points in Plaintiff's proposed class period. For example, the 50% Diamond Hill/50% Dodge &

21

Cox Large Cap Value Option outperformed its benchmark in 2015 and 2016.[19]  The Lazard

Emerging Markets Fund's ten-year returns outperformed its benchmark in 2014, 2016, and

2017.[20]  Further, the 50% Causeway/50% BNY Mellon International Option had five-year

returns that outperformed its benchmark in 2019.[21]

Third, the Challenged Investments also outperformed Plaintiffs' proposed Alternative

Investments for some or all of the challenged period.  In other words, each of these funds had

periods of both outperformance and underperformance.  "[M]ixed performance is insufficient to

state a claim" because it cannot show that a prudent fiduciary would have made a different

investment decision.  *Patterson*, 2019 WL 4934834, at *13.  As here, where Plaintiff has

alleged—at worst—mixed performance, there is no inference of imprudence.  *Id.* at *11

(rejecting fiduciary breach claim because "the 2013 Fee Disclosure . . .  shows that in 2013 the

Mid Cap Fund was still outperforming its benchmark on a five- and ten-year trailing basis");

*Ferguson,* 2019 WL 4466714, at *9 ("The relevant performance data demonstrates that the funds

challenged in the SAC did not 'consistently underperform' benchmarks, but rather had periods of

both outperformance and underperformance common amongst portfolio of investments. . . .").

As the court explained in *Ferguson*:

> *Plaintiffs' allegations that certain investment options underperformed as
> compared to certain benchmarks do not raise a plausible inference that a prudent
> fiduciary would have found those investments to be "so plainly risky" to render
> them imprudent*.

*Id.* at *9 (emphasis added) (citation omitted).

---

[19] *See* 2016 Ann. Fee Disclosure, Hill Decl. at Ex. 6 at 4; 2017 Ann. Fee Disclosure, Hill Decl. at Ex. 25 at 4;
Russell 1000 Value Index 2020 Fact Sheet, Hill Decl. at Ex. 24 at 1.
[20] *See* 2015 Ann. Fee Disclosure, Hill Decl. at Ex. 5 at 6; 2017 Ann. Fee Disclosure, Hill Decl. at Ex. 25 at 5; 2018
Ann. Fee Disclosure, Hill Decl. at Ex. 7 at 5.
[21] *See* 2020 Ann. Fee Disclosure, Hill Decl. at Ex. 1 at 5.

**III.    Plaintiff's Recordkeeping Allegations Do Not State a Claim.**

Until January 1, 2020, participants in the Plan paid $45 per participant per year for the recordkeeping services required for the Plan, plus an additional $15 per year for other administrative services.  (¶¶ 21, 25).  Plaintiff claims that participants *should* have paid less. (¶ 24).  This claim fails as a matter of law.

First, Plaintiff cannot state a claim merely by alleging that recordkeeping fees should have been lower.  *Divane*, 953 F.3d at 985 (affirming dismissal of similar allegations despite plaintiffs' allegations that defendants should have paid only $35 per year in recordkeeping fees).

Second, the 401(k) Averages Book that Plaintiff references in her Amended Complaint undermines any suggestion that the Plan paid too much in fees.  Specifically, for the largest plans analyzed, the 401(k) Averages Book states that plans pay recordkeeping and administration fees averaging *$165* per participant, including both direct payments and indirect revenue sharing.  *See Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 20-1493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (dismissing complaint citing to 401(k) Averages Book to support a claim of allegedly imprudent recordkeeping fees in part because plaintiffs referred only to the book for direct payments, but failed to reference the much higher fees paid via indirect revenue sharing).  The Plan here paid only $60 ($45 + $15).  In other words, the Plan here pays recordkeeping and administration fees that are 64% *lower* than the 401(k) Averages Book.

In short, there is no inference of imprudence.  *See Johnson*, 2021 WL 3417843, at *4 (rejecting comparisons to the recordkeeping fees laid out in the 401(k) Averages Book for much smaller plans "without additional detail about the Plan's fee structure and the services received in exchange for those fees"); *Tobias v. NVIDIA Corp.*, No. 20-6081, 2021 WL 4148706, at *15 (N.D. Cal. Sept. 13, 2021) (dismissing plaintiffs' claims of excessive recordkeeping fess where plaintiffs "fail to provide any allegations regarding the specific services actually provided to the

23

Plan" and also fail to provide "any allegations regarding the fees paid by plans receiving the same or materially similar services"); *Wehner v. Genentech, Inc.*, No. 20-6894, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021) ("[T]he allegations in . . . [the] Complaint do not make clear why the market comparator from the 401(k) Average Book provides an accurate comparison to the fees charged by the Plan at issue in this case."); *Forman v. TriHealth, Inc.*, No. 19-0613, 2021 WL 4346764, at *5 (S.D. Ohio Sept. 24, 2021) (dismissing complaint alleging imprudent recordkeeping fees where plaintiffs failed to "describe what services the Plan received in exchange for these administrative fees or what services the 'comparable 401(k) plans' received in exchange for their less costly fees.").

## IV.   <u>Plaintiff's Derivative Claims Fail as a Matter of Law</u>.

Plaintiff also alleges a claim for failure to monitor co-fiduciaries (Count II), co-fiduciary breach (Count II), and knowing participation in a fiduciary breach (Count III) based on the same conduct that forms the basis of her underlying claims.  (¶¶ 62–73).  These claims fail for the same reasons stated above, since neither claim can survive without an underlying breach of fiduciary duty.  *Majad ex rel. Nokia Ret. Sav. & Inv. Plan v. Nokia, Inc.*, 528 F. App'x 52, 57 (2d Cir. 2013) ("Plaintiffs' claims for failure-to-monitor and co-fiduciary liability were properly dismissed for their failure adequately to plead a predicate breach of fiduciary duty."); *Patterson*, 2019 WL 4934834, at *15 ("[A] duty to monitor claim cannot survive without an underlying breach of a fiduciary duty.").[22]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

---

[22] Plaintiff also raises an alternative claim for liability for participation in breach of fiduciary duty (Count III), but without pleading any facts to support her claim (¶¶ 69–71).  This claim should also be dismissed.

Dated:  New York, New York                    Respectfully submitted,
        October 14, 2021

MORGAN, LEWIS & BOCKIUS LLP
By:  */s/ Melissa D. Hill*        

    Melissa D. Hill
    Jeremy P. Blumenfeld
    Gina F. McGuire
    William A. Engelhart

    101 Park Avenue
    New York, New York 10178
    melissa.hill@morganlewis.com
    jeremy.blumenfeld@morganlewis.com
    gina.mcguire@morganlewis.com
    william.engelhart@morganlewis.com
    Tel:  (212) 309-6000
    Fax:  (212) 309-6001

    *Attorneys for Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served via email a true and correct copy of the

foregoing Memorandum of Law in Support of Defendants Northwell Health, Inc. and the

Northwell Health 403(b) Plan Committee's 12(b)(6) and 12(b)(1) Motion to Dismiss the

Amended Complaint on this 14th day of October 2021, on all counsel of record.


<u>*/s/ Melissa D. Hill*</u>
Melissa D. Hill