UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KAILA GONZALEZ, Individually and as a Representative of a class of similarly situated persons, on behalf of the NORTHWELL HEALTH 403(B) PLAN,

                Plaintiff,

-against-

NORTHWELL HEALTH, INC., the NORTHWELL HEALTH 403(B) PLAN COMMITTEE and DOES No. 1-10, Whose Names Are Currently Unknown,

                Defendants.

1:20-cv-03256 RPK RLM

**Date of Service: November 29, 2021**

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS NORTHWELL HEALTH, INC. AND THE NORTHWELL HEALTH 403(B) PLAN COMMITTEE'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

## TABLE OF CONTENTS

                                                                                                **Page**

ARGUMENT .................................................................................................................................. 1

    I.      Plaintiff Lacks Article III Standing to Bring Her Claims .................................................... 1

    II.     Plaintiff's Investment Claims Cannot Survive a Rule 12(b)(6) Motion to Dismiss Simply by Pointing to a Passively Managed Index Fund That Uses the Same Benchmark but Has Different Holdings and Investment Strategies ................................... 4

    III.    Alleging Mixed Performance Does Not Raise an Inference of Imprudent Process .......... 8

    IV.    Plaintiff Does Not Allege What Similar Plans Pay in Recordkeeping and Administrative Fees for Similar Services .......................................................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Access 4 All, Inc. v. G & T Consulting Co., LLC*,
   No. 06-cv-13736, 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ............................................... 2

*Albert v. Oshkosh Corp.*,
   No. 20-cv-0901, 2021 WL 3932029 (E.D. Wis. Sept. 2, 2021) ............................................... 9

*In re Barclays Liquidity Cross & High Frequency Trading Litigation*,
   390 F. Supp. 3d 432 (S.D.N.Y. 2019) ..................................................................................... 1

*Bekker v. Neuberger Berman Group LLC*,
   No. 16-cv-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ............................................. 5

*Brown v. Daikin Am., Inc.*,
   No. 18-cv-11091, 2021 WL 1758898 (S.D.N.Y. May 4, 2021) .............................................. 9

*Cunningham v. Cornell Univ.*,
   No. 16-cv-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ............................................. 7

*Davis v. Salesforce.com, Inc.*,
   No. 20-cv-01753, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) .............................................. 6

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ............................................................................................. 6, 7

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020) ................................................................................................. 5

*Donovan v. Bierwirth*,
   754 F.2d 1049 (2d Cir. 1985) ................................................................................................. 3

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   No. 17-cv-6685, 2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) .................................... 8, 9, 10

*Holland v. JPMorgan Chase Bank*,
   No. 19-cv-0233, 2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019) .............................................. 2

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
   No. 20-cv-1493, 2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) .............................................. 10

*Karg v. Transamerica Corp.*,
   No. 18-cv-0134, 2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ............................................ 8

*Karpik v. Huntington Bancshares Inc.*,
   No. 17-cv-1153, 2019 WL 7482134 (S.D. Ohio Sept. 26, 2019) ...............................................7

*Kong v. Trader Joe's Co.*,
   No. 20-cv-05790, 2020 WL 7062395 (C.D. Cal. Nov. 30, 2020) .............................................6

*Kurtz v. Vail Corp.*,
   511 F. Supp. 3d 1185 (D. Colo. 2021) ......................................................................................6

*Leimkuehler v. Am. United Life Ins. Co.*,
   713 F.3d 905 (7th Cir. 2013) ....................................................................................................4

*In re LinkedIn ERISA Litig.*,
   No. 20-cv-05704, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ............................................2

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................................4

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) .................................................................................................6, 7

*Moitoso v. FMR LLC*,
   451 F. Supp. 3d 189 (D. Mass. 2020) .....................................................................................10

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
   No. 15-cv-9936, 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ................................................8

*Ortiz v. Am. Airlines, Inc.*,
   5 F.4th 622 (5th Cir. 2021) .......................................................................................................4

*Patterson v. Morgan Stanley*,
   No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..................................................6

*Sacerdote v. New York University*,
   9 F. 4th 95 (2d. Cir. 2021) ...............................................................................................3, 4, 5

*Smith v. CommonSpirit Health*,
   No. 20-cv-0095, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ...............................................10

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
   Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ..........................................................................................4, 5, 7, 9

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ..................................................................................................5, 6

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) ....................................................................................8

iii

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020) ........................................................................................................ 2

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
    843 F.3d 561 (2d Cir. 2016) ................................................................................................ 3

*In re UBS ERISA Litig.*,
    No. 08-cv-6696, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) ......................................... 2

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ........................................................................................... 9

**Other Authorities**

Fed. Rule Civ. P. 12 ................................................................................................... *passim*

**ARGUMENT**

I.      **Plaintiff Lacks Article III Standing to Bring Her Claims.**

Plaintiff has not established Article III Constitutional standing to bring her claims: she has not demonstrated an injury in fact because her 403(b) plan account did better, not worse, investing in the Challenged Investments than it would have had she invested in the Alternative Investments identified in the Amended Complaint. Mot. at 10-14. Plaintiff does not dispute this point. Instead, Plaintiff argues that (1) evidence showing her investments' actual performance as compared to the purported alternatives should not be considered at this juncture; (2) the *uncontested fact that Plaintiff herself suffered no harm* from her investments in the Challenged Investments is, somehow, irrelevant in light of boilerplate allegations regarding "injury to the plan;" and (3) Plaintiff should be permitted to disown the hand-selected alternates actually pled in the Complaint and establish an injury in fact based entirely on speculative assertions about other unidentified funds in the marketplace. Plaintiff's arguments fail.[1]

First, Plaintiff asserts that the Court should decline to consider the Simon Declaration in connection with Defendants' factual challenge to Plaintiff's standing. Opp. at 7-8. It is well-settled, however, that in considering a factual (rather than facial) challenge under Rule 12(b)(1), "it is appropriate for the Court to consider the *evidence* presented by the parties on the issue of standing, to determine whether that *evidence* is sufficient to satisfy Plaintiff's burden of proof."

---

[1] Plaintiff incorrectly characterizes Defendants' Motion as an improper "successive motion" prohibited by Fed. Rule Civ. P. 12(g)(2). Opp. at 6. Defendants' Motion was filed in response to Plaintiff's Amended Complaint, and pursuant to the briefing schedule ordered by the Court on August 30, 2021. Moreover, the Opposition omits the *beginning* of Rule 12(g)(2), which provides exceptions for Rule 12(g)(2)'s limitation, which are specifically relevant here. *See* Rule 12(g)(2) ("*Except as provided in Rule 12(h)(2) or (3)…*") (emphasis added). Rule 12(h)(3), in turn, governs subject-matter jurisdiction, and states, "[I]f the court determines *at any time* that it lacks subject-matter jurisdiction, *the court must dismiss the action*." (emphasis added). As a result, Defendants' Motion is expressly *permitted* by the Rules at any time. *See In re Barclays Liquidity Cross & High Frequency Trading Litigation*, 390 F. Supp. 3d 432, 443 (S.D.N.Y. 2019) ("Although Plaintiffs protest that standing 'should not be raised now' because the [defendants] did not raise it in their earlier motion to dismiss. . . Article III standing is jurisdictional and therefore 'not subject to waiver.'") (citation omitted).

1

*Access 4 All, Inc. v. G & T Consulting Co., LLC*, No. 06-cv-13736, 2008 WL 851918, at \*6 (S.D.N.Y. Mar. 28, 2008) (emphasis added); Motion at 11.

The Opposition puts forward *no evidence whatsoever* to contest the Declaration's conclusion that Plaintiff would have earned less if she actually invested in her proposed Alternative Investments than in the Challenged Investments. The Opposition's appeal to a purported "low threshold" for *pleading* an injury in fact (Opp. 6-7) does not come close to meeting Plaintiff's burden of proof. *Holland v. JPMorgan Chase Bank*, N.A., No. 19-cv-0233, 2019 WL 4054834, at \*6 (S.D.N.Y. Aug. 28, 2019) ("Article III standing needs to be established, not merely pleaded, in order to give a federal court the authority to exercise federal question jurisdiction. . . A plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.") (citations omitted); *Access 4 All*, 2008 WL 851918, at \*6 ("As the elements of standing are not mere pleading requirements, but rather are an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof. . .").

Second, Plaintiff is incorrect that her individual lack of injury is irrelevant and that she need "only establish an injury to the Plan." Opp. at 8. Just the opposite. "In a class action, [the] standing inquiry focuses on the class representatives." *In re LinkedIn ERISA Litig.*, No. 20-cv-05704, 2021 WL 5331448, at \*3 (N.D. Cal. Nov. 16, 2021) (citations omitted); *see also In re UBS ERISA Litig.*, No. 08-cv-6696, 2014 WL 4812387, at \*5 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v UBS,* 612 F. App'x 27 (2d Cir. 2015) ("The named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotation and citation omitted). The Supreme Court confirmed this in *Thole v. U.S.*

2

*Bank N.A.,* 140 S. Ct. 1615, 1620 (2020): "Thole and Smith assert standing as representatives of the plan itself. But in order to claim the interests of others, *the litigants themselves still must have suffered an injury in fact*, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." (emphasis added) (quotation and citation omitted).

Third, the Opposition seeks to eschew this fundamental tenet by pointing to case law in the damages context purportedly holding that *after* a breach is established, a court may look to the most profitable alternative strategy before it when determining damages. *See* Opp. 8-9 (citing, *inter alia*, *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985)).[2] But, to demonstrate a threshold injury in fact, it is Plaintiff's burden to put forth alternative investments that "earned more." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 568-69 (2d Cir. 2016) (An "alternative investment theory requires pleading that the ERISA-protected plan suffered a loss as a result of certain funds being invested in an imprudent manner and that, had the funds been available for other investments, those investments would have *earned more* than the imprudent investment *actually earned*.") (emphasis in original).

Plaintiff's Amended Complaint was filed in response to the Court's specific questions about Plaintiff's Article III standing to press her claims. Yet remarkably, the Opposition now asks the Court to ignore entirely the Alternative Investments proposed by Plaintiff in the Complaint (Opp. 9) and instead look to other, unidentified funds that might exist somewhere in "the market" that could hypothetically establish injury in fact. That is the definition of a

---

[2] Plaintiff's citation in this context to the recent Second Circuit decision in *Sacerdote v. New York University*, 9 F. 4th 95, 113 n.68 (2d. Cir. 2021), is similarly incorrect. The discussion Plaintiff points to regards the question of which party has the burden to establish damages *after* a plaintiff establishes a breach and a loss, a procedural posture far removed from the threshold jurisdictional question currently before this Court. Moreover, the *Sacerdote* decision makes clear that Plaintiff still bears the burden to put forward purportedly prudent alternatives in the first instance, a burden which Plaintiff has failed to meet here. *Id.* at 113 ("Had plaintiffs been able to prove that the charged fees were imprudent, *and had the plaintiffs shown a prudent alternative*, the burden would have shifted to the defendant to disprove that the entire amount of loss should be awarded as damages.") (emphasis added).

3

speculative injury that cannot establish Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an "injury in fact" must be "concrete and particularized. . . actual or imminent, not conjectural or hypothetical.") (citations omitted).

Finally, because Plaintiff has not established injury in fact related to her own investment in the Challenged Funds, she also has not established that Defendant's decision to include those Challenged Funds in the Plan line up *caused* any harm. *See* Motion at 13-14; *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 629 (5th Cir. 2021) (affirming dismissal where plaintiffs failed to establish they would have invested in their proposed alternate). The Amended Complaint does not establish that Plaintiff has standing to pursue her claims, and the Opposition confirms that Plaintiff cannot withstand a factual jurisdictional challenge. It is undisputed that Plaintiff was not harmed by the fiduciary breaches she alleges. The Amended Complaint should be dismissed without leave to replead again.

**II.     Plaintiff's Investment Claims Cannot Survive a Rule 12(b)(6) Motion to Dismiss Simply by Pointing to a Passively Managed Index Fund That Uses the Same Benchmark but Has Different Holdings and Investment Strategies.**

Even if Plaintiff had standing to bring her claims (she does not), the Amended Complaint still fails. As Plaintiff concedes in her Opposition, courts frequently grant the dismissal of complaints under Rule 12(b)(6) where plaintiffs allege ostensibly similar alternates that are "not close enough" to the challenged investments to establish meaningful comparisons. Opp. at 18 (collecting cases, including *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("*St. Vincent*")).[3]

---

[3] Plaintiff trots out the Second Circuit's recent *Sacerdote* decision as purportedly supporting their bid to survive dismissal, but the portions of the *Sacerdote* decision to which Plaintiff cites turn specifically on share class allegations not present here. *See Sacerdote*, 9 F.4th at 107-10. In a share class challenge, the challenged investment and the alternative have *identical* holdings and *identical* investment strategies, with the only differences being the pricing. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013) ("Although each share class within a given fund is invested in an identical portfolio of securities, the classes have differing price structures."). Thus, share class allegations satisfy precisely the requirement that the comparator funds be meaningful. Contrary to

Here, Plaintiff stakes her claim on the appropriateness of the specific comparators identified in the Amended Complaint and asks the Court to infer an imprudent fiduciary process entirely by reference to those Alternative Investments. Yet, Plaintiff contradicts herself in the next breath, when she asks the Court to *ignore* any comparison to the Alternative Investments identified by Plaintiff when determining whether she has met her obligation to establish an injury for standing purposes.[4] Plaintiff's own arguments make clear the implausibility of her claims.

First, the fact that a fund's performance might be benchmarked against the same index as another fund does not render an otherwise inapt comparison between active and passive investments appropriate for inferring a fiduciary breach. In fact, Judge Laura Taylor Swain granted a Rule 12(b)(6) motion as to similar fiduciary prudence allegations in *Bekker v. Neuberger Berman Group LLC*, and explained as follows:

> Here, Plaintiff compares the VEF's fees unfavorably to those charged by the VIIIX, but does not allege that the two funds employed similar operations or investment strategies, nor does Plaintiff proffer any other facts to make the comparison of the funds' fees meaningful and plausibly suggestive of a fiduciary breach. . . *Plaintiff's allegation that the VEF, an actively-managed fund, was benchmarked to the S&P 500, which the VIIIX, an index fund, tracked, does not demonstrate the requisite comparability. S&P 500 returns are merely the performance metric to which both funds point while employing distinct investment methodologies and strategies.*

No. 16-cv-6123, 2018 WL 4636841, at *7 (S.D.N.Y. Sept. 27, 2018) (emphasis added). Were it otherwise, a plaintiff could *always* state a fiduciary breach claim by comparing an actively

---

Plaintiff's assertions, moreover, courts have held that the overall range of investments offered in a plan is a relevant backdrop against which a plaintiff's claims of an imprudent process must be examined, a principle that remains intact following *Sacerdote*. *See St. Vincent*, 712 F.3d at 717; *Divane v. Nw. Univ.*, 953 F.3d 980, 992 (7th Cir. 2020), *cert. granted sub nom. Hughes v. Nw. Univ.*, 141 S. Ct. 2882 (U.S. July 2, 2021) ("[A]ny breach claim must be examined against the backdrop of the mix and range of available investment options.") (citing *Sweda v. Univ. of Pa.*, 923 F.3d 320, 330 (3d Cir. 2019)). Here the Plan provided such a reasonable mix, including options of the type Plaintiff claims should have been offered. Mot at 4-5.

[4] *Compare* Opp. 9 ("Plaintiff is not bound to establish loss by reference to the comparator funds in the ACAC" and "Plaintiff does not allege that Defendants should have necessarily chosen the comparator funds as replacements.") *with* Opp. 14 ("The ACAC uses proper and meaningful comparators to evaluate the challenged funds' performance and expense."); ACAC ¶¶ 31, 33, 35, 37 (alleging that Defendants should replace the Challenged Funds with alternative investments identified in the Complaint).

5

managed fund in a plan to a passively managed index fund that uses the same benchmark. The plaintiffs in many of the cases cited in Northwell's Motion to Dismiss involved allegations of imprudence based on passively managed index fund comparators that used the same benchmark (*i.e.*, the index) as the challenged fund. Those allegations did not survive Rule 12 scrutiny.[5]

In fact, these courts consistently hold that comparing an actively managed fund to a passively managed index fund does not allow any inference of imprudence because passively managed funds "ordinarily cannot serve as meaningful benchmarks." Mot. at 17-18. As the Eighth Circuit explained in *Davis v. Washington University*: "Once more, the complaint points to index funds as a potential benchmark. Yet again, the complaint is comparing apples and oranges. Index funds are passively managed, whereas [the challenged fund] has an actively managed component." *Wash. U.,* 960 F.3d at 485. By definition, actively managed funds have different investment strategies than passively managed index funds, making them inappropriate comparators for inferring an imprudent investment selection process. *See, e.g.*, *Patterson*, 2019 WL 4934834 at *12; see also* Mot. at 17-18. Here, all of the Challenged Investments are actively managed and Plaintiff's proposed Alternative Investments are all passively managed, which alone dooms their claims. Mot. at 17-18.

Second, Plaintiff's Opposition incorrectly diminishes the relevance of the different asset allocations, holdings, and investment strategies of the Challenged Investments and proposed Alternative Investments. Mot. at 18-21.[6] Plaintiff does not dispute any of the facts in

---

[5] *See, e.g, Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) ("Wash. U."); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018); *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019); *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1197 (D. Colo. 2021) ; *Kong v. Trader Joe's Co.*, No. 20-cv-05790, 2020 WL 7062395, at * 4 (C.D. Cal. Nov. 30, 2020) *appeal filed*, No. 20-56415 (9th Cir. Dec. 30, 2020); *Davis v. Salesforce.com, Inc.*, No. 20-cv-01753, 2020 WL 5893405, at *3-4 (N.D. Cal. Oct. 5, 2020).

[6] By contrast, in many of the cases Plaintiff relies upon, the alleged alternate was *identical* to the challenged investment in all respects except for cost. *Sweda*, 923 F.3d at 331 ("Sweda alleged that despite the availability of low-cost institutional class shares, Penn selected and retained *identically managed* but higher cost retail class

6

Northwell's Motion, all of which are based on prospectuses and other publicly available information that the Court can and should consider in the Rule 12 context. This includes differences in value versus growth strategies,[7] different allocations to different countries, and different allocations among emerging and developed markets. *Id.* These differences matter both to investors and to courts. The Eighth Circuit in *Meiners* made clear that even small differences (12-14%) in bonds was sufficient to render the alleged comparator funds in that case not meaningful comparators. *Meiners*, 898 F.3d at 823; s*ee also Wash. U.*, 960 F.3d at 485 (same, regarding small differences in international securities).[8]

The Second Circuit in *St. Vincent* likewise rejected the plaintiffs' efforts in that case to create an inference of imprudence in the Rule 12 context based on a comparison of different types of nonagency mortgage backed securities, because different types of nonagency mortgage securities could not be lumped together for comparison purposes to create any inference of imprudence. *St. Vincent*, 712 F.3d at 724-25 (explaining different types of nonagency mortgage securities and affirming Rule 12 dismissal). The differences here in investment strategies, holdings in different countries, and different investments in developed and emerging markets— none of which Plaintiff disputes—further render Plaintiff's Alternative Investments "apples and oranges" comparators that cannot create any inference of imprudence.[9]

---

shares.") (emphasis added); *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2017 WL 4358769, at *8 (S.D.N.Y. Sept. 29, 2017) ("However, to the extent plaintiffs claim that defendants breached their fiduciary duties by selecting specific retail funds over lower-cost, *but otherwise identical*, institutional funds. . . these allegations are sufficient to survive the motions to dismiss") (emphasis added).

[7] As explained in Northwell's Motion to Dismiss, the Plan's 50% Diamond Hill/50% Dodge & Cox Large Value Option actually *outperformed* the only comparator fund that Plaintiff offers that also is a *value* fund. Mot. 19. Plaintiff's Opposition does not even mention that fund.

[8] Plaintiff argues that it would be an absurd result if only exactly identical funds could be compared (Opp. at 16), but that argument obscures the more fundamental flaw in Plaintiff's clunky and improper comparisons between passive and active funds, comparisons which courts regularly dismiss as inapt and implausible. Mot. at 17-18.

[9] In several of the cases cited by Plaintiff, there were specific allegations of a financial conflict of interest entirely lacking here. *Karpik v. Huntington Bancshares Inc.*, No. 17-cv-1153, 2019 WL 7482134, at *5 (S.D. Ohio Sept. 26, 2019) ("Plaintiffs have combined their allegation that proprietary funds in the Plan underperformed comparable fund options with the assertion that Huntington kept those funds in the Plan to obtain a higher price when Huntington sold

7

### III. Alleging Mixed Performance Does Not Raise an Inference of Imprudent Process.

Even using Plaintiff's own self-selected Alternative Investments, Plaintiff's claims also fail because she does not allege sufficiently consistent and substantial underperformance to allow an inference of imprudence. Northwell explained in its Motion that the Challenged Investments each had periods of time when they performed better than the proposed Alternative Investments. Mot. at 22. Plaintiff does not dispute any of those facts based on prospectuses and other information that the Court can consider in the Rule 12 context. *See Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685, 2019 WL 4466714, at *9 (S.D.N.Y. Sept. 18, 2019) ("Plaintiffs allegations concern fund performance, and therefore, the Court may factor in the fund performance data integral to the allegation to decide this motion."). Moreover, as laid out in Northwell's Motion, even when proposed comparators are meaningful (which they are not here) courts in this Circuit have held that *mixed performance* across the relevant period is simply not enough to raise an inference of an imprudent process. Mot. at 21-22.

After all, there are thousands of mutual funds available in the marketplace, and only one can be the best performing over any period of time. Merely alleging that there are three or four funds—out of a universe of thousands—that performed better over some periods of time (or that there must be one that performed better were one to sift through that universe of thousands) is not sufficient to create an inference of imprudence. Were it otherwise, then all of the Alternative

---

off mutual fund assets."); *Karg v. Transamerica Corp.*, No. 18-cv-0134, 2019 WL 3938471, at *6-7 (N.D. Iowa Aug. 20, 2019) (denying defendants' motion to dismiss where plaintiff contested the prudence of six defendant-affiliated funds); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1071 (N.D. Cal. 2017) ("[C]ertain Plan investments are managed or significantly influenced. . . [by the] trustee of the Plan. . . [and] she alleges that this relationship and influence inappropriately affected and compromised the Plan's investment options.") (internal quotations and citations omitted); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-cv-9936, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) ("These specific allegations regarding excessive fees from which Defendants stood to gain is sufficient to support the inference that the process used by the defendants who were Plan fiduciaries to select and maintain the Plan's investment options was 'tainted by failure of effort, competence, or loyalty.'") (quotation and citation omitted). There are no such allegations here.

8

Investments that Plaintiff proposed *also would be imprudent*, because they all had periods during which they underperformed either (1) each other, (2) the Challenged Investment in the Plan, or (3) both. *See* Mot. at 21-22. Plaintiff's allegations concerning fund performance are not sufficient to satisfy the "price of entry," *i.e.*, to allege facts that allow a reasonable inference that the process used by the Plan's fiduciaries was deficient. *St. Vincent*, 712 F.3d 719.

### IV. Plaintiff Does Not Allege What *Similar* Plans Pay in Recordkeeping and Administrative Fees for *Similar* Services.

Plaintiff's vague allegations about recordkeeping fees paid by other plans are insufficient – she alleges no facts about what a *similar* plan should pay for *similar services*, and further fails to identify any particular recordkeeper who could provide services to the Plan at the rate she deems reasonable. Courts regularly discard complaints lacking such allegations.[10]

During the relevant period here, the Plan paid $45 per person for recordkeeping and administrative services, plus an additional $15 for other services—legal and accounting costs about which Plaintiff does not complain. Mot. at 9-10. While Plaintiff points to the 401k Averages Book to argue that smaller plans pay $35 per participant, importantly she says nothing about the services provided to the Plan, or the plans in the Averages Book, so as to establish an "apples to apples comparison" *Albert v. Oshkosh Corp.*, No. 20-cv-0901, 2021 WL 3932029, at *5 (E.D. Wis. Sept. 2, 2021), *appeal filed*, No. 21-2789 (7th Cir. Oct. 1, 2021) ("The mere existence of purportedly lower fees paid by other plans says nothing about the reasonableness of the Plan's fee, and it does not make it plausible that another recordkeeper would have offered to

---

[10] *See, e.g., Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming dismissal where plaintiffs fail to allege that the fees were excessive relative "to the services rendered."); *Brown v. Daikin Am., Inc.*, No. 18-cv-11091, 2021 WL 1758898, at *8 (S.D.N.Y. May 4, 2021) ("Plaintiffs cannot demonstrate that John Hancock's fees were so disproportionately large that [they bore] no reasonable relationship to the services rendered. . .") (quotation and citation omitted); *Ferguson*, 2019 WL 4466714, at *7 (dismissing plaintiffs administrative and recordkeeping fee allegations even where "Plaintiffs contend that the SAC states that the Plan's total plan cost is excessive as compared with other plans of *similar* market power. . ." when plaintiff merely "makes the assertion. . . [but] does nothing more.") (emphasis added).

provide the Plan with services at a lower cost."); *Smith v. CommonSpirit Health*, No. 20-cv-0095, 2021 WL 4097052, at *11-12 (E.D. Ky. Sept. 8, 2021) (dismissing claim of excessive recordkeeping fees based on 401(k) Averages Book); *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 20-cv-1493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (same). The number, standing on its own, bears little weight and the DOL agrees that it is not proper to "consider fees in a vacuum" because "[t]hey are only one part of the bigger picture, including. . . the extent and quality of the services provided."[11] Further, although Plaintiff claims that other courts in the past have held that "large plans should be paying substantially less than the Plan," (Opp. at 5), the cases she cites do not say that; instead, those courts simply accepted factual allegations in a complaint about a reasonable fee.

Moreover, Plaintiff fails to provide an example of an actual recordkeeper who would provide similar services at a rate she deems reasonable—instead hypothesizing that such a provider must exist, and referring, without other support, to the behaviors of "all national recordkeeping providers." Opp. at 23. But this is not evidence of imprudence. *Ferguson*, 2019 WL 4466714, at *8 ("Plaintiff did not compare the Plan's record keeping service to an alternative a prudent fiduciary would have selected").[12]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice and Plaintiff's request for leave to amend denied.

---

[11] *See* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf.

[12] Plaintiff's reference to a stipulation that Fidelity entered into in another case as part of an effort to resolve a discovery dispute also cannot support their allegations here. Opp. at 5. That stipulation says nothing about the services provided in exchange for those fees, or how those services compare with those provided to the Plan here. *See Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 214 (D. Mass. 2020).

Dated:  New York, New York
       November 29, 2021

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By:  /s/ Melissa D. Hill

    Melissa D. Hill
    Jeremy P. Blumenfeld
    Gina F. McGuire
    William A. Engelhart

    101 Park Avenue
    New York, New York 10178
    melissa.hill@morganlewis.com
    jeremy.blumenfeld@morganlewis.com
    gina.mcguire@morganlewis.com
    william.engelhart@morganlewis.com
    Tel:  (212) 309-6000
    Fax: (212) 309-6001

*Attorneys for Defendants*

11

## **CERTIFICATE OF SERVICE**

   I hereby certify that I caused to be served by e-mail a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of Defendants Northwell Health, Inc. and the Northwell Health 403(b) Plan Committee's Motion to Dismiss the Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) on this 29th day of November, 2021, on all counsel of record.

                   */s/ Melissa D. Hill*
                   Melissa D. Hill