UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
KAILA GONZALEZ, *individually and as a
representative of a class of similarly situated
persons and on behalf of the Northwell Health
403(b) Plan*,

                           Plaintiff,                                  **MEMORANDUM AND ORDER**

          v.                                                   20-CV-3256 (RPK) (RLM)

NORTHWELL HEALTH, INC.; NORTHWELL
HEALTH 403(B) PLAN COMMITTEE; DOES
1-10, INCLUSIVE,

                        Defendants.
---------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       Plaintiff Kaila Gonzalez, a participant in the Northwell Health 403(b) Plan, brings this putative class action against the Plan's sponsor, Northwell Health, Inc., the Northwell Health 403(b) Plan Committee, and ten other unidentified Plan fiduciaries.  Plaintiff alleges that defendants allowed the Plan to be charged excessive recordkeeping fees and imprudently retained certain investment options in the Plan's investment menu in violation of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.  Northwell and the Plan Committee have moved to dismiss certain claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and have moved to dismiss the operative complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff has standing to bring her claims, but she fails to sufficiently state these claims and I grant defendants' motion to dismiss.

## BACKGROUND

       The following facts are drawn from the operative complaint and are assumed true for the purposes of this order.

I.        **Plaintiff's Participation in the Plan.**

The Plan is a defined-contribution retirement plan.  At the end of 2018, it had 56,289 participants, managed over $5.6 billion in assets, and ranked in the top 0.1 percent of defined-contribution plans by size.  Am. Compl. (Dkt. #30) ¶ 4.  Plaintiff is a former Northwell employee and a current participant in the Plan.  *Id.* ¶ 9.

Plan participants direct their contributions into investment options offered by the Plan.  *See id*. ¶¶ 1–2, 18.  The Plan pays its expenses from its assets, and most administrative expenses are passed through to participants.  *Id.* ¶ 18.  Therefore, the amount of money in a participant's account depends on the contributions to the participant's account, fee-adjusted earnings or losses from the investments to which these contributions were allocated, distributions to the participant, and administrative expenses paid by the participant.  *Ibid.*  As a result, participants in the Plan "bear the risk of high fees and investment underperformance."  *Id.* ¶ 2.

Plan participants pay fees for recordkeeping and administration, which I refer to generally as "recordkeeping fees."  *Id.* ¶¶ 21, 24.  At all times relevant to the operative complaint, defendants retained Transamerica Retirement Solutions, LLC to maintain account records and perform other administrative functions for the Plan.  *Ibid*.  From July 21, 2014 through January 1, 2020, participants paid the Plan a flat annual fee of $60 for these services.  *Id.* ¶ 25.  From January 1, 2020 onwards, the flat annual fee was reduced to $52.  *Ibid.*

The Plan offers its participants 25 investment options, which generally consist of target funds, index funds, and mutual funds.  *Id.* ¶ 18; Northwell Health 403(b) 2020 Plan Participant Disclosure Notice F4–F8.[*]  The six mutual funds offered by the Plan are actively managed and

---

[*] I take judicial notice of the Northwell Health 403(b) 2020 Plan Participant Disclosure Notice, a regulatory filing available at https://www.transamerica.com/media/northwell-fee-disclosure-403-plan-transamerica-TA069542_tcm145-115331.pdf. *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *3

each holds equities, bonds, and/or real estate assets, depending on the type of mutual fund. *Ibid.* The four index funds offered by the Plan are passively managed, and, depending on the type of index fund, each holds equities and/or bonds. *Ibid.*

Since the fourth quarter of 2014, plaintiff has invested through the Plan in the 50% Diamond Hill/50% Dodge & Cox Large Value Option and the 50% Champlain/50% Diamond Hill Small Cap Option. Am. Compl. ¶ 10. Since the third quarter of 2016, plaintiff has also invested through the Plan in the Lazard Emerging Markets Fund and the 50% Causeway/50% BNY Mellon International Option. *Ibid.*

## II.     Plaintiff's Lawsuit.

Plaintiff brought suit against Northwell, the Plan Committee, and ten John Doe defendants in 2020. *See* Compl. (Dkt. #1). The operative amended complaint, filed the following year, brings three claims against the same defendants under 29 U.S.C. § 1132(a)(2), which allows ERISA-plan participants to bring civil actions for breaches of fiduciary duty against their plans. *See* Am. Compl. ¶¶ 14–17. Plaintiff alleges that defendants "breached fiduciary duties" because they "allowed unreasonable recordkeeping/administrative expenses to be charged to the Plan" and because they "selected, retained, and/or otherwise ratified high-cost and poorly-performing investments, instead of offering more prudent alternative investments" which were readily available. *Id*. ¶¶ 6, 27. Plaintiff also alleges derivative and other related claims dependent on the underlying fiduciary-breach claims.

### a.   Recordkeeping Claims.

(S.D.N.Y. Sept. 29, 2017) ("Courts regularly take notice of publicly available documents including regulatory filings . . . [and] may also take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned.'") (citations omitted).

Plaintiff principally relies on a fee comparison to claim that defendants breached their fiduciary duties by failing to obtain lower recordkeeping costs. She alleges that an industry publication, the 401k Averages Book (18th ed.), reports that plans with 100 participants and $5 million in assets had average recordkeeping costs in 2017 of $35 per participant. *Id.* ¶ 24. Plaintiff argues that large defined-contribution plans like the Plan "have significant bargaining power" and should have been able to negotiate fees lower than those charged to smaller plans. *Id.* ¶¶ 4, 25. Plaintiff asserts that had defendants compared the Plan's fees to those of similar plans, they would have realized that Transamerica's rates were too high. *Id.* ¶ 26.

   b.  *Imprudent-Retention Claims.*

Plaintiff alleges that defendants breached their fiduciary duties to the Plan by retaining the Large Value Option, the Small Cap Option, the Lazard Emerging Markets Fund, and the Causeway/BNY Mellon Option (the "Challenged Funds") in the Plan's menu of investment choices. *Id.* ¶ 6. These funds are all actively managed. Northwell Health 403(b) 2020 Plan Participant Disclosure Notice F4–F8. Using fee-adjusted investment returns, she argues that each Challenged Fund underperformed when measured against the index or indices offered as a benchmark by the Plan. Am. Compl. ¶ 30–37. She argues that defendants could have instead offered index funds that tracked these benchmark indices while charging lower fees. *Ibid*.

Specifically, plaintiff alleges that between the first quarter of 2017 and the fourth quarter of 2019, the Large Value Option's "[p]erformance, adjusted for investment expense" was between .18% and 3.31% worse than the performance of that fund's benchmark indices on an average, rolling three-year trailing basis. Am. Compl. ¶ 30. The fund also similarly underperformed its benchmark using rolling five-year trailing averages from the first through fourth quarter of 2019. *Ibid*. Several index funds—the Vanguard Russell 1000 Index Fund, the Vanguard 500 Index Fund,

4

and the Vanguard Russell Value Index Fund—track the Large Value Option's benchmark indices while charging lower fees. *Id.* ¶ 31.

Similarly, plaintiff alleges that between the third quarter of 2016 and the fourth quarter of 2019, the Small Cap Option's "[p]erformance, adjusted for investment expense" was between .25% and 4.20% worse than the performance of that fund's benchmark indices on an average, rolling three-year trailing basis. *Id.* ¶ 32. The fund also similarly underperformed its benchmark using rolling five-year trailing averages from the third quarter of 2018 through the fourth quarter of 2019. *Ibid.* Alternative index funds track this fund's benchmark indices but charge lower fees. *Id.* ¶ 33.

Next plaintiff alleges that between the second quarter of 2015 and the fourth quarter of 2019, the Lazard Emerging Markets Fund's "[p]erformance, adjusted for investment expense," was between .11% and 4.20% worse than the performance of that fund's benchmark index on an average, rolling three-year trailing basis. *Id.* ¶ 34. The fund also similarly underperformed its benchmark using rolling five-year trailing averages from the second quarter of 2017 through the fourth quarter of 2019. *Ibid.* An index fund, charging lower fees, tracks this fund's benchmark index. *Id.* ¶ 35.

Finally, plaintiff alleges that between the second quarter of 2015 and the fourth quarter of 2016, the "[p]erformance, adjusted for investment expense" of the Causeway/BNY Mellon Option was between .06% and 2.02% worse than the performance of that fund's benchmark index on an average, rolling three-year trailing basis. *Id.* ¶ 36. The fund also generally underperformed its benchmark using rolling five-year trailing averages from the second quarter of 2015 through the second quarter of 2018, but it did outperform its benchmark twice. *Ibid.* An index fund also tracks that benchmark while charging lower fees. *Id.* ¶ 37.

Pointing to the Challenged Funds' underperformance compared to their respective benchmarks, and the availability of lower-cost index funds that would have tracked those benchmarks, plaintiff alleges that defendants acted imprudently by retaining the Challenged Funds.

   *c.   Additional Claims.*

Plaintiff also alleges defendants are liable as co-fiduciaries that knowingly participated in, concealed, or enabled these breaches of fiduciary duty, and that Northwell breached its fiduciary duty to monitor the performance of the Plan Committee and its members.  *Id.* ¶¶ 57–61.  Finally, plaintiff claims that any defendant who is not a fiduciary or co-fiduciary to the Plan is liable for knowingly participating in these fiduciary breaches.  *Id.* ¶ 62–73.

Plaintiff seeks declaratory and injunctive relief and damages on behalf of herself, her proposed class, and the Plan.  *See id.* ¶ 7.  Plaintiff's proposed class includes all Plan participants from July 20, 2014 through the present.  *Id.* ¶ 44.

Northwell and the Plan Committee moved to dismiss the imprudent-retention claim for lack of standing and all claims in the Amended Complaint for failure to state a claim upon which relief can be granted.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. #36).

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving by a preponderance of the evidence that the Court has "the statutory or constitutional power to adjudicate" the action.  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation and quotation marks omitted); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

A Rule 12(b)(1) motion to challenge standing can be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).  Facial attacks are "based solely on

the allegations of the complaint . . . and exhibits attached to it." *Ibid*.  Fact-based attacks occur

when the defendant proffers evidence beyond plaintiff's pleadings. *Id.* at 57.  To counter a fact-

based attack, plaintiff must either "come forward with evidence of [her] own to controvert that

presented by the defendant" or "rely on the allegations in the [p]leading if the evidence proffered

by the defendant is immaterial because it does not contradict plausible allegations that are

themselves sufficient to show standing." *Ibid.*; *see Milnari v. Equifax Inc.*, No. 18-CV-3282 (ILG)

(RLM), 2022 WL 318001, at *2–3 (E.D.N.Y. Feb. 2, 2022) (applying *Carter*).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must

contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint fails to plausibly state a claim

and is properly dismissed when "the allegations in a complaint, however true, could not raise a

claim of entitlement to relief" as a matter of law, *Twombly*, 550 U.S. at 558, or when "the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct" as

matter of law, *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendants' motion to dismiss plaintiff's imprudent-retention claims for lack of standing

is denied.  But plaintiff's fiduciary-breach claims are nonetheless dismissed on defendants' motion

because plaintiff has not adequately pleaded either claim as required by Federal Rule of Civil

Procedure 12(b)(6).  And because she fails to sufficiently plead her primary claims for breach of

fiduciary duty, her derivative and related claims dependent on those primary breaches fail as well.

I.    **Plaintiff Has Adequately Pleaded Standing for Her Imprudent-Retention Claims.**

Defendants' motion to dismiss plaintiff's imprudent-retention claims for lack of standing is denied.  Section 1132(a)(2) of Title 29 provides a cause of action for plan participants to bring claims "in a representative capacity on behalf of the plan." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (citation and quotation marks omitted).  While that statute provides a remedy for injuries to the plan and not individual participants, *see LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008), it does not relax the constitutional requirement that a plaintiff has standing, *see Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).  In other words, "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020).

Accordingly, to establish standing, plaintiff must show "(i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Defendants do not dispute, and plaintiff sufficiently pleads, that her alleged injury is redressable.  But defendants challenge whether plaintiff has established injury in fact and causation for her imprudent-retention claims.  I address these two contested elements in turn.

A.  **Plaintiff Has Adequately Pleaded Injury in Fact.**

Plaintiff has adequately pleaded injury in fact for her imprudent-retention claims.

Injuries in fact are concrete and particularized injuries—"physical, monetary, or cognizable intangible harms," *TransUnion*, 141 S. Ct. at 2206—that affect the plaintiff "in a personal and individual way," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation and quotation marks omitted).  "[A] breach of fiduciary duty under ERISA in and of itself" is not a standing-cognizable

injury, *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F. 3d 561, 567 (2d Cir. 2016) ("*Ivy Asset*") (citation omitted), but allegations that plaintiff "suffered specific losses as a result of the alleged breach of fiduciary duty" are sufficient to generate standing, *Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *4 (S.D.N.Y. Oct. 7, 2019) (citation and quotation marks omitted). For example, "a financial loss in comparison to what a plaintiff might have received but for the defendant's alleged breach of duty . . . can support a cognizable injury regardless of whether the plaintiff suffered an actual loss on [her] investment or simply realized a more modest gain." *Bekker v. Neuberger Berman Grp. LLC*, No. 16-CV-6123 (LTS) (BCM), 2018 WL 4636841, at *4 (S.D.N.Y. Sept. 27, 2018); *cf. Ivy Asset*, 843 F.3d at 567–69 (finding no concrete injury where plaintiff could not plausibly allege that a prudent fiduciary would have would have received higher returns by investing elsewhere).

Here, by alleging that defendants breached their fiduciary duties by retaining each of the four Challenged Funds in the Plan's investment menu, plaintiff effectively alleges four breaches of fiduciary duty that caused her injury. That is, she alleges that defendants made four decisions that violated their fiduciary duties: the retention of the Large Value Option, the retention of the Small Cap Option, the retention of the Lazard Emerging Markets Fund, and the retention of the Causeway/BNY Mellon Option. Am. Compl. ¶¶ 31, 33, 35, 37. And she alleges that each of these retention decisions caused her injury. *Ibid*.

That formulation is consistent with case law establishing that individual investment decisions can violate the duty of prudence. For example, the Second Circuit has explained that the duty of prudence standard "focus[es] on a fiduciary's conduct in arriving at *an investment decision* . . . ask[ing] whether a fiduciary employed the appropriate methods to investigate and determine the merits of *a particular investment*." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med.*

*Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) ("*St. Vincent*") (emphasis added; citation and quotation marks omitted).  And it has stated that a fiduciary's actions should be judged "based upon information available to the fiduciary at the time of *each* investment decision."  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011) (emphasis added), *abrogated on other grounds*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014); *see, e.g.*, *Patterson*, 2019 WL 4934834, at *9–13; *see, e.g.*, *Jacobs v. Verizon Commc'ns, Inc.*, No. 16-CV-1082 (PGG), 2017 WL 8809714, at *3–4, *9 (S.D.N.Y. Sept. 28, 2017) ("*Jacobs I*") (applying duty of prudence on investment-by-investment basis).

Plaintiff has adequately pleaded as to each Challenged Fund that the defendants' retention of that fund caused her injury in fact.  Plaintiff alleges "[d]efendants' imprudence in retaining" each Challenged Fund "forced [plaintiff] to pay" an increased cost for each Challenged Fund "to consistently lag the index."  Am. Compl. ¶¶ 31, 33, 35, 37.  In other words, she alleges that the imprudent retention of each Challenged Fund caused plaintiff financial loss by requiring her to pay a higher fee for a lower return compared to an alternative fund that the Plan could have offered.  Accordingly, plaintiff alleges she suffered a financial loss for each Challenged-Fund retention she alleges was imprudent.  *Cf. Bekker*, 2018 WL 4636841, at *4 (stating a cognizable injury could be "a financial loss in comparison to what a plaintiff might have received but for the defendant's alleged breach of duty").

Defendants have not mounted an effective fact-based challenge to these allegations.  Defendants' challenge rests on a declaration from John Simon, a vice president at Cornerstone Research, stating plaintiff "would have been economically worse off by $57.45 had she invested in the alternative investments [as a group] compared to the actual performance of the Challenged [Funds]" as a group.  Decl. of John P. Simon ("Simon Declaration") (Dkt. #37) ¶ 8 (emphasis

omitted).  To reach that conclusion, Simon "compare[d] the actual investment performance earned from the" Challenged Funds "to the calculated alternative investment performance when [plaintiff] withdrew or transferred her assets out of the funds."  *Id.* ¶ 7(c).

The Simon Declaration falls short because it fails to contradict as to any particular fund the Amended Complaint's allegation that plaintiff suffered a loss from the Plan's retention of that fund.  To be sure, the declaration demonstrates that plaintiff was, on the whole, better off investing in the Challenged Funds compared to her proffered alternatives.  It therefore supports an inference that plaintiff's claims of loss from fund retention are untrue as to at least one of the Challenged Funds.  But it does not demonstrate that plaintiff's allegations of loss are false as to a specific Challenged Fund or each of the Challenged Funds individually.  As plaintiff's counsel observed at argument, even if the Simon Declaration's determinations are correct, plaintiff may well have suffered financial losses from the Plan's retention of as many as three of the four Challenged Funds.  June 29, 2022 Oral Arg. Tr. ("Oral Arg. Tr.") 17–18.  And because the Simon Declaration provides only an aggregate calculation, the Simon Declaration provides no way to ascertain which of the retention decisions were profitable to plaintiff.  Under these circumstances, defendants have not put forward evidence to demonstrate—as to any one of the four Challenged Funds—that plaintiff's claim of injury from retention of that fund is false.  On the evidence provided, defendants' fact-based challenge to standing therefore falls short.

## B.  Plaintiff Has Adequately Pleaded Causation.

Plaintiff adequately pleads the causation element of standing through allegations that defendants' retention of underperforming, higher-cost funds caused her actual or comparative financial loss.  Am. Comp. ¶ 6.  Article III requires that "plaintiff's injury be 'fairly . . . traceable to the challenged action of the defendant.'"  *Carter*, 822 F.3d at 55 (citation and alterations omitted).  This "causal connection element of Article III standing . . . does not create an onerous

11

standard . . . [and] is a standard lower than that of proximate causation." *Ibid.* (citations and quotation marks omitted).

Here, plaintiff has adequately pleaded that she suffered loss because defendants retained each Challenged Fund instead of substituting a higher-performing, lower-cost fund that tracked the benchmark index or indices for that fund. Other courts have found comparable allegations sufficient for causation—at least in the absence of evidence undermining causation, which defendants have not offered here. *See, e.g.*, *Bekker*, 2018 WL 4636841, at *5 (requiring evidence that "suggest[s] a break in the causal link between Defendants' alleged ERISA breaches and the resultant damage alleged by Plaintiff" to undermine standing traceability); *Jacobs v. Verizon Commc'ns, Inc.*, No. 16-CV-1082 (PGG), 2020 WL 5796165, at *7 (S.D.N.Y. Sept. 29, 2020) ("*Jacobs II*") (finding standing-cognizable causation between "incur[red] losses from diminution of investment returns" and "[d]efendants' failure to adequately monitor the performance of the [challenged fund] and the failure to take any corrective action regarding that fund despite obvious and long-term underperformance").

Plaintiff has standing to bring her imprudent-retention claims against each Challenged Fund.

## II.    Plaintiff Fails to State a Fiduciary-Breach Claim.

Plaintiff fails to allege facts sufficient to raise the plausible inference that defendants violated the duty of prudence through their retention of the Large Value Option, the Small Cap Option, Lazard Emerging Markets Fund, or the Causeway/BNY Mellon Option. Plaintiff's Amended Complaint is similarly deficient as to her excessive-fee claim. Accordingly, Plaintiff's imprudent-retention and excessive-fee claims are dismissed, as are her derivative and other related claims.

### A.  Imprudent-Retention Claims.

Plaintiff has failed to plausibly allege that defendants breached their duty of prudence by retaining each Challenged Fund.

ERISA requires fiduciaries to use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This duty "is measured according to the objective prudent person standard developed in the common law of trusts." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107–08 (2d Cir. 2021) ("*Sacerdote II*") (citation and quotation marks omitted)*, cert. denied*, 142 S. Ct. 1112 (2022). When reviewing fiduciary-breach claims under Federal Rule of Civil Procedure 12(b)(6), courts conduct a "context specific" inquiry that gives "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) (citation omitted). A court therefore "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sacerdote II*, 9 F.4th at 107 (citation and quotation marks omitted). A fiduciary's decision to retain an investment option is subject to challenge—just like a decision to offer an investment option in the first place—because "[a]n ERISA fiduciary's investment decisions . . . must account for changed circumstances." *St. Vincent*, 712 F.3d at 716–17 (citation omitted); s*ee, e.g., Patterson*, 2019 WL 4934834, at *10; *see also Morrissey v. Curran*, 567 F.2d 546, 549 n. 9 (2d Cir. 1977). A "trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent." *St. Vincent*, 712 F.3d at 717 (citation omitted).

In the ERISA context, the Second Circuit has counseled "particular care . . . in order to ensure that the complaint alleges nonconclusory factual content raising a plausible inference of

misconduct and does not rely on the vantage point of hindsight." *Sacerdote II*, 9 F.4th at 107 (citation, ellipses, and alterations omitted). It has emphasized that a plaintiff must set out "*nonconclusory* factual content raising a *plausible* inference of misconduct" that "does not rely on 'the vantage point of hindsight.'" *St. Vincent,* 712 F.3d at 718 (citation omitted). Doing so does not require a plaintiff to make "factual allegations referring *directly* to" a fiduciary's "knowledge, methods, or investigations at the relevant times." *Ibid.* Instead, a complaint is sufficient when it sets out "circumstantial factual allegations" from which the court "may reasonably 'infer from what is alleged that the [fiduciary's decision-making] process was flawed.'" *Ibid.* (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). This requires plaintiff to "allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently." *Ibid*.

These standards ensure that fiduciaries need not face the substantial burdens of discovery when a plaintiff has not made specific allegations sufficient to support a finding of misconduct. As the Second Circuit has explained, the "ominous" prospect of costly discovery based on an allegation of breach of fiduciary duty "elevates the possibility that 'a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.'" *Id.* at 719 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Application of the pleading safeguards in *Iqbal* and *Twombly* "help[s] 'to prevent . . . using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit.'" *Ibid.* (citation omitted). At the same time, a plaintiff "with a meritorious claim will still be able to allege facts plausibly showing that an ERISA fiduciary should have been aware that the relevant

investment decisions did not satisfy ERISA's fiduciary standards," because "ERISA imposes extensive disclosure requirements on plan administrators," giving plan participants the information needed to put forward persuasive circumstantial evidence to challenge those investment decisions that are genuinely imprudent. *Ibid.* (citation omitted).

Plaintiff has failed to set out circumstantial factual allegations from which a court may reasonably infer that the decision to retain each Challenged Fund was the product of a flawed decision-making process. Plaintiff principally alleges that, in specified quarters, the Challenged Funds' "[p]erformance, adjusted for investment expense" trailed their respective benchmark index or indices on three- and five-year rolling, trailing average bases. Am. Compl. ¶¶ 31, 33, 35, 37. Plaintiff alleges that a prudent fiduciary would have replaced these funds with lower-cost alternatives that simply tracked the benchmark indices. *Ibid*.

These allegations of underperformance compared to benchmark indices over a relatively short period of time do not support a plausible inference that defendants acted imprudently in retaining these four funds. While a plaintiff may allege a breach of fiduciary duty based on a fund's underperformance relative to a benchmark index, the comparative underperformance must generally be "consistent" and "substantial" to support an inference of imprudence. *Patterson*, 2019 WL 4934834, at *10; *see Dorman v. Charles Schwab Corp.*, No. 17-CV-00285 (CW), 2019 WL 580785, at *2, *6 (N.D. Cal. Feb. 8, 2019) (requiring "persistent[]" and "material[]" underperformance). That is because a prudent "fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy," *White v. Chevron Corp.*, No. 16-CV-0793 (PJH), 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016), and will not necessarily "reflexively jettison investment options in favor of the prior year's top performers" because "past performance is no guarantee of future success," *Patterson*, 2019

15

WL 4934834, at *11. More specifically, "allegations of consistent, ten-year underperformance may support a duty of prudence claim," if the underperformance is "substantial." *Id.* at *10; *see Falberg v. Goldman Sachs Grp., Inc.*, No. 19-CV-9910 (ER), 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020) (denying a motion to dismiss after considering underperformance over "the prior 10-year period"); *Sacerdote v. New York Univ.* ("*Sacerdote I*"), No. 16-CV-6284 (KBF), 2017 WL 3701482, at *10 (S.D.N.Y. Aug. 25, 2017) (same), *vacated and remanded on other grounds*, *Sacerdote II*, 9 F.4th 95; *Jacobs I*, 2017 WL 8809714, at *9 (same). In contrast, as a general matter, "allegations based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence." *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753 (MMC), 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (quotation marks omitted); *Dorman*, 2019 WL 580785, at *6 (underperformance over a "relatively short" five-year interval insufficient to sustain an imprudence claim).

Plaintiff has not offered evidence of long-term underperformance relative to the benchmark indices. She only offers calculations based only on three- and five-year trailing averages, without the ten-year data that is a traditional hallmark of viable claims based on underperformance relative to an index. *See, e.g.*, *Patterson*, 2019 WL 4934834, at *10. Moreover, the scope of the underperformance over even these more limited time periods is relatively modest.

Plaintiff alleges that—after management fees are deducted from investment earnings—the Large Value Option underperformed its benchmark on average by 1.03% on a rolling three-year trailing basis and 1.94% on a rolling five-year trailing basis, the Small Cap Option underperformed its benchmark on average by 2.33% on a rolling three-year trailing basis and 2.57% on a rolling five-year trailing basis, the Lazard Emerging Markets Fund underperformed its benchmark on average by 1.86% on a rolling three-year trailing basis and 1.99% on a rolling five-year trailing

16

basis, and the Causeway/BNY Mellon Option underperformed its benchmark on average by 0.96%

on a rolling three-year trailing basis and 0.32% on a rolling five-year trailing basis.  *See* Am.

Compl. ¶¶ 30–37.

      This is not the type of substantial underperformance over a lengthy period that gives rise

to a plausible inference that a prudent fiduciary would have removed these funds from the plan's

menu of options.  *Compare Jacobs I*, 2017 WL 8809714, at *2, *9 (plaintiff adequately pleaded a

duty of prudence violation by showing ten-year annualized underperformance of 8.63%), *with*

*Patterson*, 2019 WL 4934834, at *11 (five-year annualized underperformance of 1.14% "is

relatively small and certainly not enough to support a claim for breach of the duty of prudence"),

*Cho v. Prudential Ins. Co. of Am.*, No. 19-CV-19886 (JMV) (SCM), 2021 WL 4438186, at *9

(D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial" underperformance to

state a claim as to fund for which "five-year trailing performance had underperformance

percentages ranging from .07% to 3.71%," and "ten-year trailing performance reflected

underperformance ranging from 1.19% to 2.86%"), *and Bekker,* 2018 WL 4636841, at *2, *7

(plaintiff failed to state a claim for imprudence based on retention of a fund that underperformed

its benchmark by 4.48% over a ten-year period); *cf. Falberg,* 2020 WL 3893285, at *9 (concluding

that plaintiff adequately stated an imprudence claim in case involving ten-year underperformance

of "more than 1.00%" for some proprietary funds and "over 2.00%" for other proprietary funds,

in part because "plaintiff alleged several other indicia of imprudence," such as comparison of the

Plan's treatment of proprietary and non-proprietary funds).

      Plaintiff's circumstantial case is not aided by the fact that the only funds she identifies as

better alternative options for the Challenged Funds are index funds.  At minimum, a plaintiff pleads

a stronger circumstantial case that a fiduciary violated the duty of prudence via investment

retention by pointing to a similar fund that outperformed the challenged fund or that obtained similar or superior performance while charging comparable fees.  *Cf. Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018) (stating that a "meaningful comparator" is *required* for a plaintiff to plead a violation of the duty of prudence based on investment choice).  Plaintiff has not identified meaningful comparators that outperformed the Challenged Funds.  She argues as to each of the Challenged Funds that defendants should have "replace[d] the fund in the Plan with an alternative that has demonstrated the ability to consistently outperform the benchmark, or, at the very least, retain[ed] an alternative that tracks the benchmark."  Am. Compl. ¶¶ 31, 33, 35, 37.  But she fails to point to any specific fund that "consistently outperform[ed]" the relevant benchmarks that defendants could have substituted for the Challenged Funds.  *Ibid.*

Further, the only funds that plaintiff points to as choices that would have "track[ed] the benchmark" while charging lower fees are index funds.  *Ibid.*  While these passively managed funds typically charge lower fees, "[t]hey have different aims, different risks, and different potential rewards that cater to different investors" than actively managed funds.  *Davis v. Washington Univ.*, 960 F.3d 478, 484–85 (8th Cir. 2020); *see Salesforce.com*, 2020 WL 5893405, at *3.  The Plan already offers multiple index fund options to its participants.  Northwell Health 403(b) 2020 Plan Participant Disclosure Notice F4-F8.  And it is not imprudent for a fiduciary to offer both active and passive investment options.  *Washington Univ.*, 960 F.3d at 485; *see Smith v. CommonSpirit Health,* No. 20-CV-95 (DLB) (EBA), 2021 WL 4097052, at *11 (E.D. Ky. Sept. 8, 2021) ("We know of no case that says a plan fiduciary violates its duty of prudence by offering actively managed funds . . . as opposed to offering only passively managed funds."), *aff'd*, 37 F.4th 1160 (6th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022) (same principle), *reh'g denied*, No. 21-CV-2789, 2022 WL 4372363 (7th Cir. 2022).  Given the differences between active

and passive funds, a simple comparison of fee-adjusted returns between an active and a passive fund has limited probative force. *Washington Univ*, 960 F.3d at 485 ("Comparing apples and oranges is not a way to show that one is better or worse than the other."); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1303 (D. Minn. 2021) ("Comparing funds with different investment strategies, such as passively managed and actively managed funds, are not meaningful benchmarks") (citation omitted); *see Salesforce.com,* 2020 WL 5893405, at *3 (similar); *Bekker*, 2018 WL 4636841, at *2 (similar); *cf. Falberg*, 2020 WL 3893285, at *3 (finding plaintiff's allegation "there were several non-proprietary *actively managed* mutual funds in the marketplace that performed better and could have replaced" proprietary *actively managed* funds sufficient to establish comparability) (emphasis added).

Ultimately, "the assessment of any particular complaint is a 'context-specific task,'" *Sacerdote II*, 9 F.4th at 108–09 (citation omitted), and plaintiff's allegations, taken together, fall short. Plaintiff has pleaded relatively modest underperformance by actively managed funds, compared only to index funds, over a relatively short period of time. And she has not put forward any "other indicia of imprudence," such as evidence of self-dealing or conflicts of interest, that might bolster an otherwise weak circumstantial case. *See Falberg*, 2020 WL 3893285, at *9; *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076–77 (N.D. Cal. 2017). Her allegations fail to nudge her claim of imprudence from the merely possible to the plausible. Plaintiff has therefore failed to state an imprudent-retention claim.

### B. Excessive-Fee Claim.

Plaintiff also fails to plausibly allege that defendants breached their fiduciary duty of prudence by allowing excessive recordkeeping fees.

Plaintiff's excessive-fees claim is analyzed under the same general framework as her imprudent-retention claim. At the motion to dismiss stage, the key question is whether plaintiff's

"circumstantial factual allegations" are sufficient to "allow the court to reasonably infer the process" of managing the Plan's fees "was flawed." *Cunningham v. USI Ins. Servs., LLC*, No. 21-CV-1819 (NSR), 2022 WL 889164, at *3 (S.D.N.Y. Mar. 25, 2022) (quotation marks omitted) (quoting *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019)).   In making that assessment, courts consider the "particular services rendered by the recordkeeper[,] . . . the fees of comparable plans and recordkeepers at the time[,] . . . and the bargaining power of the plan to negotiate competitive recordkeeping fees." *Carrigan v. Xerox Corp.*, No. 21-CV-1085 (SVN), 2022 WL 1137230, at *5 (D. Conn. Apr. 18, 2022) (citations omitted) (collecting cases).

Plaintiff has not made allegations permitting a reasonable inference that defendants' process as to recordkeeping fees was flawed or that an adequate investigation would have revealed to defendants that the decision to retain Transamerica as the Plan's recordkeeper was imprudent.

Plaintiff makes essentially five factual allegations as to recordkeeping fees: (i) until January 1, 2020, the Plan charged a $60 annual fee for these services to participants, Am. Compl. ¶ 25; (ii) after January 1, 2020, that fee was reduced to $52, *ibid.*; (iii) the Plan is very large, *id.* ¶¶ 4, 24; (iv) very small plans averaged $35 in direct fees for recordkeeping services per participant, *id.* ¶ 24; and (vi) "[o]ther courts have acknowledged that a plan with $3.4 billion in assets and 41,863 active participants should be paying $30 per participant and that the market rate of total administrative fees for jumbo plans, *i.e.*, those within the top 1%, should be $35 per participant," *id.* ¶ 24 n.2.

The Amended Complaint's allegation that Transamerica's recordkeeping fees are excessive rests principally on a comparison of the recordkeeping fees billed to Plan participants to the $35 average per participant fee reported in the 401k Averages Book for "smaller" plans.  *Id.* ¶

20

24.  But as plaintiff acknowledged at oral argument, ERISA plans commonly pay recordkeeping fees through direct fees, indirect mechanisms like revenue sharing, or a direct/indirect payment combination.  Oral Arg. Tr. 14 (plaintiff does not dispute "that the fees for plans are generally paid by a combination [of] direct and indirect mechanism[s]"); *see, e.g.*, *Rosenkranz v. Altru Health Sys.*, No. 20-CV-168, 2021 WL 5868960, at *4 (D.N.D. Dec. 10, 2021) ("[R]ecordkeeping fees can either be paid directly by the plan's assets, indirectly by the plan's investments (called revenue sharing), or by some combination of both."); *Wehner v. Genentech, Inc.*, No. 20-CV-06894 (WHO), 2021 WL 507599, at *8 (N.D. Cal. Feb. 9, 2021) ("[R]evenue sharing[] can result in a portion of investment management fees going to the recordkeeper for administrative services."); *Tracey v. Massachusetts Inst. of Tech.*, 404 F. Supp. 3d 356, 362 (D. Mass. 2019) ("In a revenue sharing system, the recordkeeper retains some of the investment income of the retirement plan to satisfy the plan's administrative expenses.").  Plaintiff acknowledges that the 401k Averages Book $35 figure reflects only the average *direct* fees paid by the smaller-plan participants.  Oral Arg Tr. 12.

As a result, that statistic provides little insight into whether *total* recordkeeping fees—*i.e.*, accounting for any indirect payments—paid by smaller-plan participants are higher or lower than the *total* recordkeeping fees paid by plaintiff and other Plan participants.  Without a sufficient allegation that the *total* fees paid by Plan participants are higher or lower than the *total* fees paid by a smaller comparator, plaintiff has failed to plausibly allege that defendants breached their fiduciary duties by allowing the Transamerica fees plaintiff alleges.  *Smith*, 2021 WL 4097052, at *11 (dismissing plaintiff's excessive recordkeeping claim in part because "it is unclear how much the [p]lan pays in total recordkeeping fees and how that amount stacks up against the average recordkeeping cost listed in the 401(k) Averages Book").

Even if plaintiff's claim were not deficient on those grounds, it would fall short because plaintiff fails to plead that defendants allowed higher recordkeeping fees than the average small plan for a comparable "basket of services." *Cunningham*, 2022 WL 889164, at *4.   A plaintiff "must plead administrative fees that are excessive in relation to the *specific* services the recordkeeper provided to the *specific* plan at issue." *Wehner*, 2021 WL 507599, at *5; *see Young v. GM Inv. Mgmt. Corp.*, 325 Fed. Appx. 31, 33 (2d Cir. 2009) (requiring plaintiffs to "allege that the fees were excessive relative 'to the services rendered'") (citation omitted).

Here, the Amended Complaint does not allege that there are entities that could provide the Plan with services comparable to Transamerica's at lower rates, let alone name any of those providers or describe their service-based pricing models.   *Smith*, 2021 WL 4097052, at *11 (dismissing an excessive fee claim in part because "[p]laintiff has failed to identify another recordkeeper that would have been willing to conduct the same service as [the recordkeeper] at the assertedly reasonable rate of $30 per person"); *Ferguson*, 2019 WL 4466714, at *8 ("Plaintiff did not compare the [p]lan's record keeping service to an alternative a prudent fiduciary would have selected or provide any additional facts to support their assertion that the administrative fees were excessive.").   Nor does the Amended Complaint compare Transamerica's services to the services provided to smaller plans such that it would be possible to infer that the smaller-plan providers share a market for recordkeeping services with larger plans, like the Northwell Plan.   Indeed, the Amended Complaint does not even list all the services that Transamerica provides to the Plan, *see* Am. Compl. ¶ 21 (alleging that Transamerica performed "administrative functions *such as* processing loan[s] and withdrawal requests") (emphasis added), or allege facts suggesting that those services are worth less than $52 to $60.   Without more, plaintiff's allegations amount to the *ipse dixit* that it is categorically imprudent for a large plan to charge higher fees than a small plan.

The Amended Complaint is also silent as to whether any plans *similar to* the Northwell

Plan actually allow recordkeeping fees lower than the smaller-plan average. *Cf. Stark v. Keycorp*,

No. 20-CV-01254, 2021 WL 1758269, at *7 (N.D. Ohio May 4, 2021) (allowing an excessive-fee

claim where "[p]laintiffs have alleged that [d]efendant could have obtained comparable

administrative services at a significantly reduced cost from at least three different vendors").

Plaintiff alleges that other courts have concluded that a plan with $3.4 billion in assets and

41,863 participants "*should be* paying $30 per participant" and that the market rate for "jumbo"

plans within the top one percent of plans "*should be* $35 per participant."  Am. Compl. ¶ 24 n.2

(emphasis added).  But this allegation appears to be a "a legal conclusion" about what a prudent

fiduciary of a particular sized plan should be able to negotiate "couched as a factual allegation."

*Iqbal*, 556 U.S. at 678 (citation omitted).  Even taking that factual allegation as true, plaintiff does

not allege that any plans *actually* pay those rates, that those rates were available to the Plan in the

market at the relevant times, or that the services defendants contracted from Transamerica are the

same as those for which $30 or $35 rates would be appropriate.  *See White*, 2016 WL 4502808, at

*15 (granting motion to dismiss where the plaintiffs "alleged no facts suggesting that the [p]lan

fiduciaries could have obtained less-expensive recordkeeping services" and failed to even identify

the amount of the recordkeeping fees charged).  Without facts that would permit the inference that

defendants *could have* negotiated lower rates for the same basket of services, plaintiff's allegations

do not rise "above the speculative level."  *Twombly*, 550 U.S. at 555.

If plaintiff's minimal allegations were sufficient to state a claim then other plaintiffs could

state a breach of fiduciary duty claim against every plan with more than 100 participants and $5

million dollars in assets that charged more than $35 per participant in direct fees.  But the motion-

to-dismiss inquiry on a fiduciary-breach claim is context-specific, not categorical, and plaintiff has

failed to allege the necessary context for her excessive-fee claim.  *See Hughes*, 142 S. Ct. at 742.  Therefore, while the question of whether a particular fee was prudent can raise "questions of fact that cannot be resolved on a motion to dismiss," *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) (citation omitted), plaintiff's allegations here are not enough to "unlock the doors of discovery," *Iqbal*, 556 U.S. at 678; *cf. Sandoval v. Exela Enter. Sols., Inc.*, No. 17-CV-1573 (DJS), 2020 WL 9259108, at *3 (D. Conn. Mar. 30, 2020)  (allegation that Transamerica received "extra compensation without providing any additional services beyond . . . contractual[] obligat[ions]" could not be decided on motion to dismiss).

Plaintiff relies on inapposite intra-circuit cases to establish the sufficiency of her allegations.  In *Garthwait v. Eversource Energy Co.*, for instance, plaintiffs alleged, among other things, that the recordkeeping fees charged plan to participants—consisting of both revenue-sharing and direct fees—"were two to three times higher than the actual value of [the] services."  No. 3:20-CV-00902 (JCH), 2021 WL 4441939, at *8–9 (D. Conn. Sept. 28, 2021).  The *Garthwait* court noted that courts in this circuit "generally have denied motions to dismiss claims that fees were excessive and that fiduciaries failed to negotiate for or seek lower fees *when paired with allegations similar to those in this case*."  *Ibid*. (emphasis added).  Plaintiff's general allegations here are not similar to the context-specific allegations in *Garthwait*.

Along the same vein, the *In re Omnicom ERISA Litigation* plaintiffs alleged that their plan's recordkeeping provider charged their plan "significantly" more to provide recordkeeping services than this provider "generally charge[d]" other recordkeeping clients.  No. 20-CV-4141 (CM), 2021 WL 3292487, at *15 (S.D.N.Y. Aug. 2, 2021).  Plaintiff does not make a similar allegation about Transamerica.  And the other intra-circuit cases plaintiff cites all involve context-specific evidence going beyond a simple comparison of a plan's recordkeeping fees with an

24

ambiguous average-fee amount contained in a reference book.  *See Vellali v. Yale Univ.*, 308 F.

Supp. 3d 673, 684–85 (D. Conn. 2018) (plan used a revenue-sharing structure instead of a flat-fee

structure, and plaintiffs alleged structural deficiencies in that fee model); *Sacerdote I*, 2017 WL

3701482, at *8–10 (considering an expert determination that the relevant market rate for

recordkeeping fees was $35).[*]

Defendants' motion to dismiss plaintiff's claims based on excessive recordkeeping fees is

granted.

### C.  Plaintiff's Monitoring, Co-Fiduciary Breach, and Knowing-Participation Claims Also Fail.

I also dismiss plaintiff's claims for failure to monitor fiduciaries, co-fiduciary breach, and

in the alternative, liability for knowing participation in breaches of fiduciary duty or knowing

breach of trust.  *See* Am. Compl. ¶¶ 59, 62-73; Defs.' Mem. 24.  Monitoring and co-fiduciary

breach claims "cannot survive absent a viable claim for breach of a duty of prudence."  *Coulter v.

Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014); *see, e.g.*, *In re SunEdison, Inc. ERISA

Lit.*, 331 F. Supp. 3d 101, 114 (S.D.N.Y. 2018).   The same is true for a claim of knowing

participation in a fiduciary breach.  *Ivy Asset*, 131 F. Supp. at 131 (quoting *Diduck v. Kaszycki &

Sons Contractors, Inc.*, 974 F.2d 270, 281–82 (2d Cir. 1992)), *abrogated on other grounds*, *Gerosa

v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003).  Plaintiff styles the knowing-participation claim as

"knowing breach of trust," Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss (Dkt. #39) 25,

but there is no formal distinction between such a claim and a claim for breach of fiduciary duty

---

[*] Likewise, virtually all of the out-of-circuit district court decisions cited by plaintiff involved specific factual allegations beyond those present here.  *See Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 (AB) (JCX), 2017 WL 2930839, at *10 (N.D. Cal. Jan. 30, 2017) (allegations regarding recordkeeping compensation in light of declining plan participation); *Cassell*, 285 F. Supp. 3d at 1064 (allegations "based on the [p]lan's features, the nature of the administrative services provided by the [p]lan's record-keepers, the [p]lan's participant level, and the record-keeping market"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 467 (N.D. Cal. 2017) (specific allegations that fees were "five to ten times higher" than fees for similarly sized plans during the period in question).

except that a breach-of-trust claims can only be brought against non-fiduciaries, *see In re Omnicom ERISA Litigation*, 2021 WL 3292487, at \*17.   Because plaintiff's fiduciary-breach claims are dismissed, so are plaintiff's failure-to-monitor, co-fiduciary-breach, knowing-participation, and knowing-breach-of-trust claims.

## CONCLUSION

Defendants' motion to dismiss is granted and plaintiff's claims are dismissed.   Plaintiff may file a motion seeking leave to file a second amended complaint within thirty days.   Any such motion should include the proposed second amended complaint as an exhibit and explain why leave to amend should be granted.   If plaintiff does not seek leave to amend within thirty days, judgment shall be entered and the case closed.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:  September 30, 2022
Brooklyn, New York