## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

KAILA GONZALEZ, individually and
as a representative of a class of
similarly situated persons, on behalf of
the NORTHWELL HEALTH 403(B)
PLAN,

                Plaintiff,

   v.

NORTHWELL HEALTH, INC.,

                Defendant.

Case No: 1:20-cv-03256-RPK-TAM

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.    The Proposed Settlement Class Should be Certified.............................................. 5

    A.    The Settlement Class Satisfies Rule 23(a) ................................................. 5

        1.    Numerosity................................................................................. 6

        2.    Commonality............................................................................. 6

        3.    Typicality .................................................................................. 8

        4.    Adequacy ................................................................................... 9

    B.    The Proposed Settlement Class Satisfies Rule 23(b)(1) ............................. 11

        1.    The Proposed Settlement Class Satisfies Rule 23(b)(1)(A)..................... 12

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(1)(B)..................... 13

    C.    Miller Shah Should be Appointed Class Counsel.................................... 14

II.    The Settlement Warrants Preliminary Approval.......................................... 14

    A.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval ....................... 16

        1.    Adequacy of Representation ....................................................... 16

        2.    Existence of Arm's-Length Negotiations ................................... 17

        3.    Adequacy of Relief ................................................................... 18

    B.    The Remaining *Grinell* Factors Weigh in Favor of Preliminary Approval .................. 20

        1.    The Reaction of the Class to the Settlement is Better Assessed at the Final Approval Stage................................................................. 21

        2.    Defendant's Ability to Withstand a Greater Judgment Does Not Weigh Against Preliminary Approval................................................... 21

        3.    The Settlement is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks .......................................... 22

    C.    The Notice Plan should be Preliminarily Approved .................................... 23

    D.    The Plan of Allocation Should be Preliminarily Approved........................... 24

CONCLUSION.................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................... 5, 6, 11, 12

*Babcock v. Computer Assocs. Int'l, Inc.*,
    212 F.R.D. 126 (E.D.N.Y. 2003) ...................................................................... 7, 9

*Becher v. Long Island Lighting Co.*,
    164 F.R.D. 144 (E.D.N.Y. 1996) ................................................................... 10, 13

*Caccavale v. Hewlett-Packard Co.*,
    2024 WL 4250337 (E.D.N.Y. Mar. 13, 2024) ................................................... 21

*Caridad v. Metro-N. Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999) .............................................................................. 8

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) .............................................................................. 6

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) ........................................................................ 9, 10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..................................................................... *passim*

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006) ........................................................................... 10

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ............................................................................... 6

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    990 F.3d 173 (2d Cir. 2021) ........................................................................... 10

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ............................................................................. 17

*Cunningham v. Cornell Univ.*,
    2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ........................................... 7, 12, 13, 14

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
    2021 WL 7906584 (E.D.N.Y. May 25, 2021) ............................................... 20, 21

*Douglin v. GreatBanc Tr. Co.*,
 115 F.Supp.3d 404 (S.D.N.Y. 2015) .................................................................. 12, 13

*Gen. Tel. Co. of the Sw. v. Falcon*,
 457 U.S. 147 (1982) .......................................................................................... 8

*Glover v. Connecticut Gen. Life Ins. Co.*,
 2024 WL 4036721 (D. Conn. Sept. 4, 2024) ...................................................... 16

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000) ................................................................................ 16

*Griffin v. Flagstar Bancorp, Inc.*,
 2013 WL 4779017 (E.D. Mich. July 29, 2013) ................................................... 24

*Guevoura Fund Ltd. v. Silverman*,
 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................. 24, 25

*Guma v. City of Long Beach*,
 2025 WL 1866901 (E.D.N.Y. July 7, 2025) ......................................................... 5

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
 2012 WL 10242276 (D. Conn. Sept. 27, 2012) .................................................. 12

*Hoeffner v. D'Amato*,
 2019 WL 1428367 (E.D.N.Y. Mar. 29, 2019) ..................................................... 15

*In re 3d Sys. Sec. Litig.*,
 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ........................................................... 17

*In re AOL Time Warner ERISA Litig.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................................................... 21, 25

*In re Beacon Assocs. Litig.*,
 282 F.R.D. 315 (S.D.N.Y. 2012) .................................................................... 11, 12

*In re Citigroup Pension Plan ERISA Litig.*,
 241 F.R.D. 172 (S.D.N.Y. 2006) .................................................................... 12, 13

*In re Enron Corp. Secs., Deriv., & ERISA Litig.*,
 2006 WL 1662596 (S.D. Tex. 2006) ................................................................... 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
 2007 WL 2230177 (S.D.N.Y. Jul. 27, 2007) ........................................................ 8

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*,
  343 F.Supp.3d 394 (S.D.N.Y. 2018) ........................................................... 24

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................ 22

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................... 12, 23

*In re GSE Bonds Antitrust Litig.*,
  414 F.Supp.3d 686 (S.D.N.Y. 2019) ................................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2008) ................................................................. 22

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................... 24, 25

*In re Oxford Health Plan, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ................................................................... 8

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................... 17, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................... *passim*

*In re Petrobras Securities*,
  862 F.3d 250 (2d Cir. 2017) ......................................................................... 5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 19

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012) .................................................. 19

*In re Worldcom, Inc. ERISA Litig.*,
  2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ............................................. 25

*Karvaly v. eBay Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................. 15

*Kindle v. Dejana*,
  315 F.R.D. 7 (E.D.N.Y. 2016) ...................................................... 6, 7, 12, 13

*Kronenberg v. Allstate Ins. Co.*,
  743 F.Supp.3d 465 (E.D.N.Y. 2024) ................................................................ 5

*Maley v. Del Glob. Techs. Corp.*,
  186 F.Supp.2d 358 (S.D.N.Y. 2002) ............................................................... 18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ........................................................................... 10

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ........................................................................................ 10

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007) ..................................................................... 24

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) .............................................. 8, 14

*Mullane v. Central Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................ 23

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ........................................................................... 22

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ................................................................................... 12, 13

*Parker v. Time Warner Entmt. Co.*,
  239 F.R.D. 318 (E.D.N.Y. 2007) ...................................................................... 6

*Passafiume v. NRA Grp.*,
  274 F.R.D. 424 (E.D.N.Y. 2010) .................................................................... 16

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
  2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ................................................ 25

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................... 5, 16

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................................. 8

*Robinson v. Metro–North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001) ............................................................................. 7

*Sacerdote v. New York Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ..................................................*passim*

*Scott v. Quay*,
   338 F.R.D. 178 (E.D.N.Y. 2021) ............................................................... 6

*Thompson v. Linvatec Corp.*,
   2007 WL 1526418 (N.D.N.Y. May 22, 2007) ........................................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................. 6, 7, 8, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................ 15, 17

**Statutes**

29 U.S.C. § 1001 .................................................................................. 1

**Rules**

Fed. R. Civ. P. 23(a)(1) ........................................................................ 6

Fed. R. Civ. P. 23(a)(2) ...................................................................... 6, 7

Fed. R. Civ. P. 23(a)(3) ........................................................................ 8

Fed. R. Civ. P. 23(a)(4) ................................................................ 9, 10, 11

Fed. R. Civ. P. 23(b)(1) ................................................................ 5, 11, 12

Fed. R. Civ. P. 23(b)(1)(A) ........................................................... 12, 13, 14

Fed. R. Civ. P. 23(b)(1)(B) ................................................................ 13, 14

Fed. R. Civ. P. 23(c)(2) ...................................................................... 23

Fed. R. Civ. P. 23(e)(1)(B) ................................................................. 15

Fed. R. Civ. P. 23(e)(2) ............................................................ 15, 16, 20

Fed. R. Civ. P. 23(e)(2)(A) ............................................................ 16, 17

Fed. R. Civ. P. 23(e)(2)(B) ................................................................ 17

Fed. R. Civ. P. 23(e)(2)(C) ................................................................ 18

Fed. R. Civ. P. 23(e)(3) ........................................................... 18, 20

Fed. R. Civ. P. 23(g) ................................................................ 11, 14

Fed. R. Civ. P. 23(g)(1)(A)...……………………………………………….14

Plaintiff, Kaila Gonzalez ("Plaintiff"), individually and on behalf of the proposed Settlement Class and the Northwell Health 403(b) Plan ("Plan"),[1] respectfully submits this Memorandum of Law in Support of her Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), which requests the Court issue an Order that: (1) preliminarily approves the Settlement dated August 19, 2025, with Defendant, Northwell Health, Inc. ("Defendant") (with Plaintiff, the "Parties"); (2) preliminarily certifies the proposed Settlement Class for settlement purposes only; (3) approves the proposed notice plan ("Notice Plan") as set forth in the Settlement Agreement and proposed Preliminary Approval Order;[2] and (4) sets a Fairness Hearing on a date convenient for the Court at least 140 days after the entry of the Preliminary Approval Order.

## INTRODUCTION

The Parties have agreed to the proposed Settlement to fully resolve this putative class action lawsuit (the "Action"), brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., for total monetary relief of $2,750,000.00. Based on the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiff and Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and, therefore, warrants preliminary approval.

Plaintiff and Class Counsel have vigorously pursued relief on behalf of the Plan, and Defendant's Counsel has vigorously defended against Plaintiff's allegations. The Parties agreed to the Settlement after meaningful motion practice and amended pleadings, written discovery and

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the Settlement Agreement which is attached as Exhibit 1 to the Declaration of Alec J. Berin ("Berin Decl.") filed herewith.

[2] A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

1

voluminous document productions, and arm's-length negotiations by experienced counsel, including a private mediation with a highly respected neutral mediator. Resolving the Action at this juncture allows the Parties to avoid continued costly litigation that would deplete resources and that could result in a recovery less than the Settlement provides, or no recovery at all.

As all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied, Plaintiff respectfully submits that the Motion should be granted, and notice should be provided to the Settlement Class.

## <u>BACKGROUND</u>

Plaintiff alleges that Defendant is a fiduciary of the Plan and breached fiduciary duties it owed to the Plan and its participants and beneficiaries under ERISA by failing to appropriately monitor the Plan's investments and fees and, consequently, retaining unsuitable investments in the Plan and causing the Plan to pay excessive recordkeeping fees. *See* Second Amended Class Action Complaint ("Complaint," ECF No. 72) ¶¶ 43–72. Plaintiff commenced this action on July 21, 2020. (ECF No. 1). Defendant moved to dismiss on December 18, 2020 (ECF No. 18), and Plaintiff opposed dismissal on January 19, 2021. (ECF No. 20). Before the Court ruled on the motion, Plaintiff filed an Amended Class Action Complaint on August 16, 2021. (ECF No. 30). Defendant renewed its motion to dismiss on October 14, 2021 (ECF Nos. 32, 36), and Plaintiff again opposed dismissal on November 15, 2021. (ECF Nos. 33, 39). After oral argument on June 29, 2022, the Court granted Defendant's motion to dismiss on September 30, 2022. (ECF No. 51). Plaintiff moved for leave to file a Second Amended Complaint on October 31, 2022. (ECF No. 52). Defendant opposed Plaintiff's motion for leave on November 22, 2022 (ECF No. 54), and Plaintiff filed a reply on December 9, 2022. (ECF No. 56).

On March 26, 2024, the Court granted in part Plaintiff's motion for leave to amend and

allowed her to proceed with the imprudent-retention claim regarding the Lazard Fund, the recordkeeping and administrative ("RK&A") fee claim, and the failure-to-monitor, co-fiduciary-breach, and knowing-participation claims related to the Lazard Fund and RK&A claims. ("Order," ECF No. 71). In its Order, the Court held that Plaintiff had sufficiently (1) stated an RK&A fee claim by alleging similarly sized plans paid less for the same services; and (2) alleged "consistent and substantial underperformance" of the Lazard Fund by pointing to ten-year rolling underperformance for 18 consecutive quarters and that the Lazard Fund was "among the worst performers in its category for several years." Order, at 14, 19–20, 22. Plaintiff then filed the operative Complaint on April 9, 2024. (ECF No. 72). Defendant filed an Answer and Defenses to Plaintiff's Complaint on May 23, 2024 (ECF No. 74), and the parties moved into discovery, which involved production of documents and information related to, *inter alia*, the Plan's investment and fee monitoring fiduciary process. During fact discovery, the parties agreed to move to stay proceedings pending mediation. (ECF No. 82). The Court entered an order staying all pending deadlines on January 7, 2025, and directed the parties to exchange all relevant documents prior to mediation. On May 14, 2025, the Parties participated in a private mediation session with Robert A. Meyer, Esq. of JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages. This mediation resulted in an agreement in principle to settle the Action, which the parties reported to the Court on May 21, 2025 (ECF No. 83). The Parties then diligently worked to document the terms of their agreement in the Settlement Agreement.

 The Settlement provides that, in exchange for dismissal of the Action and a release of claims, Defendant will pay the aggregate amount of $2,750,000 into a Qualified Settlement Fund

to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation.  *See* Settlement Agreement §§ 1.28, 4.4–4.5, 5.2–5.6; Berin Decl., Ex. B.  The Settlement Agreement and the proposed Preliminary Approval Order set forth the Notice Plan and describe Plaintiff's anticipated requests for payment of attorneys' fees and litigation expenses to Class Counsel and for a case contribution award, subject to the Court's approval.  *See* Settlement Agreement §§ 1.4, 1.10, 5.2.1–5.2.2, 6.1; Berin Decl., Ex. C.  In addition, the Settlement Agreement provides for an Independent Fiduciary to approve the Settlement on behalf of the Plan.  *See* Settlement Agreement § 2.1.

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate, and whether it merits final approval.  Plaintiff proposes the following schedule:

| Event | Reference to [Proposed] Prelim. Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | To the extent the Court deems necessary, within 30 days of filing the Preliminary Approval Motion |
| Distribute Settlement Notice | ¶ 8(a) | Within 30 calendar days of entry of Preliminary Approval |
| Settlement Administrator to establish website and toll-free phone number | ¶ 8(b) | Within 30 calendar days of entry of Preliminary Approval |
| Filing of Motion for Final Approval and fee request | ¶¶ 10, 11 | 45 calendar days before the Fairness Hearing |
| Filing of Independent Fiduciary Report | Settlement Agreement ¶ 2.1.2 | Not later than 45 calendar days before the Fairness hearing |
| Filing of objections | ¶ 12 | At least 30 calendar days before the Fairness Hearing |
| Filing of responses to objections or additional papers in support of Settlement | ¶¶ 12, 13 | Not later than 7 calendar days before the Fairness Hearing |
| Fairness Hearing | ¶ 6 | No sooner than 140 calendar days after filing Preliminary Approval Motion |

<u>**ARGUMENT**</u>

**I.      The Proposed Settlement Class Should be Certified**

"Certification of a class for settlement purposes only is permissible and appropriate."

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citing

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997)).  Courts presented with proposed

settlements must determine whether the proposed settlement class satisfies the four requirements

for class certification enumerated in Federal Rule of Civil Procedure 23(a) and the requirements of

at least one subsection of Federal Rule of Civil Procedure 23(b).  *See Amchem*, 521 U.S. at 613–

14.  Additionally, the Second Circuit has found implicit in Rule 23 a "modest threshold

requirement" of ascertainability, which asks whether the "proposed class is defined using

objective criteria that establish membership within definite boundaries."  *In re Petrobras*

*Securities*, 862 F.3d 250, 269 (2d Cir. 2017).  In conducting such inquiries, courts should

interpret the requirements of Rule 23 liberally, *e.g.*, *Kronenberg v. Allstate Ins. Co.*, 743

F.Supp.3d 465, 503 (E.D.N.Y. 2024), with doubts "resolved in favor of certification."  *Guma v.*

*City of Long Beach*, 2025 WL 1866901, at *3 (E.D.N.Y. July 7, 2025).

Here, the Settlement Class is defined using the objective criterion of status as a

participant or beneficiary of the Plan during the proposed Class Period.  Indeed, the proposed

Settlement Class can be readily ascertained from the records kept by the Plan's recordkeeper.

Furthermore, because the proposed Settlement Class satisfies all four factors of Rule 23(a) as

well as Rule 23(b)(1), certification is appropriate.

**A.      The Settlement Class Satisfies Rule 23(a)**

Certification of a settlement class is appropriate when the proposed class and proposed

class representative meet the four requirements of Rule 23(a): (i) numerosity; (ii) commonality;

(iii) typicality; and (iv) adequacy of representation. *See Amchem*, 521 U.S. at 613. Plaintiff and the proposed Settlement Class satisfy each of the Rule 23(a) prerequisites.

### 1. Numerosity

The numerosity element of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability does not equate to impossibility, but merely means that the difficulty of joining all class members makes the use of the class action device appropriate. *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). When a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Scott v. Quay*, 338 F.R.D. 178, 187 (E.D.N.Y. 2021). Here, the Plan had more than 50,000 participants and beneficiaries at all times during the Class Period. *See* Berin Decl. ¶ 4. These facts more than satisfy the numerosity requirement.

### 2. Commonality

The commonality factor requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Commonality "is considered a minimal burden for a party to shoulder," *Parker v. Time Warner Entmt. Co.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007) (internal quotations omitted), and "that burden is met 'if plaintiff['s] grievances share a common question of law or of fact.'" *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y.

2016) (quoting *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

Plaintiff alleges that Defendant breached its fiduciary duties owed to the Plan under ERISA § 404 and brings this action in a representative capacity under ERISA §§ 409 and 502(a)(2). Plaintiff asserts that her Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan, and because "fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019). Indeed, courts in this Circuit have regularly found ERISA breach of fiduciary duty claims satisfy the commonality requirement. *See, e.g.*, *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003) (finding "whether the defendants failed to diversify the assets of the Plan" to be a common question); *Sacerdote v. New York Univ.*, 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018) (finding "whether defendant breached its fiduciary duties by taking actions or failing to take actions that resulted in improperly high fees" to be a common question).

While a single common question is sufficient to meet this standard, *Dukes*, 564 U.S. at 359, Plaintiff contends that the common questions here are numerous and include: (i) whether Defendant is a fiduciary of the Plan, (ii) whether Defendant caused the Plan to retain unsuitable investments and pay excessive fees; (iii) whether Defendant breached its fiduciary duties by failing to appropriately monitor the Plan's investment and fees; (iv) whether the Plan suffered resulting losses; (v) the proper manner in which to calculate the Plan's losses; and (vi) what equitable relief, if any, is appropriate in light of these alleged breaches. *See Kindle*, 315 F.R.D. at 11 (finding "whether defendants breached their duty of prudence and/or loyalty under ERISA, and the appropriate measure of injunctive relief, restitution, disgorgement, and/or damages for those injuries" to be common questions satisfying Rule 23(a)(2)). The evidence required to

answer these questions exists at the Plan level and is common to all Plan participants. Indeed, Plaintiff asserts that the answers do not depend on the particular circumstances of each Plan participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants', not Plaintiff['s], decisions." *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017). Simply put, because the central allegations in the Class Action concern Defendant's administration of the Plan and that Defendant's duties ran to the Plan, Plaintiff alleges that common questions pervade the Action. *See Sacerdote*, 2018 WL 840364, at *3.

### 3.    Typicality

The typicality prerequisite of class certification ensures that the representative plaintiff's claims are typical of the class. *See* Fed. R. Civ. P. 23(a)(3).[3] Importantly, typicality "does not require that the situations of the named representatives and the class members be identical." *In re Oxford Health Plan, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000); *see also Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *13 (S.D.N.Y. Jul. 27, 2007) ("typicality requirement is not demanding."). Typicality is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). When the same conduct

---

[3]The Supreme Court has explained that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.; *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that these requirements often also merge with adequacy of representation). While this Memorandum discusses the requirements separately, each element is related and arguments supporting one requirement frequently support the others. Accordingly, Plaintiff contends that her claims are typical for many of the same reasons that commonality is satisfied.

was directed at "both the named plaintiffs and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.*

Here, Plaintiff contends that her claims are typical of the class as the allegations of breach of fiduciary duty arise out of Defendant's management and administration of the Plan, which "affected both the plaintiff and the proposed class." *Babcock*, 212 F.R.D. at 131. Given the inherently representative nature of ERISA § 502(a)(2) actions, each Settlement Class member's claims are "necessarily typical of those of the rest of the class," since every participant is asserting the Plan's claim. *In re Enron Corp. Secs., Deriv., & ERISA Litig.*, 2006 WL 1662596, at *11 (S.D. Tex. 2006); *see Sacerdote*, 2018 WL 840364, at *3 (finding that because each "named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance").

Like the other proposed Settlement Class members, Plaintiff participated in the Plan and allegedly suffered injuries because of Defendant's alleged mismanagement of the Plan. Defendant treated Plaintiff consistently with other Settlement Class members and managed the Plan as a single entity. Accordingly, Plaintiff asserts that her claims and the claims of all Settlement Class members arise out of the same alleged conduct, policies, and practices of Defendant, and all members of the Settlement Class have been similarly affected by Defendant's allegedly wrongful conduct. Plaintiff does not assert any legal theories different from or conflicting with those of the proposed Settlement Class.

### 4. Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). The inquiry is a two-step process: First "district

courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). Second, courts must ensure that "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). The Second Circuit also recognizes a separate, though conceptually related requirement that "parties suing on behalf of a plan [under ERISA § 502(a)(2)] . . . demonstrate their suitability to serve as representatives of the interests of other plan stakeholders." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021). In evaluating this requirement, the Second Circuit has found that participants pursuing class certification "will likely be proceeding in a 'representative capacity' properly for purposes of section 502(a)(2)." *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006).

As to the first inquiry, Plaintiff has been actively involved in every stage of the litigation. *See* Berin Decl. ¶ 3. Moreover, Plaintiff's interests and incentives are aligned with those of the Settlement Class by virtue of the representative nature of Plaintiff's claims on behalf of the Plan. *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 152 (E.D.N.Y. 1996), *amended*, 172 F.R.D. 28 (E.D.N.Y. 1997) (finding Rule 23(a)(4) satisfied when "[a]ll participants seek the same 'make-whole' relief claimed by the named plaintiffs for misrepresentation and breach of fiduciary duties."). Because Plaintiff seeks to enforce the duties Defendant allegedly owed to the Plan and to recover damages and equitable relief on behalf of the Plan, there are no conflicts between Plaintiff's individual interests and the interests of the Settlement Class. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Plaintiff's adequacy is further demonstrated by the *pro rata* distribution of Settlement proceeds provided for in the proposed Plan of Allocation. *See* Settlement Agreement, Ex. B. Indeed, the Plan of Allocation does not

provide for any greater distribution to Plaintiff than to any other similarly situated Settlement Class member. *See id.*

As to the second inquiry, Class Counsel's experience and demonstrated competency render them more than adequate. Courts evaluating the adequacy of class counsel under Rule 23(a)(4) consider the Rule 23(g) factors, including: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g). Plaintiff engaged Miller Shah LLP ("Miller Shah") to represent her and vigorously pursue this Action on behalf of the proposed Settlement Class. Miller Shah is exceedingly qualified, capable, and has significant experience litigating complex class actions, including ERISA actions, in this District and across the country. Berin Decl. ¶ 5. Miller Shah has pursued and protected the interests of the Settlement Class, as evidenced by its advancement of this case, including the filing of multiple detailed and comprehensive pleadings, briefing and litigating of a motion to dismiss and motion to amend, substantial discovery efforts, and negotiation of the Settlement. Miller Shah has and will continue to commit the necessary resources to pursue the best outcome for the proposed Settlement Class. *See id.* ¶¶ 6-9. Thus, Miller Shah satisfies the requirement of Rule 23(g) and should be appointed as Class Counsel.

### B. The Proposed Settlement Class Satisfies Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiff need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613–14. Courts routinely grant certification under Rule 23(b)(1) in breach of fiduciary duty cases because "the distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits makes litigation of this kind 'a

paradigmatic example of a [Rule 23](b)(1) class.'" *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012) (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)); *see also Douglin v. GreatBanc Tr. Co.*, 115 F.Supp.3d 404, 412 (S.D.N.Y. 2015) ("actions for breach of fiduciary duties are 'classic examples' of Rule 23(b)(1) cases" (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999))). Courts in this Circuit regularly determine that class claims for breach of fiduciary duty brought under ERISA are well suited to certification under Rule 23(b)(1). *Douglin*, 115 F.Supp.3d at 412; *see, e.g.*, *Kindle*, 315 F.R.D. at 13; *Thompson v. Linvatec Corp.*, 2007 WL 1526418, at *8 (N.D.N.Y. May 22, 2007), *adhered to on reconsideration,* 2008 WL 541164 (N.D.N.Y. Feb. 25, 2008); *Cunningham*, 2019 WL 275827, at *7; *Sacerdote*, 2018 WL 840364, at *6.

### 1. The Proposed Settlement Class Satisfies Rule 23(b)(1)(A)

Rule 23(b)(1)(A) applies to "cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem*, 521 U.S. at 614 (internal quotations and citation omitted). Courts in this Circuit has found that the "language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'" *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006); *see Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, 2012 WL 10242276, at *10 (D. Conn. Sept. 27, 2012) ("Rule 23(b)(1)(A) certification is particularly well-suited to certain ERISA class actions.").

As the proposed Settlement Class meets each of the requirements of Rule 23(a) for settlement purposes, Settlement Class members have all allegedly suffered the same injuries and allege they are entitled to the same forms of relief, and separate actions risk inconsistent

adjudications and incompatible standards, class certification is appropriate under Rule 23(b)(1)(A). *Citigroup*, 241 F.R.D. at 180. Plaintiff alleged that Defendant's fiduciary breaches in the form of the alleged mismanagement of the Plan were breaches "as to <u>all</u>" participants and beneficiaries in the Settlement Class. *Sacerdote*, 2018 WL 840364, at *6 (emphasis in original). Furthermore, prosecution of the Action on behalf of the Plan by more than 50,000 individual Class members risks establishing divergent adjudications of Plaintiff's claims and incompatible standards of conduct for Defendant. *See Becher*, 164 F.R.D. at 153 (determining that failure to certify a class in breach of fiduciary duty actions risks inconsistent verdicts). It is difficult to envision circumstances more apt for class certification for settlement purposes.

### 2. The Proposed Settlement Class Satisfies Rule 23(b)(1)(B)

Rule 23(b)(1)(B) applies to class action suits in which "individual adjudications as a practical matter[] would be dispositive of the interests of the other members not parties to individual actions." *Cunningham*, 2019 WL 275827, at *7 (quoting *Dukes*, 564 U.S. at 361 n.11). "[A]n action which charges a breach of trust by . . . [a] fiduciary similarly affecting the members of a large class of . . . beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is a typical Rule 23(b)(1)(B) action. Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B). Thus, "the structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Douglin*, 115 F.Supp.3d at 412 (citing *Ortiz*, 527 U.S. at 834). Application of Rule 23(b)(1)(B) is also appropriate in the ERISA context, because allowing individual actions would risk adjudicating the interests of non-parties. *Kindle*, 315 F.R.D. at 12.

Plaintiff contends that Defendant's alleged conduct here was directed at the Plan as a whole, rather than individual participants. Accordingly, "any judgment on Defendants' liability would necessarily affect the determination of any claim for [] relief for this same conduct brought by other Plan participants in any concurrent or future actions." *Moreno*, 2017 WL 3868803, at *8.

In summary, certification of the proposed Settlement Class is warranted under Rule 23(b)(1)(A) or 23(b)(1)(B). "Because [Plaintiff's] allegations are brought with respect to breaches of fiduciary duties to the Plan[] as a whole, [Defendant's] duties rise and fall with all plaintiffs." *Cunningham*, 2019 WL 275827, at *8. As the management of the Plan affected all participants uniformly, the proposed Class should be certified for settlement purposes under Rules 23(a) and 23(b)(1).

### C.  Miller Shah Should be Appointed Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

(i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Proposed Class Counsel, Miller Shah, is exceedingly qualified under these factors. *See* Berin Decl. ¶¶ 5–9. First, Class Counsel has leveraged its experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Settlement Class members, including by comprehensively investigating the claims forming the basis of the Action, filing multiple detailed pleadings, briefing the motion to dismiss and motion to amend, reviewing discovery, and negotiating the Settlement. *Id.* ¶ 6. Second and third, Class Counsel has extensive experience litigating and overseeing the administration of settlements in ERISA fiduciary breach actions, and has ample knowledge of the applicable law. *See id.* ¶ 5;

*Hoeffner v. D'Amato*, 2019 WL 1428367, at \*8 (E.D.N.Y. Mar. 29, 2019) (appointing class counsel experienced litigating under ERISA).  Finally, Class Counsel will continue to leverage its wealth of relevant experience and resources on behalf of the Settlement Class through final resolution.  Accordingly, the Court should appoint Miller Shah as Class Counsel.

## II.      The Settlement Warrants Preliminary Approval

Courts in this District recognize "the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).  The Settlement is emblematic of the compromise favored by courts in this District and Circuit.

Review of a proposed class action settlement is a two-step process.  First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice to the class.  *See* Fed. R. Civ. P. 23(e)(1).  Second, after notice is sent to the class and a hearing is conducted, the Court determines whether to approve the settlement on a finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval."  *Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007).  Plaintiff now simply requests that the Court take the first step and preliminarily approve the Settlement so that notice can be distributed to the Settlement Class. *See, e.g., Payment Card*, 330 F.R.D. at 27.

A court should grant preliminary approval to authorize notice to the class upon finding that it "will likely be able" to finally approve the settlement.  *See* Fed. R. Civ. P. 23(e)(1)(B).  "To be likely to approve a proposed settlement under Rule 23(e)(2), the Court must find that it is

fair, reasonable, and adequate." *In re GSE Bonds Antitrust Litig.*, 414 F.Supp.3d 686, 692

(S.D.N.Y. 2019).  In considering preliminary approval, courts look to both the "conduct of the

litigation and of the negotiations leading up to the proposed settlement" and the "relief the

settlement is expected to provide to class members." *Payment Card*, 330 F.R.D. at 29 (citing

Fed. R. Civ. P. 23(e)(2)).  This inquiry includes the four explicit factors enumerated in Rule

23(a): (i) adequacy of representation; (ii) existence of arm's-length negotiations; (iii) adequacy

of relief; and (iv) equitableness of treatment of class members; as well as the *Grinnell* factors.[4]

*Id.*  "Preliminary approval is appropriate where 'it is the result of serious, informed, non-

collusive negotiations, where there are no grounds to doubt its fairness and no other obvious

deficiencies (such as unduly preferential treatment of class representatives or of segments of the

class, or excessive compensation for attorneys), and where the settlement appears to fall within

the range of possible approval.'" *Passafiume v. NRA Grp.,* 274 F.R.D. 424, 430–31 (E.D.N.Y.

2010) (quoting *Reade-Alvarez*, 237 F.R.D. at 33).

A.      **The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval**

1.      **Adequacy of Representation**

Rule 23(e)(2)(A) requires a Court to find that "the class representatives and class counsel

have adequately represented the class." *Glover v. Connecticut Gen. Life Ins. Co.*, 2024 WL

4036721, at *9 (D. Conn. Sept. 4, 2024).  Here, Plaintiff and Class Counsel satisfy the

---

[4]The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the
reaction of the class to the settlement; (3) the stage of the proceedings and the amount of
discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages,
(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to
withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of
the best possible recovery; and (9) the range of reasonableness of the settlement fund to a
possible recovery in light of all the attendant risks of litigation.  *See City of Detroit v. Grinnell
Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) abrogated by *Goldberger v. Integrated Res., Inc.*, 209
F.3d 43 (2d Cir. 2000).

requirements of Rule 23(e)(2)(A).  First, Plaintiff has assisted Class Counsel throughout the duration of this Action, including by reviewing the allegations of the Complaint, providing documents to Defendant, and communicating with Class Counsel about the status of the Action.  Plaintiff is a member of the proposed Settlement Class and is not aware of any conflicts between herself and any other class members.  Second, Class Counsel is "qualified, experienced, and able" to conduct the litigation, as demonstrated by its successful prosecution of numerous ERISA actions and the favorable result here.  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

## 2. Existence of Arm's-Length Negotiations

The second Rule 23(e) factor examines "whether the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116.  Similarly, negotiations with the assistance of an experienced mediator are indicative of such procedural fairness.  *See Payment Card*, 330 F.R.D. at 35.  The Agreement was negotiated at arm's-length by adverse parties, each represented by counsel experienced in complex ERISA litigation.  The substantial motion practice and voluminous document productions demonstrate that there has been no collusion or complicity of any kind in connection with the Settlement or related negotiations.  *See* Berin Decl. ¶ 7; *In re 3d Sys. Sec. Litig.*, 2024 WL 50909, at *9 (E.D.N.Y. Jan. 4, 2024) (finding procedural fairness in a proposed settlement where "the parties gained sufficient information about the claims through mediation and settlement discussions to allow them to make a reasoned evaluation of the chances of success").

Moreover, when evaluating good faith negotiations, the Court should give "great weight

. . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Class Counsel have significant experience in similar litigation and are well-informed about this Action. *See* Berin Decl. ¶¶ 5–6. Accordingly, their judgment that the Settlement is in the best interest of the Settlement Class should be given considerable weight.

### 3.    Adequacy of Relief

Plaintiff's pursuit of the Plan's alleged losses resulting from the course of conduct asserted in this Action began more than five years ago in July 2020. Since then, the Parties' thorough investigation, coupled with the discovery and pre-trial filings in this action, has afforded them extensive knowledge and information about the claims and defenses relevant to this action, sufficient to evaluate the "the merits of Plaintiff['s] claims, the strengths of the defenses asserted by Defendant[], and the value of Plaintiff['s] causes of action for purposes of settlement." *Maley v. Del Glob. Techs. Corp.*, 186 F.Supp.2d 358, 364 (S.D.N.Y. 2002).

Courts assessing the adequacy of relief accorded by a proposed settlement under Rule 23(e)(2)(C) must consider the following: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). This adequacy inquiry overlaps, in significant measure, with several of the *Grinnell* factors, "which help guide the Court's application of Rule 23(e)(2)(C)(i)." *See GSE Bonds*, 414 F.Supp.3d at 693. The Settlement satisfies all the Rule 23(e)(2)(C) subfactors.

*The costs, risks, and delay of trial and appeal.*  In the absence of a settlement, Plaintiff would have faced significant risks.  ERISA breach of fiduciary duty actions are difficult to prosecute and "involve a complex and rapidly evolving area of law."  *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012).  New case theories are frequently filed and evolving precedents are frequently issued, placing complex demands on counsel and courts and requiring significant resources.  Indeed, Plaintiff would have faced many procedural hurdles in establishing liability and damages, as well as in maintaining a class action through trial, which overwhelmingly supports preliminary approval of the settlement.  Absent the Settlement, the parties would have continued vigorous litigation and likely would have filed dispositive and pretrial motions.  If the Parties proceeded to a complex trial, even if Plaintiff prevailed, it could be years before any recovery would be received considering the likelihood of appeals.  Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable to take the bird in the hand instead of the prospective flock in the bush."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (internal quotations and citation omitted).  Moreover, since continued litigation increases expenses, a resolution in the future could result in a smaller recovery.

*The effectiveness of the proposed method of distributing relief.*  The Settlement Agreement and Plan of Allocation provide for a notice and claims process designed to ensure relief is effectively distributed to Settlement Class members.  Because the Settlement Class is comprised of participants and beneficiaries of a nonprofit healthcare network benefits plan, much of the data necessary to administer the Settlement is in the possession of the Plan's recordkeepers.  Administration of the Settlement will effectively "deter or defeat unjustified

claims," without being "unduly demanding." *Payment Card*, 330 F.R.D. at 40 (citing Fed. R. Civ. P. 23, Adv. Comm. Note, 2018 amend., sub. (e)(2)(c)). Additionally, while the plan of allocation must be "fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*. The Plan of Allocation would provide *pro rata* recovery relative to the average size and strength of the categories of claims. The Plan of Allocation represents a reasonable method of ensuring "the equitable and timely distribution of a settlement fund without burdening the process." *GSE Bonds*, 414 F.Supp.3d at 695.

*The terms of the proposed award of attorneys' fees.* Class Counsel anticipates making a request for Attorneys' Fees and Costs in an amount not to exceed one-third of the Gross Settlement Amount (*i.e.*, $916,666.67). Plaintiff, as Class Representative, additionally anticipates making a request for a Case Contribution Award in an amount not to exceed $10,000. These anticipated applications are subject to Court approval and are consistent with amounts regularly awarded in complex litigation of this type. The Settlement is not conditioned upon the award of any such fees, and Class Counsel will not receive any fees unless and until the Settlement and its fees are approved by the Court. In addition, the independent fiduciary retained on behalf of the Plan will consider these additional applications in connection with its review of the Settlement and approval of releases by the Plan.

Class Counsel are not aware of any agreements required to be disclosed under Rule 23(e)(3).

### B. The Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval

Following the 2018 amendments to Rule 23(e), courts in this Circuit "look to the factors set forth in the Rule and then turn to the *Grinnell* factors to fill in any gaps and complete the

analysis." *Cymbalista v. JPMorgan Chase Bank, N.A.*, 2021 WL 7906584, at *5 (E.D.N.Y. May 25, 2021) (Kovner, J.). "Courts have found that Rule 23(e)(2) does not otherwise address the following *Grinnell* factors: the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Caccavale v. Hewlett-Packard Co.*, 2024 WL 4250337, at *9 (E.D.N.Y. Mar. 13, 2024). "Accordingly, courts continue to analyze these factors in combination with the Rule 23(e)(2) factors." *Id.*

### 1. The Reaction of the Class to the Settlement is Better Assessed at the Final Approval Stage

"The Court need not consider [this factor], which requires the Court to evaluate the reaction of the settlement class, because consideration of this factor is generally premature at the preliminary approval stage." *GSE Bonds*, 414 F.Supp.3d at 699. Members of the Settlement Class will have the opportunity to share their reactions to the Settlement, including by filing objections, pursuant to the Notice Plan and final approval procedures. Further, an independent fiduciary will review the Settlement and related applications, as well as any objections or comments regarding the Settlement that may be filed prior to the issuance of its report, before determining whether to approve of the release of claims on behalf of the Plan. Thus, this factor is better assessed at the final approval stage. *See Payment Card*, 330 F.R.D. at 29.

### 2. Defendant's Ability to Withstand a Greater Judgment Does Not Weigh Against Preliminary Approval

While there is no evidence that Defendants could not withstand a greater judgment, courts have regularly held that, "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]." *GSE Bonds*, 414 F.Supp.3d at 696; *see also In re AOL Time Warner ERISA Litig.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding

"the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair," rather this factor "must be weighed" in conjunction with the other *Grinnell* factors). The Court need not find that Defendant could not withstand a greater judgment to conclude the Settlement warrants preliminary approval.

### 3. The Settlement is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks

In considering this factor, "the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2008). Indeed, "the issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case." *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010). Any "range of reasonableness" with respect to a settlement must "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). With this in mind, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2.

At the time the Parties agreed to the Settlement, they were engaged in vigorous litigation and further litigation promised to be lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiff's claims and Defendant's defenses, as well as the Plan's alleged losses. The Parties likely would have filed dispositive motions and pretrial

motions, including motions concerning the anticipated expert testimony. Thus, Plaintiff faced meaningful challenges to her ability to obtain a recovery on behalf of the Plan, which strongly supports preliminary approval of the Settlement. *See Payment Card*, 330 F.R.D. at 49 (finding that the "significant risk of proceeding with the action in light of the attendant risks and complexities of proving liability and damages, and maintaining the class action" counseled in favor of preliminary approval); *Glob. Crossing*, 225 F.R.D. at 461 ("Due to the complexities inherent in this case, the certainty of this settlement amount has to be judged in this context of the legal and practical obstacles to obtaining a large recovery."). Nonetheless, Class Counsel has determined that the recovery provided under the Settlement represents a substantial percentage of the Plan's recoverable losses and is reasonable under all the circumstances. *See* Berin Decl. ¶ 8. Moreover, the report of the independent fiduciary will provide an additional touchstone for the Court's review of this factor at the final approval stage.

### C. The Notice Plan should be Preliminarily Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(c)(2). "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action." *Glob. Crossing*, 225 F.R.D. at 448. To satisfy due process considerations, notice to Settlement Class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan is designed to reach the largest number of Settlement Class members possible. First, the Notice will be sent by email and/or first-class mail to the last known address

of each Settlement Class member prior to the Fairness Hearing. Because all Settlement Class members had Plan accounts, the Plan recordkeeper has addresses for them, at least as of the Settlement Class Period, and has their Social Security numbers in case it needs to update addresses for Notices returned as undeliverable. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 477-78 (E.D. Pa. 2007). Additionally, the Notice, Settlement Agreement and exhibits, and other litigation documents (including a list of frequently asked questions) will be posted on a website established by the Settlement Administrator. The Notice will also provide contact information for Class Counsel, and the Settlement Administrator will establish and monitor a toll-free telephone number for fielding Settlement Class member inquiries.

Finally, the Notice Plan satisfies all due process considerations and meets the requirements of Rule 23. It clearly and plainly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the released claims; (iii) the maximum attorneys' fees, expenses, and case contribution awards that may be sought; (iv) the procedure and timing for objecting to the settlement; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing. District courts across the country have approved similar notice plans as fair. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 4779017, at *3 (E.D. Mich. July 29, 2013) (adopting substantially similar notice plan).

### D. The Plan of Allocation Should be Preliminarily Approved

To warrant approval, a plan of allocation must be fair and adequate. *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 343 F.Supp.3d 394, 414 (S.D.N.Y. 2018). "The formula established for allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*; *see also Guevoura Fund Ltd. v.*

*Silverman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019) ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." (quotation marks omitted)).  "[W]hether the allocation plan is equitable is squarely within the discretion of the district court." *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (internal citations and alterations omitted)).

The Plan of Allocation was prepared by experienced counsel and provides for *pro rata* distribution of the Settlement Fund among Settlement Class members who invested in the Lazard Emerging Markets Fund based on their invested balances during the Class Period, and Settlement Class members who paid a fee for recordkeeping based on the number of years they paid such a fee.  Courts in this District regularly approve plans of allocation that "provide[] recovery to [c]lass members, net of administrative expenses and attorneys' fees and expenses, on a pro rata basis." *Marsh*, 265 F.R.D. 128 at 145; *see also AOL Time Warner*, 2006 WL 903236, at *17 (approving *pro rata* plan of allocation).  Distributions to Settlement Class members who are active participants of the Plan will be made by allocating recovery amounts into their active Plan accounts, while distributions to former Plan participants, beneficiaries, and alternate payees will be made by check or tax-qualified rollover to an individual retirement account or other qualified employer plan.  The Plan of Allocation is substantially similar to those approved in similar ERISA actions. *See, e.g.*, *Marsh*, 265 F.R.D. at 145–46; *AOL Time Warner*, 2006 WL 903236, at *10; *In re Worldcom, Inc. ERISA Litig.*, 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the accompanying Preliminary Approval Order.

Dated: August 19, 2025

Respectfully submitted,

**MILLER SHAH LLP**

*/s/ Alec J. Berin*
James C. Shah
Alec J. Berin
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
      ajberin@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
      lrubinow@millershah.com

Anna K. D'Agostino
MILLER SHAH LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: akdagostino@millershah.com

*Counsel for Plaintiff, the Plan,*
*and the Proposed Settlement Class*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with the word limit provided in Local Civil Rule 7.1(c) and the page limit in Rule IV(C)(1) of the Court's Individual Practice Rules because it contains 7,935 words and does not exceed 25 pages.

*/s/ Alec J. Berin*
Alec J. Berin

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's website.

*/s/ Alec J. Berin*
Alec J. Berin