UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
KAILA GONZALEZ, individually and as a representative of a class of similarly situated persons, on behalf of the NORTHWELL HEALTH 403(B) PLAN,

Plaintiff,

-against-

NORTHWELL HEALTH, INC.,

Defendant.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
20-CV-3256 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

This is a putative class action originally brought against Defendants Northwell Health, Inc. ("Northwell" or "Defendant"), the Northwell Health 403(b) Plan Committee, and Does No. 1–10 (collectively, "Original Defendants").[1] Compl., ECF 1; *see also* Second Am. Compl. ("SAC"), ECF 72. Plaintiff Kaila Gonzalez ("Plaintiff") initiated this action in her capacity as a participant in the Northwell Health 403(b) Plan (the "Plan") under 29 U.S.C. § 1132 for breaches of Original Defendants' fiduciary duties under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Compl., ECF 1, ¶ 1; *see also* SAC, ECF 72, ¶ 1.

Currently pending before the Court is Plaintiff's unopposed motion for final settlement approval and for attorneys' fees, expenses, and a case contribution award.

---

[1] As reflected in the case caption, Defendant Northwell is the only remaining defendant in the action. On October 16, 2024, the parties filed a stipulation agreeing to dismiss Defendant Northwell Health 403(b) Plan Committee and the individual members of the Committee (referred to as Does No. 1–10 in the pleadings), which was so ordered on October 21, 2024. Stipulation, ECF 81; Oct. 21, 2024 ECF Order Dismissing Parties.

Mot. for Final Approval of Class Action Settlement and Awards of Atty's Fees, Expenses, and Case Contribution Award ("Mot."), ECF 95. For the following reasons, Plaintiff's motion is granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background[2]

The Plan is a single-employer 403(b) defined contribution retirement savings plan utilized by employees of Northwell and their beneficiaries. *See* SAC, ECF 72, ¶¶ 1, 2, 17. As of December 31, 2018, the Plan had 56,289 participants with account balances and assets totaling over $5.6 billion.[3] *Id.* ¶ 4. Under the Plan, "[t]he available investment options for participants of the Plan include various mutual funds and a fixed interest separate account." *Id.* ¶ 17. Additionally, "substantially all administrative expenses [related to the Plan] are paid by participants as a reduction of investment income." *Id.* Original Defendants "maintain the Plan, and are responsible for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other services" for the Plan. *Id.* ¶ 5.

Plaintiff is a former employee of Northwell and a participant in the Plan. *Id.* ¶ 9. Plaintiff alleges that beginning six years before the initial complaint was filed and continuing until March 9, 2026, the date of the entry of the Preliminary Approval Order (the "Class Period"), Original Defendants breached their fiduciary duties to the Plan by

---

[2] The Court recites the facts as alleged in the second amended class action complaint. *See, e.g.*, *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021). Defendant Northwell denies these allegations and disputes liability. *See* Settlement Agreement, ECF 88-1, ¶¶ 10.1–10.2.

[3] More recently, as of January 1, 2023, there were over 65,374 participants in the Plan. Berin Decl., ECF 88, ¶ 4.

(1) "allow[ing] unreasonable recordkeeping and administrative expenses to be charged to the Plan" and (2) selecting, retaining, and ratifying "unsuitable," imprudent investments, rather than "offering prudent alternative investments that were readily available" during the Class Period. *Id.* ¶¶ 1, 6; Proposed Final Approval Order and Judgment ("Proposed Final Order"), ECF 95-1, ¶ 2. More specifically, as to the first claimed breach of Original Defendants' fiduciary duties, the second amended complaint asserts that during the Class Period, the Plan's recordkeeping and administrative fees "far exceeded the reasonable market rate," ranging from $37 to $60 per participant. SAC, ECF 72, ¶¶ 45, 61. In Plaintiff's view, failure to take action in regard to these fees constituted a breach of fiduciary duty. *Id.* ¶ 61. As to the second asserted breach, based on a claim of imprudent retention, Plaintiff alleges that because Original Defendants had discretion to select the investments made available to the Plan participants and Original Defendants failed to act in the face of persistent underperformance of one of the funds, Original Defendants' failure to act is the direct cause of losses suffered by the Plan and its participants. *Id.* ¶¶ 6, 72. More specifically, Plaintiff contends that the Lazard Emerging Markets Fund Institutional Class (the "Lazard Fund"), one of the funds available under the Plan, "has substantially and repeatedly underperformed" and should have been replaced by Original Defendants with a better performing alternative. *Id.* ¶¶ 69, 72. Plaintiff asserts that Original Defendants' failure to act was a breach of fiduciary duty. *Id.* ¶ 72. During the Class Period, Plaintiff "maintained an investment through the Plan in the [Lazard Fund] and was subject to the excessive recordkeeping and administrative costs alleged" in the second amended complaint. *Id.* ¶ 9.

The proposed settlement agreement currently pending before this Court seeks to fully resolve these claims for $2,750,000 in monetary relief. Mem. in Supp. of Final Approval ("Mem."), ECF 96, at 3; *see generally* Settlement Agreement, ECF 88-1. This

sum will be paid "into a Qualified Settlement Fund to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation." Mem., ECF 96, at 3.

**II. Procedural History**

The Court assumes familiarity with this action's procedural history, which was recounted in detail in the Court's December 22, 2025 Report and Recommendation on Plaintiff's unopposed motion for preliminary settlement approval. *See* R. & R., ECF 93.

Plaintiff initiated this putative class action on July 21, 2020, and on April 9, 2024, Plaintiff filed her second amended complaint. *See* Compl., ECF 1; SAC, ECF 72. Original Defendants filed an answer on May 23, 2024, and the parties subsequently proceeded to discovery. Answer, ECF 74; *see* July 22, 2024 ECF Min. Entry & Order (setting discovery schedule). On May 21, 2025, the parties filed a letter representing that they had attended a private mediation session, as a result of which they had reached a settlement in principle. Letter, ECF 83. Plaintiff thereafter filed her unopposed motion for preliminary settlement approval on August 19, 2025. Mot. for Settlement, ECF 86.

A preliminary fairness hearing was held on November 4, 2025, at which the Court heard argument on the motion for preliminary approval and directed the parties to make certain revisions to the notice procedures. *See* Nov. 4, 2025 ECF Min. Entry & Order; Nov. 4, 2025 Prelim. Fairness Hr'g Tr. ("Prelim. Fairness Hr'g"), ECF 91. Following the filing of the submissions ordered at the preliminary fairness hearing, on December 22, 2025, the Court issued a Report and Recommendation on the motion for preliminary settlement approval and class certification. *See* Letter, ECF 92; R. & R., ECF 93. There, the Court recommended (1) granting Plaintiff's motion for preliminary settlement approval; (2) entering an order preliminarily approving the class action settlement consistent with the parties' proposed order, *see* Proposed Preliminary

Approval Order, Ex. C to Settlement Agreement, ECF 88-1, at ECF pp. 47–59;
(3) directing the parties to issue notice as revised, *see* Revised Notice, ECF 92-1;
(4) appointing for the purposes of settlement Plaintiff Kaila Gonzalez as class representative for the Settlement Class and Miller Shah LLP as class counsel; and
(5) scheduling a fairness hearing (or referring the parties to this Court to do so) to consider final approval of the settlement, to be held no sooner than 140 calendar days after the filing of the Preliminary Approval Order. R. & R., ECF 93, at 32–33.

On March 9, 2026, the Honorable Rachel P. Kovner adopted the December 22, 2025 Report and Recommendation in its entirety, thereby granting Plaintiff's motion for preliminary settlement approval, and so-ordered the proposed preliminary approval order. Mar. 9, 2026 ECF Order Adopting R. & R.; *see* Proposed Preliminary Approval Order, Ex. C to Settlement Agreement, ECF 88-1, at ECF pp. 47–59. Judge Kovner also referred the parties to the undersigned Magistrate Judge to schedule a final approval hearing. Mar. 9, 2026 ECF Order Adopting R. & R. On May 26, 2026, Plaintiff filed an unopposed motion for final settlement approval, awards of attorney's fees and expenses, and case contribution award and a proposed final approval order and judgment. Mot., ECF 95; Mem., ECF 96; Proposed Final Order, ECF 95-1. In addition, also on May 26, 2026, Plaintiff's counsel submitted their contemporaneous billing and expense records for review. Billing Records and Expense Records, Exs. A–B to Berin Decl., ECF 97, at ECF pp. 10–13. On July 17, 2026, the undersigned Magistrate Judge held the final fairness hearing. *See* July 17, 2026 Final Fairness Hr'g Tr. ("Final Fairness Hr'g"), ECF 102.

Consent to Magistrate Judge jurisdiction was filed by the parties on July 30, 2026, and the case was reassigned to the undersigned Magistrate Judge for all further proceedings. Notice, ECF 103; Consent, ECF 104.

## III. Settlement Agreement, Fund Allocation, and Notification to Class

The proposed settlement agreement defined the Settlement Class as:

> [A]ll persons who participated in the Plan at any time during the Class Period,[4] including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO [Qualified Domestic Relations Order] who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendant [Northwell Health, Inc.], the Retirement Committees (including their individual members), the Board of Trustees of Northwell Health (including its individual members), and their Beneficiaries.

Settlement Agreement, ECF 88-1, ¶ 1.49; *see id.* ¶ 1.37.

Class Members, *i.e.*, members of the Settlement Class,[5] are entitled to a *pro rata* share of the gross settlement amount of $2,750,000 (the "Gross Settlement Amount"), less: (1) attorneys' fees with reasonable expenses to Class Counsel; (2) case contribution award to Plaintiff; (3) certain taxes and tax-related costs; and (4) the costs of claim administration (the "Net Settlement Amount"). Notice of Pendency of Class Action and Proposed Settlement ("Notice"), Ex. A to Vieira Decl., ECF 98, at ECF p. 9. More specifically, the settlement agreement provides for a Plan of Allocation, discussed *infra*, which "provides *pro rata* recovery to Settlement Class members relative to their investment in the challenged funds and payment of recordkeeping fees during the Class Period." Mem., ECF 96, at 14; *see* Prelim. Fairness Hr'g, ECF 91, at 21:3–23 (explaining how distributions will be calculated for the Settlement Class).

---

[4] The "Class Period" is defined as "the period from July 21, 2014, through the date the Preliminary Approval Order is entered by the Court," *i.e.*, March 9, 2026. Settlement Agreement, ECF 88-1, ¶ 1.15; *see* Berin Decl., ECF 97, at 4; Proposed Preliminary Approval Order, Ex. C to Settlement Agreement, ECF 88-1, ¶ 1, at ECF p. 49.

[5] Settlement Agreement, ECF 88-1, ¶ 1.14.

In exchange for their share of the Net Settlement Amount, members of the settlement class will release:

> [A]ny and all past, present, and future actual or potential claims (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification or any other type or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen based in whole or in part on acts or failures to act during the Class Period[.]

("Released Claims").[6] Settlement Agreement, ECF 88-1, ¶ 1.40; *see id.* ¶¶ 1.40.1–1.40.7 (specifying that the Released Claims cover, *inter alia*, claims that "could have been asserted in the Class Action, or that arise out of" the present class action).

According to the claims administrator, Strategic Claims Services,[7] the Notice regarding the class action and proposed settlement was emailed to 74,465 Class Members and sent via first-class mail to 18,250 Class Members.[8] Vieira Decl., ECF 98,

---

[6] However, excluded from release are "any claims that the Class Representative or the Settlement Class have to the value of their respective vested account balances under the terms of the Plan and according to the Plan's records as of the date the Settlement becomes Final." Settlement Agreement, ECF 88-1, ¶ 1.40.7.

[7] During the preliminary fairness hearing, Class Counsel detailed the qualifications of the settlement administrator, Strategic Claims Services. Counsel attested that they have worked with Strategic Claims Services in "the majority [of] these ERISA cases that have settled" and represented that Strategic Claims Services is capable of adequately managing the administration of the Plan of Allocation. Prelim. Fairness Hr'g, ECF 91, at 22:13–23:8.

[8] Defense counsel provided Strategic Claims Services class data for 92,724 Class Members. Vieira Decl., ECF 98, ¶ 4. Of these, 75,022 had a valid email address and were initially emailed the Notice. *Id.* Of these, 557 bounced back as non-deliverable, whereafter the Notice

¶ 7; *see* Notice, Ex. A to Vieira Decl., ECF 98, at ECF pp. 5–13. As of April 8, 2026, Class Members also had access to a toll-free phone line to obtain further information regarding the Settlement, Viera Decl., ECF 98, ¶ 9, and a website accessible at all times that contained the "current status of the case, important dates, and downloadable copies" of (1) the Notice, (2) the Scheduling Order for the final fairness hearing, (3) the December 22, 2025 Report and Recommendation, (4) the Order adopting the same, (5) the Settlement Agreement with Exhibits, and (6) the Second Amended Complaint, *id.* ¶ 10. *See* Notice, Ex. A to Vieira Decl., ECF 98, at pp. 5–13; *see also* Mar. 11, 2026 ECF Scheduling Order; R. & R., ECF 93; Mar. 9, 2026 ECF Order Adopting R. & R.; Settlement Agreement, ECF 88-1; SAC, ECF 72. The deadline for Class Members to "object to any part of the Settlement" was June 8, 2026. Notice, Ex. A to Vieira Decl., ECF 98, ¶¶ 14, 16; *see* Vieira Decl., ECF 98, ¶ 11; Mar. 11, 2026 ECF Scheduling Order. As of May 20, 2026, Strategic Claims Services had received no objections to the Settlement. Vieira Decl., ECF 98, ¶ 11. As of July 17, 2026, the Court received one request for exclusion from the class, which was later resolved, as discussed *infra* note 10. Obj. Letter, ECF 99; Obj. Resp. Letter, ECF 100; *see also* Final Fairness Hr'g, ECF 102, at

---

was sent to these Class Members via first-class mail. *Id.* ¶ 7. The 17,702 Class Members without a valid email address were run through the United States Postal Service's National Change of Address service, which produced addresses for all but 115 Class Members. *Id.* ¶¶ 4–5. Of the 115 Class Members for whom neither addresses nor valid email information was available, "skip-trac[ing]" produced addresses for 101, *id.* ¶ 5, and defense counsel located addresses for another five, *id.* ¶ 6. The Notice was disseminated via first-class mail to the 17,693 Class Members for whom addresses were found. *Id.* Of the Notices that were mailed, 1,061 were returned as undeliverable. *Id.* ¶ 8. The Postal Service provided forwarding addresses for 14 Class Members, and 806 additional addresses were located via "skip-trac[ing]." *Id.* In sum, a total of 241 Class Members could not be reached. *See* Vieira Decl., ECF 98, ¶ 8 (stating that of 1,061 Notices returned as undeliverable, Strategic Claims Services was able to re-mail notices to 820 Class Members (1,061 – 820 = 241)). At the final fairness hearing, Class Counsel represented that to the extent the 241 unreachable Class Members have "an active plan account[,] they will still receive payments." Final Fairness Hr'g, ECF 102, at 13:4–5; *see id.* at 14:8–11.

4:25–5:4, 18:7–11 (the parties confirming no objections to the settlement received from Class Members).

In addition to the payments to the Settlement Class, the settlement agreement anticipates awarding Class Counsel $916,666.67 in attorneys' fees, which constitutes one-third of the settlement fund, and $155,891.08 in expenses. Mem., ECF 96, at 14; *see* Billing Records and Expense Records, Ex. A–B to Berin Decl., ECF 97, at ECF pp. 10–13; *see also* R. & R., ECF 93, at 16–17. The proposed settlement would also award $10,000 total to Plaintiff Kaila Gonzalez in connection with her representation of the Settlement Class. Mem., ECF 96, at 14; *see also* R. & R., ECF 93, at 18–19.

For the reasons set forth below, the Court grants the motion for (1) final settlement approval; (2) award of attorneys' fees and expenses; and (3) case contribution award to Plaintiff.

## DISCUSSION

### I. Legal Standards

The Second Circuit has expressed a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) (quotation marks omitted) (noting that "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy" (quotation marks omitted)), *superseded on other grounds by Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023). Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement[] may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 328–30 (E.D.N.Y. 2010). To approve a class settlement under Rule 23(e), "the district court must determine that it is 'fair, adequate, and reasonable, and not a

product of collusion.'" *Loc. 1180 v. City of New York*, 392 F. Supp. 3d 361, 374 (S.D.N.Y. 2019) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). In conducting this inquiry, courts consider the substantive and procedural fairness of a proposed settlement to determine "whether 'the terms of the settlement and the negotiation process leading up to it' are fair." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008)), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (summary order); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

In 2018, Rule 23(e) was revised "to include a list of four 'primary procedural considerations and substantive qualities that should always matter'" in the court's holistic review of a proposed settlement. *Moses*, 79 F.4th at 242 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment); *see also Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC) (RML), 2024 WL 4118465, at *6 (E.D.N.Y. Sept. 9, 2024). These four factors include whether (1) class counsel and representatives adequately represented the class; (2) the settlement was negotiated at arm's length; (3) class members' relief is adequate, considering the costs, risks, and delay trial and appeal might pose along with the effectiveness of class notice and attorneys' fees; and (4) the settlement treats all class members equitably. Fed. R. Civ. P. 23(e)(2); *see also Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 117–18 (2d Cir. 2025). The amendments "prohibit courts from applying a presumption of fairness to proposed settlements arising from an arms-length agreement" and instead require holistic review, including consideration of attorney's fees and incentive awards. *Moses*, 79 F.4th at 243.

In addition to Rule 23(e)(2)'s amendments, the court should also consider the nine familiar *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see Moses*, 79 F.4th at 243 (noting that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement"). However, Rule 23(e)(2) also "now mandates courts to evaluate factors that may not have been highlighted in our prior case law." *Moses*, 79 F.4th at 243. Specifically, the Court must consider two core factors: "the adequacy of relief provided to a class and the equitable treatment of class members," in addition to an assessment of attorney's fees. *Id.* at 244.

**II. Analysis**

In its December 22, 2025 Report and Recommendation, this Court set forth a detailed analysis of the legal standards under Rule 23 of the Federal Rules of Civil Procedure and the application of those standards to the facts and circumstances surrounding this proposed settlement. *See* R. & R., ECF 93, at 9–22. That analysis is incorporated by reference into this Memorandum and Order and is repeated only to the extent necessary to address the pending Motion for Final Approval.

### A. Class Certification

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). As noted above, on March 9, 2026, Judge Kovner preliminarily certified the class for the purposes of settlement under Federal Rule of Civil Procedure 23(a) and (b)(1) by adopting this Court's December 22, 2025 Report and Recommendation. Mar. 9, 2026 ECF Order Adopting R. & R.; *see* R. & R., ECF 93, at 23–28. For the reasons detailed therein, and because "[n]one of the circumstances that warranted provisional certification have changed," the Court now grants final certification for settlement purposes as well. Mem., ECF 96, at 8; *see* R. & R., ECF 93, at 23–28.

### B. Settlement Approval

As discussed above, a district court's approval of a class action settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate," which is determined by an evaluation of a settlement's procedural and substantive fairness. Fed. R. Civ. P. 23(e)(2); *see D'Amato*, 236 F.3d at 85; *see also Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *7–8 (S.D.N.Y. Nov. 30, 2021); *In re Graña y Montero S.A.A. Sec. Litig.*, No. 17-CV-1105 (LDH) (ST), 2021 WL 4173684, at *11 (E.D.N.Y. Aug. 13, 2021).[9]

---

[9] As noted *supra*, "Rule 23 also requires the court to consider several criteria — some of which overlap with the *Grinnell* factors — that inform whether the settlement is fair, reasonable, and adequate." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI) (JO), 2019 WL

*1. Procedural Fairness*

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter*, 2024 WL 4118465, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(A)–(B)); *see also Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV) (MMH), 2025 WL 968586, at *6 (E.D.N.Y. Mar. 31, 2025).

This Court's December 22, 2025 Report and Recommendation set forth the legal standards for adequacy of representation and arm's length negotiation and a detailed analysis of their application to the facts and circumstances of this proposed settlement. *See* R. & R., ECF 93, at 9–13. As discussed therein, the record demonstrates that Plaintiff is well positioned to represent the proposed Settlement Class. First, "'[a]ll participants seek the same make-whole relief claimed by the named plaintiff[] for . . . breach of fiduciary duties.'" *Id.* at 10 (quoting *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 152 (E.D.N.Y. 1996) (internal quotation marks omitted), *amended*, 172 F.R.D. 28 (E.D.N.Y. 1997)). Second, "Plaintiff actively pursued relief on behalf of the Plan and Settlement Class since the investigation that led to the commencement of this action." Mem., ECF 96, at 10; *see* R. & R., ECF 93, at 10. Third, "Plaintiff's interests align with those of all other members of the Settlement Class." Mem., ECF 96, at 9; *see* R. & R., ECF 93, at 10.

---

8137325, at *4 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, Sept. 30, 2019 ECF Order; *see also* Fed. R. Civ. P. 23(e)(2)(A)–(D). These factors do not displace the *Grinnell* factors, but rather "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal," given that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, in light of the significant overlap between the relevant Second Circuit case law and the Rule 23(e)(2) factors, the Court incorporates the Rule 23 factors into its analysis throughout.

The Court similarly finds that Plaintiff and the class are adequately represented by Plaintiff's attorneys (herein referred to as "Class Counsel"). *See* R. & R., ECF 93, at 11. Class Counsel have substantial experience litigating and overseeing the administration of settlements in ERISA fiduciary breach cases. Berin Decl., ECF 88, ¶ 5; Mem., ECF 96, at 10; *see* R. & R., ECF 93, at 11. The record also demonstrates that Class Counsel have made efforts to thoroughly investigate and substantiate the alleged violations. *See* R. & R., ECF 93, at 11; Prelim. Fairness Hr'g, ECF 91, at 6:5–7:10; *see generally* Pl.'s Mem. in Opp'n to Mot. to Dismiss, ECF 39; Mot. for Leave to Amend, ECF 52; SAC, ECF 72. Accordingly, the Court finds that Plaintiff is being represented by "qualified, experienced" legal counsel. *Cordes & Co. Fin. Servs., Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quotation marks omitted).

"A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021) (quotation marks omitted). Likewise, a mediator's involvement "in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85. As the proposed settlement was arrived at through private mediation after significant discovery, Mem., ECF 96, at 10, and given the record and the parties' representations during the preliminary fairness hearing, there is no "'evidence or indicia suggesting that the negotiations were collusive.'" *Gordon v. Vanda Pharm. Inc.*, No. 19-CV-1108 (FB) (LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (quoting *Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. Jan. 14, 2019)); *see* Berin Decl., ECF 88, ¶ 7; Prelim. Fairness Hr'g, ECF 91, at 6:25–7:10, 11:18–12:10. The Court

therefore finds that the parties' proposed settlement was the result of arm's-length negotiations.

2. *Substantive Fairness*

For consideration of whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), the Court now turns to the *Grinnell* factors to evaluate the proposed settlement's substantive fairness.

a. Complexity, Expense, & Likely Duration of Litigation

Although difficult to predict, the complexity, expense, and likely duration of the litigation favor the proposed settlement. Courts must assess whether the proposed settlement "'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Rosenfeld*, 2021 WL 508339, at *5 (quoting *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.* ("*Payment Card*"), 330 F.R.D. 11, 36 (E.D.N.Y. 2019)).

This case has already been pending for more than six years. Plaintiff represents that without approval of the settlement agreement, "contentious motion practice and a complex trial" would proceed. Mem., ECF 96, at 12. As to complexity, Plaintiff contends that "ERISA breach of fiduciary duty actions are difficult to prosecute" as they "'involve a complex and rapidly evolving area of law'" in which "[n]ew case theories are frequently filed and evolving precedents are frequently issued." *Id.* (quoting *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *5 (D.N.J. May 31, 2012)); *see* Final Fairness Hr'g, ECF 102, at 15:21–16:23. The parties agree that litigation would be extremely costly and time intensive. *See* Prelim. Fairness Hr'g, ECF 91, at 8:17–21, 19:6–20:12; Final Fairness Hr'g, ECF 102, at 25:14–24. In short, the record amply establishes that further litigation would be complex, expensive, and

very time consuming. Accordingly, this *Grinnell* factor, in addition to Federal Rule of Civil Procedure 23(e)(2)(C)(i), favors settlement approval.

b. Reaction of the Class to the Settlement

The reaction of the class also favors the proposed settlement. As the Second Circuit has noted, if "only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores*, 396 F.3d at 118 (quotation marks omitted); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 312 (E.D.N.Y. 2006); Newberg & Rubenstein on Class Actions § 13:58 (6th ed. June 2026 update). To date, as mentioned *supra*, of the 92,724 Class Members, only 241 could not be reached. Vieira Decl., ECF 98, ¶¶ 4, 8; *see also supra* note 8. In addition, a website and toll-free number were created for this specific class settlement. Vieira Decl., ECF 98, ¶¶ 9–10. Class members had until June 8, 2026, to object to the settlement, Notice, Ex. A to Vieira Decl., ECF 98, ¶ 16, and as of the July 17, 2026 final fairness hearing, there were no objections and only one request for exclusion, which was later resolved. *See* Obj. Letter, ECF 99; Obj. Resp. Letter, ECF 100; *see also* Final Fairness Hr'g, ECF 102, at 4:25–5:4, 18:7–11.[10] Given the robust notice procedures and only one now-moot request for exclusion to the proposed settlement, the Court concludes that this factor favors settlement approval.

[10] As detailed in the objector's letter, the objector raised a concern regarding her inclusion in the settlement class because her "participation would be in direct conflict with a pre-existing contractual agreement," namely, a severance agreement with Defendant Northwell. Obj. Letter, ECF 99. However, as detailed in the parties' response to the objector's letter, "[t]he parties have conferred, and Northwell Health, Inc. has represented that [the objector]'s participation in the settlement will not conflict with her obligations under her severance agreement." Obj. Resp. Letter, ECF 100. Accordingly, Defendant Northwell "will not consider [the objector's] participation in the settlement to be a breach of her severance agreement," and she "will be entitled to whatever settlement proceeds are due to her under the Plan of Allocation." *Id.*; *see* Final Fairness Hr'g, ECF 102, at 8:12–16. The Court therefore finds any issues raised by the objector moot.

c. Stage of the Proceedings & the Amount of Discovery Completed

For this factor to favor settlement, courts must ensure that the parties have conducted a factual investigation sufficient to evaluate the proposed settlement and confirm that pretrial negotiations were adequately adversarial. *See Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d at 78. Although the parties did not engage in much formal discovery, the record demonstrates that Plaintiff's counsel have thoroughly investigated the strengths and weaknesses of the claims and conducted extensive research in responding to the two motions to dismiss and filing of the two amended complaints. *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss, ECF 20; Am. Compl., ECF 30; Pl.'s Mem. in Opp'n to Mot. to Dismiss, ECF 39; SAC, ECF 72; *see also* July 22, 2024 ECF Min. Entry & Order (setting a discovery schedule); Oct. 1, 2024 ECF Order (noting that the parties engaged in discovery). Therefore, because the Court finds that counsel had sufficient information "to appreciate the merits of the case," this factor favors approval of the settlement. *Burns v. FalconStor Software, Inc.*, Nos. 10-CV-4572 (ERK) (CLP), 10-CV-4632 (ERK) (CLP), 2014 WL 12917621, at *5 (E.D.N.Y. Apr. 11, 2014), *report and recommendation adopted*, May 8, 2024 ECF Order Adopting R. & R. in No. 10-CV-4572 (ERK) (CLP); *see also Lea*, 2021 WL 5578665, at *9.

d. Risks of Establishing Liability

When considering the risks of proceeding to the merits, "the Court need not adjudicate the disputed issues or decide unsettled questions; rather, 'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *13 (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Here, Plaintiff "face[s] substantial risks in establishing liability." *Id*. The motion practice in this case

demonstrates the risks Plaintiff faces in establishing liability. In response to Original Defendants'[11] first motion to dismiss, Judge Kovner granted Plaintiff leave to amend her complaint. Aug. 9, 2021 ECF Min. Entry & Order; *see* Am. Compl., ECF 30. Thereafter, Judge Kovner granted Original Defendants' motion to dismiss Plaintiff's Amended Complaint, finding that "Plaintiff's imprudent-retention and excessive-fee claims, and her derivative and other related claims" failed to state a claim. Mem. & Order, ECF 51; *see also* Defs.' Mem. in Supp. of Mot. to Dismiss, ECF 36; Pl.'s Mem. in Opp'n to Mot. to Dismiss, ECF 39; Defs.' Reply, ECF 40. In response, Plaintiff moved for leave to amend on October 31, 2022, which was granted on March 26, 2024. *See* Pl.'s Mot. for Leave, ECF 52; Mem. & Order, ECF 71. Original Defendants did not move to dismiss Plaintiff's Second Amended Complaint, instead proceeding with an answer and settlement discussions. Answer, ECF 74; Status Report, ECF 80. However, Plaintiff's counsel notes that, to prevail on her amended complaint, "Plaintiff would need to establish that Defendant's investment and fee monitoring processes were deficient" and that any affirmative defenses asserted by Defendant would likely lead to "further dispositive motions, significant competing expert testimony, and other pre-trial motion practice concerning evidentiary and other issues." Mem., ECF 96, at 13. Plaintiff's counsel further contends, as noted *supra*, that ERISA breach of fiduciary duty actions "'involve a complex and rapidly evolving area of law'" and are difficult to prosecute. Mem., ECF 96, at 12 (quoting *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5). In addition, counsel notes that there is also a risk that Plaintiff would not be able to

[11] Defendants Northwell Health 403(b) Plan Committee and Does No. 1–10 were not dismissed until Judge Kovner's October 16, 2024 Order granting the parties' joint stipulation. Oct. 21, 2024 Order Dismissing Parties; *see* Stipulation, ECF 81.

maintain "this Action as a class action through trial." *Id.* at 13; *see* Final Fairness Hr'g, ECF 102, at 25:14–24.

For all of these reasons, the Court finds that the $2,750,000 proposed settlement eliminates substantial risks Plaintiff would face in establishing Defendant's liability and favors the motion for final settlement approval. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177; *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-5669 (BMC), 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (explaining that "[o]ne purpose of a settlement is to avoid the uncertainty of a trial on the merits"); Fed. R. Civ. P. 23(e)(2)(C)(i).

e. <u>Risks of Establishing Damages</u>

Plaintiff also faces substantial risks in proving significant damages. Class Counsel notes that "Defendant would doubtless argue for more conservative figures or interest rates to reduce the damages calculation." Mem., ECF 96, at 17. Counsel concedes that should Plaintiff establish liability at trial, there remains "a substantial risk that a factfinder could accept Defendant's damages arguments and award less than the funds secured by the Settlement, or nothing at all." *Id.* at 13. Moreover, "because continued litigation increases expenses, it could result in a smaller ultimate recovery to the Settlement Class." *Id.*

In light of these risks, the Court finds this factor also favors settlement. *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) (noting that where "[b]oth parties would present expert testimony on the issue of damages," it is "'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as

general market conditions'" (quoting *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259–60 (S.D.N.Y. 2003))); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i).

f. Risks of Maintaining a Class Action Through Trial

"Courts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied." *Mikhlin*, 2021 WL 1259559, at *6 (citing *Payment Card*, 330 F.R.D. at 39–40). Here, where the parties stipulated to class certification for the purpose of settlement, "[t]he risks attendant to certifying a class and defending any decertification motion supports approval of the settlement." *Lea*, 2021 WL 5578665, at *10 (citing *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011)); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-MD-2389 (RWS), 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("The risk of maintaining a class throughout this long and protracted litigation weighs in favor of settlement approval.").

g. Ability of Defendant to Withstand a Greater Judgment

"This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate." *In re Graña y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *14. As to this factor, neither party has claimed that the proposed settlement amount approaches the upper limit of Defendant's ability to pay. *See* Prelim. Fairness Hr'g, ECF 91, at 34:17–35:24. As Plaintiff notes, however, "'against the weight of the remaining factors, this fact alone does not undermine the reasonableness'" of a settlement. Mem., ECF 96, at 16 (quoting *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019) (internal quotation marks omitted)); *see Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011) ("It is more important to assess the judgment in light of plaintiffs' claims and the other factors . . . ."). Rather, "[t]his

factor must be weighed in conjunction" with the others. *In re AOL Time Warner, Inc.*, No. 02-CV-5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006). Accordingly, as this Court previously concluded, although the proposed $2,750,000 settlement may be less than Defendant's theoretical capacity to pay, the Court finds that this factor does not preclude final settlement approval given that the settlement amount represents a substantial percentage of the estimated damages, as discussed *infra* with respect to the final two *Grinnell* factors. *See* R. & R., ECF 93, at 20.

h. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation

These final two *Grinnell* factors "are often combined for the purposes of analysis." *Payment Card*, 330 F.R.D. at 47–48. "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *Id.* at 48 (quotation marks omitted); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i). "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *Burns*, 2014 WL 12917621, at *5 (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 340).

Here, the $2,750,000 settlement represents approximately 49 to 70% of Plaintiff's "best possible outcome" after trial, "depending on the methodology and assumptions employed and when brought to present value by applying a reasonable interest rate," Mem., ECF 96, at 18; *see* Prelim. Fairness Hr'g, ECF 91, at 15:9–16.[12] However, Plaintiff's

[12] Plaintiff and Class Counsel estimated a best possible recovery of between $10 million and $13 million "assuming liability was found for all claims" but determined that Plaintiff's

estimated best possible recovery assumes total success of Plaintiff's imprudent-retention claim in "contentious motion practice and a complex trial," *id.* at 12, and that a factfinder would not be persuaded by Defendant's arguments for "more conservative figures or interest rates" to award lesser or no damages, *id.* at 17.

Based on the substantial litigation risks discussed above, because the settlement is reasonably calculated to compensate the Settlement Class Members for their injuries, and in light of the fact that the settlement here was reached with the assistance of an experienced mediator, the Court concludes that the settlement amount is within a reasonable range. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." (quotation marks omitted)); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving $586 million settlement that represented only two percent of aggregate expected recovery).

3. *Allocation of Settlement Fund*

The method of distributing relief and processing class member claims also supports approving the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Like the settlement

---

chances of proving liability were greater for the imprudent-retention claim than for her recordkeeping claim. Berin Decl., ECF 97, ¶ 5. This resulted in a "realistically recoverable damages" estimate of between $3.9 million and $5.6 million, and the corresponding calculation that the settlement represents approximately 49 to 70% of Plaintiff's "best possible recovery" after trial. *Id.*; *see* Prelim. Fairness Hr'g, ECF 91, at 15:15; Final Fairness Hr'g, ECF 102, at 19:23–20:6.

agreement itself, the plan of allocation "must also be fair and reasonable." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. at 316; *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013) ("When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." (quotation marks omitted)). Furthermore, a proposed "'claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.'" *Payment Card*, 330 F.R.D. at 40 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Here, the Court incorporates the discussion in its December 22, 2025 Report and Recommendation and finds that the method for processing settlement class members' claims and distributing the net settlement fund to eligible claimants includes well established, effective procedures, and was reviewed by an Independent Fiduciary and is thus "fair and reasonable." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. at 316; *see* R. & R., ECF 93, at 15–16; *see generally* Indep. Fiduciary Rep., App'x A to Berin Decl., ECF 97, at ECF pp. 15–28.

4. *Identification of Other Agreements*

Federal Rule of Civil Procedure 23(e) requires the Court to take into account "any agreement made in connection with" the proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, Class Counsel represent that they "are not aware of any agreements required to be disclosed under Rule 23(e)(3)." Mem., ECF 96, at 15. The parties further confirmed at the preliminary fairness hearing and final fairness hearing that there are no other agreements amongst the parties. Prelim. Fairness Hr'g, ECF 91, at 32:24–33:13; Final Fairness Hr'g, ECF 102, at 25:3–8. Accordingly, this factor weighs in favor of final approval of the settlement.

### C. Attorneys' Fees and Costs & Plaintiff's Award

The Court must also consider "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Class Counsel seek an attorneys' fee award of $916,666.67, which equals one-third of the settlement amount, along with $155,891.08 in costs. *See* Mem., ECF 96, at 14, 20. Class Counsel contend that these amounts are warranted based upon the risks involved in the litigation, the quality of counsel, and the fees granted in similar class action litigations. *See generally id.* In addition, Class Counsel seek a $10,000 award for the named Plaintiff. *See id.* at 14; Berin Decl., ECF 97, ¶ 18. Having reviewed the documents submitted by counsel in support of their requests, including attorney declarations, billing records, and invoice summaries for the claimed costs, the Court finds that attorneys' fees totaling $916,666.67, $155,891.08 in costs, and $10,000 for the named Plaintiff are reasonable and therefore approves the requested fees, costs, and award.[13]

[13] Federal Rule of Civil Procedure 23(e)(2)(C)(iii) also requires courts to consider the "timing of payment" for "any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the parties' settlement agreement states that "money from the Qualified Settlement Fund" shall be disbursed "[f]or Attorneys' Fees and Costs" and "[f]or Class Representative's Case Contribution Award, as approved by the Court, and no later than thirty-five (35) business days following the Settlement Effective Date." Settlement Agreement, ECF 88-1, ¶¶ 5.2.1–5.2.2; *id.* ¶ 1.50 (defining the Settlement Effective Date as the date on which the "Final Approval Order is Final"). Upon the Settlement Effective Date, and following the payment of attorneys' fees and costs and Plaintiff's contribution award, "Class Counsel shall direct . . . [the] disburse[ment of] the Net Settlement Amount as provided by this Settlement Agreement and the Plan of Allocation" to the Class Members. *Id.* ¶ 5.3; *see id.* ¶ 5.2.4; Plan of Allocation, Ex. B to Settlement Agreement, ECF 88-1, at ECF pp. 41–46. While courts in this circuit have found "quick-pay" provisions (wherein attorneys' fees are paid prior to the distribution of settlement funds to the class members) to be objectionable in certain cases, *see, e.g.*, *Hart v. BHH, LLC*, 334 F.R.D. 74, 77–78 (S.D.N.Y. 2020), the Court does not find such an arrangement to be problematic here. "While it may not be appropriate in every instance for a court to approve payment of attorney's fees

*1. Attorneys' Fees*

When determining appropriate counsel fees in class actions, courts generally use "the lodestar method or award[] fees based on a percentage of the settlement fund." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI) (JO), 2019 WL 8137325, at *6 (E.D.N.Y. Aug. 15, 2019) (citing *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (AKT), 2018 WL 4861391, at *1 (E.D.N.Y. Sept. 28, 2018) (citing *Goldberger*, 209 F.3d at 47)), *report and recommendation adopted*, Sept. 30, 2019 ECF Order. The "lodestar method" multiplies a reasonable number of hours spent on the case by a reasonable hourly rate, whereas the "common fund method calculates the fee amount as a percentage of the" total award. *Id.* (citing *Cohan*, 2018 WL 4861391, at *1 (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417–22 (2d Cir. 2010))). Courts using the percentage of the fund method, which is the "trend in this Circuit," will also "cross-check the percentage fee against counsel's 'lodestar' amount of hourly rate multiplied by hours spent." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9 (citing *Wal-Mart Stores*, 396 F.3d at 121; *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (quotation marks omitted)). Under either method, courts will also consider the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy

---

prior to the distribution of settlement funds among class members, . . . in this case the terms of the proposed award adequately protect the class's interests" because (1) the Settlement Administrator is tasked with distributing the fund to approved claimants, not counsel; and (2) the Court will retain jurisdiction over any disputes arising out of the implementation of the settlement agreement. *Mikhlin*, 2021 WL 1259559, at *7; *see* Settlement Agreement, ECF 88-1, ¶¶ 1.46, 14.11. Accordingly, while the timing of the award of attorneys' fees does not necessarily "bolster the case for . . . approval, it also does not undercut th[e] case where, as here, the majority of other factors weigh significantly in its favor." *Id.*

considerations." *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *7 (citing *Goldberger*, 209 F.3d at 50); *see also Burns*, 2014 WL 12917621, at *8 (same).

As discussed, counsel seeks one-third of the settlement fund, or $916,666.67. Mem., ECF 96, at 14, 20. This amount constitutes approximately 68% of counsel's aggregate lodestar amount, which is $1,342,370 billed for 2,043.70 hours worked.[14] *Id.* at 21; *see* Billing Records, Ex. A to Berin Decl., ECF 97, at ECF p. 11. Analyzing this requested award against the *Goldberger* factors and cross-checking it against the lodestar both favor approval of the requested fees.

a. <u>Goldberger Factors</u>

As to the first and second *Goldberger* factors, the time and labor expended by Class Counsel in this case is reasonable considering the duration and complexity of the litigation, which has been proceeding for over six years, required litigating two motions to dismiss, and included settlement negotiations with the assistance of a professional mediator. *See* Mem., ECF 96, at 2–3. This case involves complex questions concerning liability and damages that would have required the introduction of difficult-to-obtain documentary and deposition evidence, as well as significant reliance on experts. *See* Mem., ECF 96, at 12–14. Moreover, the claimed time is supported by Class Counsel's declaration and corresponding billing records. *See* Berin Decl., ECF 97, ¶¶ 8–17; Billing Records and Expense Records, Ex. A–B to Berin Decl., ECF 97; *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147–48 (S.D.N.Y. 2010).

---

[14] Class Counsel's aggregate lodestar is calculated by multiplying 2,043.70 hours worked by the attorney billing rates. *See* Billing Records, Ex. A to Berin Decl., ECF 97, at ECF p. 11. Although counsel's hourly rates are higher than those normally awarded in the Eastern District of New York, the lodestar cross-check supports counsel's fee award overall. *See Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025) (setting forum rates).

The third factor, the risk of litigation, which is "often cited as the . . . most important[] *Goldberger* factor," weighs in favor of approving the requested fee, as "[c]lass counsel undertook this litigation on a contingent basis and have received no payment for their work" in the over six years this case has been pending. *Lea*, 2021 WL 5578665, at *12 (citing *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 361; *Goldberger*, 209 F.3d at 54); *see* Berin Decl., ECF 97, ¶ 11. Indeed, Plaintiff's counsel notes that "[f]rom the outset, [they] understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated." Berin Decl., ECF 97, ¶ 11. As discussed above, the litigation risk with respect to both liability and damages is significant "given the complexity of the issues and vigorous defense," Mem., ECF 96, at 22, which will increase costs and result in smaller ultimate recovery to Plaintiff and the Settlement Class if litigation continues, *id.* at 13.

With respect to the fourth factor, as noted above, Class Counsel possess substantial experience litigating ERISA class action cases and have provided quality representation to Plaintiff and the putative class by, among other things, litigating this case for over six years and successfully negotiating a settlement. *See, e.g.*, Berin Decl., ECF 97, ¶ 15; Mem., ECF 96, at 22–23; R. & R., ECF 93, at 11, 32.

In analyzing the fifth factor, the Court notes that the requested one-third fee constitutes a proportion routinely approved as reasonable, and no opposition to the request has been advanced by the Settlement Class Members. *See, e.g.*, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million . . . ."); *see also Burns*, 2014 WL 12917621, at *10.

Finally, public policy considerations also favor approval of the requested fee amount. *See Wal-Mart Stores*, 396 F.3d at 116 (recognizing the "strong judicial policy in

favor of settlements, particularly in the class action context"); *see also* Mem., ECF 96, at 23–24.

b. Lodestar Cross-Check

The requested fees are also reasonable under the lodestar method. As of the date the final approval motion and accompanying declaration were filed, Class Counsel represented that they had spent 2,043.70 total hours litigating this case, producing an aggregate lodestar amount of $1,342,370 when multiplied by counsel and staff's hourly billing rates. Billing Records, Ex. A to Berin Decl., ECF 97, at ECF p. 11. Counsel's lodestar equals approximately 146% of counsel's total requested fee. This calculation results in a lodestar multiplier of 0.68, which is well within the "range of multipliers awarded by courts in this District and throughout the country." Berin Decl., ECF 97, ¶ 13; *see also Wal-Mart Stores*, 396 F.3d at 123 (upholding a multiplier of 3.5 as reasonable on appeal); *Burns*, 2014 WL 12917621, at *10 (holding a fee award of 33.3% as reasonable based on cross-check multiplier of 4.75); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1988) (upholding a multiplier of 3.97 as reasonable).

The Court notes, however, that Class Counsel's billing records reflect hourly rates that exceed those normally approved in this district for similar services.[15] *See In re KeySpan Corp. Sec. Litig.*, No. 01-CV-5852 (ARR), 2005 WL 3093399, at *14 (E.D.N.Y. Sept. 30, 2005) ("The reasonable hourly rates should be based on the rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994)

[15] Miller Shah LLP lists an hourly rate of $275 to $375 for paralegals, $350 to $375 for project analysts, and $700 for research directors; additionally, the firm lists rates of $400 for law clerks, $625 to $650 for associates, $725 for senior counsel; and $875 to $1,400 for partners. *See* Billing Records, Ex. A to Berin Decl., ECF 97, at ECF p. 11.

(internal quotation marks omitted))); *Rosenfeld*, 2022 WL 2093028, at *4 (approving hourly rates ranging from $225 to $900, which are "regularly accepted in this Circuit" as "well within the range of reasonableness" in a large class action settlement); *Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-2061 (JMA) (ARL), 2025 WL 942800, at *5 (E.D.N.Y. Mar. 28, 2025) (noting that recent cases have approved awards ranging from $100 per hour for paralegals to up to $630 per hour for partners). However, even applying heavily reduced hourly rates to the number of hours reflected in the fee motion, a reasonable aggregate lodestar is $681,867.50, which amounts to 74% of the requested fee amount and would produce a lodestar multiplier of approximately 1.34 relative to the requested fee amount.[16]

Even at this reduced amount, the multiplier is lower than those typically deemed reasonable in ERISA class actions in this Circuit. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 469 (finding lodestar multiplier of approximately 2.6 reasonable); *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (collecting cases); *see also Roberts v. Genting New York LLC*, 821 F. Supp. 3d 340, 358 (E.D.N.Y. 2026) (finding the "lodestar multiplier to be reasonable, as it falls within the range of a multiplier between 1 to 4 that courts typically approve in class actions") (collecting cases). Moreover, counsel will expend additional time on this litigation following the adjudication of this motion, which will increase any lodestar calculations and decrease the lodestar multiplier. Berin Decl., ECF 97, ¶ 13. Accordingly, the lodestar cross-check also favors approval of the amount of fees awarded in the settlement.

---

[16] The Court calculated this reduced lodestar by multiplying the hours spent on the litigation by hourly rates that courts in this district find reasonable, *i.e.*, $600 for partners, $450 for attorneys who hold the position of counsel, $300 for associates and research directors, $125 for paralegals, law clerks, and project analysts. *See Rubin*, 763 F. Supp. 3d at 243–44.

In light of the foregoing, the Court approves Class Counsel's request for attorneys' fees in the amount of one-third of the settlement fund, or $916,666.67.

2. *Attorneys' Expenses*

"The Court may award counsel reasonable out-of-pocket expenses that were necessary to successfully litigate and resolve the action." *Burns*, 2014 WL 12917621, at *11 (citing *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 363–64; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 468). Class Counsel requests reimbursement in the amount of $155,891.08 for expenses incurred while prosecuting this action.[17] Mem., ECF 96, at 14, 20; Expense Records, Ex. B to Berin Decl., ECF 97, at ECF p. 13. At the final fairness hearing, Class Counsel represented that the case "involved a lot of financial analysis of the [P]lan," which required experts to prepare and refine analyses throughout the course of the litigation. Final Fairness Hr'g, ECF 102, at 21:10–23:19; *see id.* at 26:4–10 (defense counsel representing that "experts play a significant role in the[se] cases and therefore the expenses tend to be a significant component of the overall cost" incurred by Class Counsel). As set forth above, the Notice distributed to class members included information about these expected costs, and there have been no objections to the proposed settlement. *See* Notice, Ex. A to Vieira Decl., ECF 98, at ECF p. 9.

Having reviewed counsel's declaration, and given the complexity of the underlying claims and settlement administration, as well as the fact that the Notice

---

[17] The $155,891.08 in costs is comprised of (1) $3,296.80 in computer research, access, and database expenses; (2) $128,343.50 in expenses related to experts and investigators; (3) $1,155.00 in filing, service, and process fees; (4) $3,147.60 in internal copying and printing costs; (5) $19,000.00 in mediation expenses; (6) $561.78 in postage and delivery; and (7) $386.40 in telephone costs. Expense Records, Ex. B to Berin Decl., ECF 97, at ECF p. 13.

distributed to Class Members noted the exclusion of Court-approved costs from the settlement fund, the Court finds that the claimed costs were, on the whole, reasonably expended and that they should be paid for from the settlement fund. *See* Expense Records, Ex. B to Berin Decl., ECF 97, at ECF p. 13; Notice, Ex. A to Vieira Decl., ECF 98, at ECF p. 9. Accordingly, the Court approves the request for an award of attorneys' expenses in the amount of $155,891.08.

3. *Plaintiff's Award*

"Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *8 (quotation marks omitted); *see also Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015).

Here, the named Plaintiff seeks an award of $10,000 in connection with her representation of the Settlement Class. Mem., ECF 96, at 24–25. Class Counsel has detailed the named Plaintiff's efforts in this action since it was initiated more than six years ago. In addition to lending her name to the case caption, Plaintiff participated in monthly conferences "throughout the duration of the litigation" and was "the only person" who was able to provide discovery documents and information used to "evaluate . . . and proceed with" the claim. Final Fairness Hr'g, ECF 102, at 26:19–27:17; *see also* Berin Decl., ECF 97, ¶¶ 18–20. The incentive award requested in this case is in line with others that have been awarded in the Second Circuit. *See, e.g.*, *Lea*, 2021 WL 5578665, at *13 (awarding $7,500 to two lead plaintiffs); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (approving award of $10,000 to a named plaintiff and collecting

cases). Given Plaintiff's substantial contributions in this case, the Court approves the application for an incentive award of $10,000 to Ms. Gonzalez.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for final settlement approval, attorneys' fees and expense reimbursement, and incentive award to Plaintiff. *See* Mot., ECF 95. The Court also enters the attached final approval order.

**SO ORDERED.**

Dated: Brooklyn, New York
August 12, 2026

Taryn A. Merkl
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE